UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> R.R. DONNELLEY & SONS COMPANY <br><br> Defendant. | CASE NO.: _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1338(a), 1367, 1441, 1446, and 1454, Defendant R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby removes the above-captioned matter from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida to the United States District Court for the Southern District of Florida, Fort Lauderdale Division. R.R. Donnelley's Notice of Removal is based on the following:

**The State Court Action**

1.  On or about February 24, 2020, Plaintiff Scriptchek Visual Verification Systems, Inc. ("Plaintiff") filed a complaint against R.R. Donnelley in the Seventeenth Judicial Circuit in and for Broward County, Florida, as case number CACE-20-003398 (the "Complaint"). R.R. Donnelley was served with a copy of the Complaint on February 27, 2020, via R.R. Donnelley's registered agent. The Complaint is attached as Exhibit 1. (*See also* Ex. 2 (the civil cover sheet).)

2. In the Complaint, Plaintiff asserts claims for breach of contract, specific performance, and unjust enrichment. Plaintiff alleges that it and R.R. Donnelley have a Manufacture Agreement where Plaintiff granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell Plaintiff's patented Extended Tab Prescription Drug Label to customers approved by Plaintiff who have entered into license agreements with Plaintiff. (Compl. ¶ 13.) Plaintiff further alleges that R.R. Donnelley has sold – and is still selling – Plaintiff's "patented" Extended Tab Prescription Drug Label to non-approved customers, including CVS Pharmacy, in violation of the Manufacture Agreement. (Compl. ¶ 31.) Plaintiff also alleges that R.R. Donnelley breached the Manufacture Agreement by failing to keep proper books of account and failing to render written reports to Plaintiff as well as failing to include certain markings on Plaintiff's Extended Tab Prescription Drug Label sold by R.R. Donnelley. (Compl. ¶¶ 47, 54.) Plaintiff alternatively alleges a count for unjust enrichment. (Compl. ¶¶ 66-88.) Plaintiff's Complaint seeks damages with interest, costs, as well as specific performance to provide books of accounts and written reports from 2006 to present and a demand that R.R. Donnelley immediately cease and desist from any and all manufacturing of Plaintiff's patented Extended Tab Prescription Drug Label for non-approved customers. (Compl. ¶¶ 49, 55, 65.) Plaintiff alleges that the amount in controversy exceeds $30,000, exclusive of interest, costs, and attorney fees (Comp. ¶ 3), which is the amount of controversy necessary for circuit court jurisdiction (*see* Fla. Stat. § 34.01(c)(2)), but Plaintiff fails to allege an actual estimated amount in controversy.

3. With the Complaint, Plaintiff served Plaintiff Scriptchek Visual Verification Systems, Inc.'s First Request for Production to Defendant R.R. Donnelley & Sons Company, Inc. ("Plaintiff's First Request for Production") (*see* Ex. 3).

4.      Following an agreed order on the deadline to respond to the Complaint (*see* Ex. 4), R.R. Donnelley filed a Motion to Dismiss, Motion to Strike, Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of Law ("Motion to Dismiss") on May 18, 2020.  (*See* Ex. 5.)  R.R. Donnelley sought dismissal of the Complaint on the grounds that Plaintiff's claims fail to state any claim under Florida law.  (Motion to Dismiss at 4.)  R.R. Donnelley further sought to strike all references to a "Mutual Confidentiality Agreement" in the Complaint as it was unclear how it related to Plaintiff's claims and appeared wholly irrelevant.  (Motion to Dismiss at 16.)  R.R. Donnelley alternatively sought a more definite statement from Plaintiff regarding its claims, its anticipated damages, and the relevance of the Mutual Confidentiality Agreement.  (Motion to Dismiss at 16-21.)

5.      R.R. Donnelley filed a *Pro Hac Vice* motion, which was granted by agreed order.  (*See* Ex. 6 (the motion) and Ex. 7 (the agreed order).)

6.      On May 27, 2020, Plaintiff's counsel and counsel for R.R. Donnelley held a Zoom conference.  The purpose of the conference was to serve as an introductory meeting for counsel for both parties.  During the conference, the counsel for both parties discussed the Motion to Dismiss and Plaintiff's First Request for Production.  Plaintiff's counsel indicated that they planned to respond to the Motion to Dismiss during the following week.

7.      On June 1, 2020, R.R. Donnelley served its response to Plaintiff's First Request for Production and filed a corresponding Notice of Service to the court.  (*See* Ex. 8.)

8.      On June 4, 2020, Plaintiff filed its response to the Motion to Dismiss.  (*See* Ex. 9.)  In its response, similar to Plaintiff counsel's remarks during the May 27, 2020 conference, Plaintiff clarified that its allegations are limited to Plaintiff's "patented label."  (*See generally* Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, Motion to Strike, Motion in the

3

Alternative for More Definite Statement, and Incorporated Memorandum of Law ("Response to Motion to Dismiss") (noting that Plaintiff no longer refers to its Extended Tab Prescription Drug Label as "proprietary and patented" as it did in the Complaint but only as "patented").) In fact, Plaintiff confirmed a definition of the Extended Tab Prescription Drug Label provided by R.R. Donnelley in the Motion to Dismiss that indicates that any labels at issue have to relate to certain patent applications. (Response to Motion to Dismiss ¶ 16.) Plaintiff also clarified that its breach of contract claims are not founded on the Mutual Confidentiality Agreement. (Response to Motion to Dismiss ¶ 60.)

9. On June 8, 2020, R.R. Donnelley filed a Notice of Appearance and Designation of E-mail Addresses. (*See* Ex. 10.)

10. On June 16, 2020, Plaintiff filed a Notice of Hearing with regards to the Motion to Dismiss set for July 7, 2020. (*See* Ex. 11.)

**Statutory Grounds for Removal**

11. R.R. Donnelley's removal of this case is based upon 28 U.S.C. §§ 1441(a) and 1454.[1] Section 1441(a) authorizes the removal of any civil actions filed in state court provided that the United States District Court has original jurisdiction for such actions. Section 1454(a) authorizes the removal of "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents" to federal district court. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), which provides such jurisdiction over civil

---

[1] Given that the state court action is currently in the Motion to Dismiss stage, R.R. Donnelley has yet to raise any counterclaims or affirmative defenses. Were the state court action to proceed to that stage, R.R. Donnelley anticipates patent-related counterclaims and affirmative defenses, including patent invalidity and non-infringement, which would also provide for removal based on 28 U.S.C. § 1454. (*See Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CIV-61736, 2015 WL 13688558 (S.D. Fla. Nov. 20, 2015).)

4

actions in which the parties are diverse and in which the amount in controversy exceeds $75,000, exclusive of interest or costs.  This Court also has original jurisdiction over Count I of this action (the breach of contract claim pertaining to the alleged manufacturing and selling of Plaintiff's patented Extended Tab Prescription Drug Label to non-approved customers) under 28 U.S.C. § 1338(a), which provides such jurisdiction over "any civil action arising under any Act of Congress relating to patents[.]"  In view of the Court's federal question jurisdiction under 28 U.S.C. § 1338(a) over Count I, the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over all of Plaintiff's other claims.

**Diversity of Citizenship**

12. Pursuant to 28 U.S.C. §§ 1332(a) and (c), the diversity required for removal exists here because Plaintiff is diverse from R.R. Donnelley.  Plaintiff is a Florida Corporation while R.R. Donnelley is a Delaware Corporation. (Comp. ¶¶ 4-5.)  Moreover, Plaintiff's principal place of business is Florida, while R.R. Donnelley's principal place of business is Illinois.  The citizenship of the parties is therefore diverse.

**More than $75,000 in Controversy**

13. The amount in controversy exceeds $75,000.  Despite its failure to identify any specific patents or bases for damages in its Complaint, Plaintiff's counsel's remarks on May 27, 2020 and its Response to Motion to Dismiss establish that for Plaintiff to prove its breach of contract claim in Count I of the Complaint, Plaintiff must establish that the products allegedly sold by RR Donnelley to CVS fall within the scope of Plaintiff's patents licensed under the Manufacture Agreement.  In other words, Plaintiff must prove that the products at issue infringe Plaintiff's valid patents that were licensed.  By clarifying that its claims are focused on Plaintiff's patents (*see, e.g.,* Response to Motion to Dismiss ¶ 16), Plaintiff confirmed that certain tab labels manufactured and

sold by R.R. Donnelley—previously and currently—might be at issue. For approximately the last five years, R.R. Donnelley's business records show that R.R. Donnelley generated revenue from sales of tab labels at issue to CVS, such that a reasonable royalty[2] on those sales and anticipated future sales would readily exceed $75,000.

14. Accordingly, the amount in controversy—based solely on the subject matter of Plaintiffs' claims and without any admission on R.R. Donnelley's part—exceeds $75,000. Thus, the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is satisfied.[3]

**Arising Under Patent Law**

15. "[Section] 1338(a) jurisdiction . . . extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or **that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law**, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988) (emphasis added).)

16. As clarified by Plaintiff counsel's remarks on May 27, 2020 and Plaintiff's Response to Motion to Dismiss filed June 4, 2020, Plaintiff's claim that R.R. Donnelley violated the Manufacture Agreement by allegedly manufacturing and selling Plaintiff's patented Extended

---

[2] Patent infringement damages are no less than "a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

[3] Should the Court deem that more information is necessary to determine whether the amount-in-controversy requirement is satisfied, limited post-removal discovery would be an appropriate method to fully resolve this issue. (*See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 774 (11th Cir. 2010) (Pryor, J., concurring) ("Our precedents have taken for granted that a defendant who removes a civil action has the same right that plaintiff enjoys to conduct discovery about jurisdictional facts."); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("[A] district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal.") (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)).)

Tab Prescription Drug Label is directly related to and limited to Plaintiff's patents. As agreed by Plaintiff, the Extended Tab Prescription Drug Label "relates to certain then-pending patent applications." (Response to Motion to Dismiss ¶ 16.) Moreover, as clearly established in its Response to Motion to Dismiss, the crux of Plaintiff's breach of contract claim rests entirely on that "patented" Extended Tab Prescription Drug Label. Therefore, in order to prevail on its breach of contract claim, Plaintiff would need to demonstrate that any and all tab labels that R.R. Donnelley sold to non-approved customers fell under Plaintiff's patent(s). Put another way, to prevail, Plaintiff will have to show that R.R. Donnelley infringed Plaintiff's patent(s).

17. With regards to arising under patent law, this is hardly a novel fact pattern. Indeed, courts have addressed similar fact patterns in the past, holding that claims such as the one in this case do arise under patent law, justifying federal jurisdiction. In *Kleinerman v. Luxtron*, 107 F. Supp. 2d 122 (D. Mass. 2000), the plaintiff entered into a license agreement with the defendant in which the plaintiff granted the defendant a license to use, make, or sell products incorporating the plaintiff's patents in consideration for royalty payments based on the defendant's sales volume. (*Id*. 123.) The plaintiff later alleged that the defendant did not report all sales of products using the patented technology in violation of the license agreement, depriving the plaintiff of royalty payments. (*Id*.). The plaintiff filed a breach of contract claim, which the defendant removed to federal court. (*Id*.) On motion to remand, the district court denied the remand motion, noting that "an analysis of patent infringement is necessary and subject matter jurisdiction lies in a United States District Court" since "[i]f, as [the plaintiff] alleges, [the defendant] used the patented technology but failed to pay royalties thereof, it violated the License. To determine if that happened, the finder of fact must consider whether the unreported products infringed [the plaintiff's] patents." (*Id*. 124.)

18. In an analogous case, *U.S. Valves, Inc. v. Dray*, 190 F.3d 811 (7th Cir. 1999) ("*Dray I*"), a patent licensee brought action against licensor for breach of contract. (*Id*. 812.) The licensee alleged that the licensor had sold valves that were covered by the licensed patents. (*Id*.) When assessing whether this breach of contract claim invoked patent law jurisdiction, the court relied upon the second prong of *Christianson* (emphasized *supra*). (*Id*. 813-14.) In doing so, the court noted, "[the licensee] claimed that [the licensor] sold valves in contravention of this provision . . . If the only way for [the licensee] to establish this claim is for it to show that [the licensor] sold valves covered by the patents licensed to [the licensee ], then the court must first examine the patent and determine which valves are covered and whether the patent was infringed. Thus patent law is a necessary element of [the licensee's] breach of contract action." (*Id*. *See also U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) ("*Dray II*") (subsequent Federal Circuit decision affirming the Seventh Circuit's conclusion); *Berman v. OpenTV Corp.*, No. C-09-4065 MMC, 2010 WL 3987448, at *3 (N.D. Cal. Oct. 12, 2010) (relying on *Dray II* to hold that "[w]here a plaintiff asserts that a breach of contract occurs from a defendant's infringement of the plaintiff's patents, the breach of contract claim necessarily depends on resolution of a substantial question of patent law"); *Bd. of Regents of Univ. of Texas Sys. V. 3d Sys., Inc.*, No. A-10-CA-871-SS, 2011 WL 13324299, at *3 (W.D. Tex. July 12, 2011) (relying on *Dray II* to find patent law jurisdiction in case without diversity jurisdiction where parties were not diverse).)

19. Even cases following the Supreme Court's decision in *Gunn v. Minton*, 568 U.S. 251 (2013) have continued to recognize the holding in *Dray II* and have held patent law jurisdiction over breach of contract claims. (*See Levi Straus & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-CV-04718-WHO, 2016 WL 1365946, at **5-6 (N.D. Cal. Apr. 6, 2016) (citing *Dray II* and others to find patent law jurisdiction over breach of contract claim); *Alexsam, Inc. v. Green Dot Corp.*, No.

215CV05742CASPLAX, 2015 WL 6520917, at *3 (C.D. Cal. Sept. 28, 2015); *Induction Innovations, Inc. v. Pacholok*, No. 13 CV 5102, 2014 WL 4922350, at *13 (N.D. Ill. Sept. 30, 2014) (citing *Dray II* when ruling that "complaint for breach of contract necessarily contains an issue of federal patent law); *see also Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (affirming post-*Gunn* patent law jurisdiction existed where "[a]lthough this cases arises from a [state law breach of contract] claim, rather than directly as a patent infringement claim, [the plaintiff's] right to relief . . . depends on an issue of federal patent law – whether the [products] sold by [the defendants] would have infringed [the plaintiff's patents]") (internal quotation marks omitted).)

20. R.R. Donnelley notes the decision in *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833 (11th Cir. 2013) where the court found no patent law jurisdiction for that particular breach of contract action, but as explained in *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429 (5th Cir. 2019), *MDS* was analogous to *Gunn* since "like the patent issues in *Gunn*, [the issue in *MDS*] was backwards-looking and insubstantial **because** it indisputably concerned a since-expired patent." (*Id*. 440 (emphasis added).) In contrast, the patents underlying the breach of contract cases cited above were deemed either valid or validity was in dispute, and patent law jurisdiction was found. Indeed, the Federal Circuit in *Jang,* which was decided after *MDS,* noted the difference in the *Gunn* "substantiality" test analyzed therein, which is in contrast to *MDS's* determination of insubstantiality. Therefore, *MDS* is distinguishable and the above cited cases should govern. (*See also Wila B.V. v. Wilson Tool Int'l, Inc.*, No. CV WDQ-06-2861, 2007 WL 9780502, at *1 (D. Md. Apr. 2, 2007) (noting that the district court, when considering federal question jurisdiction under 28 U.S.C. § 1338, "follow[s] applicable Federal Circuit precedent, if such authority is available," rather than the law of the regional circuit).)

21.     Given the wealth of case law supporting that breach of contract claims such as the one at issue in this case arise under patent law, it is clear that this breach of contract claim too arises under patent law.  Therefore it is proper for this Court to exercise section 1338(a) jurisdiction over Plaintiff's breach of contract claim and, should diversity jurisdiction not apply, section 1367(a) supplemental jurisdiction over the remaining claims.

**Timeliness of Removal**

22.     Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  When R.R. Donnelley first received Plaintiff's Complaint, it was not clear whether this case was removable.  As discussed in R.R. Donnelley's Motion to Dismiss, Plaintiff's Complaint carried clear deficiencies as well as contained parts that seemed irrelevant or otherwise confusing.  However, Plaintiff counsel's assertions during the May 27, 2020 conference first led R.R. Donnelley to ascertain that this case was subject to removal under both diversity jurisdiction as well as patent law jurisdiction.  Our understanding that this case was subject to removal was confirmed via other paper in the form of Plaintiff's Response to Motion to Dismiss.

23.     Specifically, prior to speaking to Plaintiff's counsel and receiving Plaintiff's Response to Motion to Dismiss, there was doubt as to whether Plaintiff's claims were based strictly on patents or whether Plaintiff's claims were also based on some misuse of confidential and proprietary information, or some other issue.  Plaintiff's Response to Motion to Dismiss made clear that the patents are essential to defining what was licensed under the Manufacture Agreement.  In particular, throughout its Response to Motion to Dismiss, Plaintiff only referred to the Extended

Tab Prescription Drug Label as "patented." Furthermore, Plaintiff confirmed a definition of the Extended Tab Prescription Drug Label indicating that the label at issue has to relate to certain patent applications. (Response to Motion to Dismiss ¶ 16.) Moreover, the Plaintiff confirmed that the Mutual Confidentiality Agreement, which may have been alleged to be a basis for misuse of confidential information claims, is not necessary to any claims. (Response to Motion to Dismiss ¶¶ 59-63.) Similarly, these clarifications, confirmed by Plaintiff's Response to Motion to Dismiss, permitted R.R. Donnelley to determine that the amount in controversy will exceed $75,000, as discussed above, making this case subject to removal under diversity jurisdiction.

24. This Notice of Removal is filed within 30 days of May 27, 2020, the day of the conference with Plaintiff's counsel in which R.R. Donnelley first ascertained that this case is subject to removal. This Notice of Removal is also filed within 30 days of June 4, 2020, the day R.R. Donnelley received Plaintiff's Response to Motion to Dismiss, which was the first paper served on R.R. Donnelley after it ascertained that this case is subject to removal and which itself further confirmed federal jurisdiction. Either way, the Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3).[4]

**Written Notice of Removal**

25. As 28 U.S.C. § 1446(d) requires, a copy of this Notice of Removal is being submitted to the Clerk of the Seventeenth Judicial Circuit in and for Broward County, Florida, and is being served on counsel of record for Plaintiff.

26. Pursuant to 28 U.S.C. § 1446(d), true and correct copies of all process, pleadings, and other documents served on R.R. Donnelley are attached hereto. (*See* Ex. 12.)

---

[4] If R.R. Donnelley's Notice of Removal is deemed untimely for any reason, 28 U.S.C. § 1454(b)(2) states "the time limitations contained in section 1446(b) may be extended at any time for cause shown" so long as "the removal is based solely on [section 1454]."

27. A copy of the docket sheet from the Seventeenth Judicial Circuit in and for Broward County, Florida is attached hereto. (*See* Ex. 13.)

28. R.R. Donnelley reserves the right to amend or supplement this Notice of Removal.

29. If any questions arise as to the propriety of the removal of this action, R.R. Donnelley requests the opportunity to present a brief and requests oral argument in support of removal.

**No Waiver**

30. By filing this Notice of Removal, R.R. Donnelley does not waive any defenses available to it, does not consent to personal jurisdiction within any Florida state or federal court, and does not admit any of Plaintiff's material allegations, including allegations of wrongdoing by R.R. Donnelley or allegations concerning damages.

WHEREFORE, for the reasons stated above, R.R. Donnelley hereby removes this action to this Court.

Dated: June 26, 2020

Respectfully submitted,

R.R. DONNELLEY SONS & COMPANY

By: /s/ Eugene K. Pettis

Eugene K. Pettis
Debbie P. Klauber
HALICZER, PETTIS & SCHWAMM, P.A.
One Financial Plaza
100 S.E. 3rd Avenue
Seventh Floor
Fort Lauderdale, FL 33394
Telephone: (954) 523-9922
Fax: (954) 522-2512

Reginald J. Hill*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Fax: (312) 527-0484

*Attorneys for R.R. Donnelley & Sons Company*
*\*Not yet admitted in the United States District Court for the Southern District of Florida*