IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,                    CASE NO:  CACE 20-003398 (08)

      Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC. a Delaware
Corporation,

      Defendant.

_____/

## NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT

TO:

CLERK OF THE COURT
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
201 S.E. 6TH STREET
FORT LAUDERDALE, FL 33301

HONORABLE DAVID A. HAIMES
201 S.E. 6TH STREET
ROOM 16125
FORT LAUDERDALE, FL 33301

Richard L. Allen, Esq.
Steven Solowsky, Esq.
SOLOWSKY & ALLEN, PL
201 S. Biscayne Blvd. - #915
Miami, FL  33131
305-371-2223

Gary N. Mansfield
David Stone
MANSFIELD BRONSTEIN & STONE,
LLP
500 Broward Blvd, Suite 1450
Fort Lauderdale, FL 33394
954-601-5600

*Attorneys for Plaintiff*

PLEASE TAKE NOTICE that on June 26, 2020 Defendant, R.R. DONNELLEY & SONS COMPANY, INC., by and through the undersigned attorneys, filed a Notice of Removal of this action to the United States District Court for the Southern District of Florida, Fort Lauderdale Division pursuant to the provisions of **28 U.S.C. §§ 1332(a), 1338(a), 1367, 1441, 1446,** and **1454**.  A true and correct copy of said Notice of Removal is attached hereto as **Exhibit A**.

You are further advised that this Notice of Filing Notice of Removal is served and filed pursuant to **28 U.S.C. § 1446(d)** and that no further process shall proceed unless and until this case is remanded.

I HEREBY CERTIFY that the foregoing document was electronically filed and served via Florida's E-filing Portal this *26th day of June 2020.*

JENNER & BLOCK LLP
Attorney for R.R. Donnelley & Sons Company, Inc.
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Fax: (312) 527-0484


By: /s/ *Reginald J. Hill*
　　REGINALD J. HILL
　　Ill. Bar No: 6225173
　　Admitted *Pro Hac Vice*

HALICZER PETTIS & SCHWAMM, P.A.
Attorney for R.R. Donnelley & Sons Company, Inc.
One Financial Plaza, Seventh Floor
100 S.E. 3rd Avenue
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
Fax: 954-522-2512
E-MAIL: service@hpslegal.com

By /s/ *Eugene K. Pettis*
　EUGENE K. PETTIS, ESQ.
　FBN: 508454

## MAILING LIST
### SCRIPTCHEK VISUAL VERIFICTION SYSTEMS, INC. V.
### R.R. DONNELLEY & SONS COMPANY, INC.
### CASE NO. CACE 20-003398 (08)

Richard L. Allen, Esq.
Steven Solowsky, Esq.
Solowsky & Allen, PL
201 S. Biscayne Blvd. - #915
Miami, FL  33131
305-371-2223
E-MAIL DESIGNATIONS:
mlopez@salawmiami.com;
rallen@salawmiami.com;
pleadings@salawmiami.com;
ssolowsky@salawmiami.com

Gary N. Mansfield
David Stone
Mansfield Bronstein & Stone, LLP
500 Broward Blvd, Suite 1450
Fort Lauderdale, FL 33394
954-601-5600
E-MAIL DESIGNATIONS:
gary@mblawpa.com
dstone@davidstonelaw.com
litigation@mblawpa.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., | CASE NO.: _____ |
| Plaintiff, | |
| v. | |
| R.R. DONNELLEY & SONS COMPANY | |
| Defendant. | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1338(a), 1367, 1441, 1446, and 1454, Defendant R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby removes the above-captioned matter from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida to the United States District Court for the Southern District of Florida, Fort Lauderdale Division. R.R. Donnelley's Notice of Removal is based on the following:

**The State Court Action**

1.     On or about February 24, 2020, Plaintiff Scriptchek Visual Verification Systems, Inc. ("Plaintiff") filed a complaint against R.R. Donnelley in the Seventeenth Judicial Circuit in and for Broward County, Florida, as case number CACE-20-003398 (the "Complaint"). R.R. Donnelley was served with a copy of the Complaint on February 27, 2020, via R.R. Donnelley's registered agent. The Complaint is attached as Exhibit 1. (*See also* Ex. 2 (the civil cover sheet).)

2.      In the Complaint, Plaintiff asserts claims for breach of contract, specific performance, and unjust enrichment.   Plaintiff alleges that it and R.R. Donnelley have a Manufacture Agreement where Plaintiff granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell Plaintiff's patented Extended Tab Prescription Drug Label to customers approved by Plaintiff who have entered into license agreements with Plaintiff.   (Compl. ¶ 13.) Plaintiff further alleges that R.R. Donnelley has sold – and is still selling – Plaintiff's "patented" Extended Tab Prescription Drug Label to non-approved customers, including CVS Pharmacy, in violation of the Manufacture Agreement. (Compl. ¶ 31.)  Plaintiff also alleges that R.R. Donnelley breached the Manufacture Agreement by failing to keep proper books of account and failing to render written reports to Plaintiff as well as failing to include certain markings on Plaintiff's Extended Tab Prescription Drug Label sold by R.R. Donnelley.   (Compl. ¶¶ 47, 54.)   Plaintiff alternatively alleges a count for unjust enrichment.   (Compl. ¶¶ 66-88.)   Plaintiff's Complaint seeks damages with interest, costs, as well as specific performance to provide books of accounts and written reports from 2006 to present and a demand that R.R. Donnelley immediately cease and desist from any and all manufacturing of Plaintiff's patented Extended Tab Prescription Drug Label for non-approved customers.   (Compl. ¶¶ 49, 55, 65.)   Plaintiff alleges that the amount in controversy exceeds $30,000, exclusive of interest, costs, and attorney fees (Comp. ¶ 3), which is the amount of controversy necessary for circuit court jurisdiction (*see* Fla. Stat. § 34.01(c)(2)), but Plaintiff fails to allege an actual estimated amount in controversy.

3.      With the Complaint, Plaintiff served Plaintiff Scriptchek Visual Verification Systems, Inc.'s First Request for Production to Defendant R.R. Donnelley & Sons Company, Inc. ("Plaintiff's First Request for Production") (*see* Ex. 3).

4. Following an agreed order on the deadline to respond to the Complaint (*see* Ex. 4), R.R. Donnelley filed a Motion to Dismiss, Motion to Strike, Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of Law ("Motion to Dismiss") on May 18, 2020. (*See* Ex. 5.) R.R. Donnelley sought dismissal of the Complaint on the grounds that Plaintiff's claims fail to state any claim under Florida law. (Motion to Dismiss at 4.) R.R. Donnelley further sought to strike all references to a "Mutual Confidentiality Agreement" in the Complaint as it was unclear how it related to Plaintiff's claims and appeared wholly irrelevant. (Motion to Dismiss at 16.) R.R. Donnelley alternatively sought a more definite statement from Plaintiff regarding its claims, its anticipated damages, and the relevance of the Mutual Confidentiality Agreement. (Motion to Dismiss at 16-21.)

5. R.R. Donnelley filed a *Pro Hac Vice* motion, which was granted by agreed order. (*See* Ex. 6 (the motion) and Ex. 7 (the agreed order).)

6. On May 27, 2020, Plaintiff's counsel and counsel for R.R. Donnelley held a Zoom conference. The purpose of the conference was to serve as an introductory meeting for counsel for both parties. During the conference, the counsel for both parties discussed the Motion to Dismiss and Plaintiff's First Request for Production. Plaintiff's counsel indicated that they planned to respond to the Motion to Dismiss during the following week.

7. On June 1, 2020, R.R. Donnelley served its response to Plaintiff's First Request for Production and filed a corresponding Notice of Service to the court. (*See* Ex. 8.)

8. On June 4, 2020, Plaintiff filed its response to the Motion to Dismiss. (*See* Ex. 9.) In its response, similar to Plaintiff counsel's remarks during the May 27, 2020 conference, Plaintiff clarified that its allegations are limited to Plaintiff's "patented label." (*See generally* Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, Motion to Strike, Motion in the

Alternative for More Definite Statement, and Incorporated Memorandum of Law ("Response to Motion to Dismiss") (noting that Plaintiff no longer refers to its Extended Tab Prescription Drug Label as "proprietary and patented" as it did in the Complaint but only as "patented").) In fact, Plaintiff confirmed a definition of the Extended Tab Prescription Drug Label provided by R.R. Donnelley in the Motion to Dismiss that indicates that any labels at issue have to relate to certain patent applications. (Response to Motion to Dismiss ¶ 16.) Plaintiff also clarified that its breach of contract claims are not founded on the Mutual Confidentiality Agreement. (Response to Motion to Dismiss ¶ 60.)

9. On June 8, 2020, R.R. Donnelley filed a Notice of Appearance and Designation of E-mail Addresses. (*See* Ex. 10.)

10. On June 16, 2020, Plaintiff filed a Notice of Hearing with regards to the Motion to Dismiss set for July 7, 2020. (*See* Ex. 11.)

**Statutory Grounds for Removal**

11. R.R. Donnelley's removal of this case is based upon 28 U.S.C. §§ 1441(a) and 1454.[1] Section 1441(a) authorizes the removal of any civil actions filed in state court provided that the United States District Court has original jurisdiction for such actions. Section 1454(a) authorizes the removal of "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents" to federal district court. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), which provides such jurisdiction over civil

---

[1] Given that the state court action is currently in the Motion to Dismiss stage, R.R. Donnelley has yet to raise any counterclaims or affirmative defenses. Were the state court action to proceed to that stage, R.R. Donnelley anticipates patent-related counterclaims and affirmative defenses, including patent invalidity and non-infringement, which would also provide for removal based on 28 U.S.C. § 1454. (*See Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CIV-61736, 2015 WL 13688558 (S.D. Fla. Nov. 20, 2015).)

4

actions in which the parties are diverse and in which the amount in controversy exceeds $75,000, exclusive of interest or costs. This Court also has original jurisdiction over Count I of this action (the breach of contract claim pertaining to the alleged manufacturing and selling of Plaintiff's patented Extended Tab Prescription Drug Label to non-approved customers) under 28 U.S.C. § 1338(a), which provides such jurisdiction over "any civil action arising under any Act of Congress relating to patents[.]" In view of the Court's federal question jurisdiction under 28 U.S.C. § 1338(a) over Count I, the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over all of Plaintiff's other claims.

**Diversity of Citizenship**

12.     Pursuant to 28 U.S.C. §§ 1332(a) and (c), the diversity required for removal exists here because Plaintiff is diverse from R.R. Donnelley. Plaintiff is a Florida Corporation while R.R. Donnelley is a Delaware Corporation. (Comp. ¶¶ 4-5.) Moreover, Plaintiff's principal place of business is Florida, while R.R. Donnelley's principal place of business is Illinois. The citizenship of the parties is therefore diverse.

**More than $75,000 in Controversy**

13.     The amount in controversy exceeds $75,000. Despite its failure to identify any specific patents or bases for damages in its Complaint, Plaintiff's counsel's remarks on May 27, 2020 and its Response to Motion to Dismiss establish that for Plaintiff to prove its breach of contract claim in Count I of the Complaint, Plaintiff must establish that the products allegedly sold by RR Donnelley to CVS fall within the scope of Plaintiff's patents licensed under the Manufacture Agreement. In other words, Plaintiff must prove that the products at issue infringe Plaintiff's valid patents that were licensed. By clarifying that its claims are focused on Plaintiff's patents (*see, e.g.,* Response to Motion to Dismiss ¶ 16), Plaintiff confirmed that certain tab labels manufactured and

sold by R.R. Donnelley—previously and currently—might be at issue. For approximately the last five years, R.R. Donnelley's business records show that R.R. Donnelley generated revenue from sales of tab labels at issue to CVS, such that a reasonable royalty[2] on those sales and anticipated future sales would readily exceed $75,000.

14.     Accordingly, the amount in controversy—based solely on the subject matter of Plaintiffs' claims and without any admission on R.R. Donnelley's part—exceeds $75,000. Thus, the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is satisfied.[3]

**Arising Under Patent Law**

15.     "[Section] 1338(a) jurisdiction . . . extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or **that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law**, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988) (emphasis added).)

16.     As clarified by Plaintiff counsel's remarks on May 27, 2020 and Plaintiff's Response to Motion to Dismiss filed June 4, 2020, Plaintiff's claim that R.R. Donnelley violated the Manufacture Agreement by allegedly manufacturing and selling Plaintiff's patented Extended

---

[2] Patent infringement damages are no less than "a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

[3] Should the Court deem that more information is necessary to determine whether the amount-in-controversy requirement is satisfied, limited post-removal discovery would be an appropriate method to fully resolve this issue. (*See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 774 (11th Cir. 2010) (Pryor, J., concurring) ("Our precedents have taken for granted that a defendant who removes a civil action has the same right that plaintiff enjoys to conduct discovery about jurisdictional facts."); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("[A] district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal.") (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)).)

Tab Prescription Drug Label is directly related to and limited to Plaintiff's patents. As agreed by Plaintiff, the Extended Tab Prescription Drug Label "relates to certain then-pending patent applications." (Response to Motion to Dismiss ¶ 16.) Moreover, as clearly established in its Response to Motion to Dismiss, the crux of Plaintiff's breach of contract claim rests entirely on that "patented" Extended Tab Prescription Drug Label. Therefore, in order to prevail on its breach of contract claim, Plaintiff would need to demonstrate that any and all tab labels that R.R. Donnelley sold to non-approved customers fell under Plaintiff's patent(s). Put another way, to prevail, Plaintiff will have to show that R.R. Donnelley infringed Plaintiff's patent(s).

17.     With regards to arising under patent law, this is hardly a novel fact pattern. Indeed, courts have addressed similar fact patterns in the past, holding that claims such as the one in this case do arise under patent law, justifying federal jurisdiction. In *Kleinerman v. Luxtron*, 107 F. Supp. 2d 122 (D. Mass. 2000), the plaintiff entered into a license agreement with the defendant in which the plaintiff granted the defendant a license to use, make, or sell products incorporating the plaintiff's patents in consideration for royalty payments based on the defendant's sales volume. (*Id*. 123.) The plaintiff later alleged that the defendant did not report all sales of products using the patented technology in violation of the license agreement, depriving the plaintiff of royalty payments. (*Id*.) The plaintiff filed a breach of contract claim, which the defendant removed to federal court. (*Id*.) On motion to remand, the district court denied the remand motion, noting that "an analysis of patent infringement is necessary and subject matter jurisdiction lies in a United States District Court" since "[i]f, as [the plaintiff] alleges, [the defendant] used the patented technology but failed to pay royalties thereof, it violated the License. To determine if that happened, the finder of fact must consider whether the unreported products infringed [the plaintiff's] patents." (*Id*. 124.)

18.     In an analogous case, *U.S. Valves, Inc. v. Dray*, 190 F.3d 811 (7th Cir. 1999) ("*Dray I*"), a patent licensee brought action against licensor for breach of contract. (*Id*. 812.) The licensee alleged that the licensor had sold valves that were covered by the licensed patents. (*Id*.) When assessing whether this breach of contract claim invoked patent law jurisdiction, the court relied upon the second prong of *Christianson* (emphasized *supra*). (*Id*. 813-14.) In doing so, the court noted, "[the licensee] claimed that [the licensor] sold valves in contravention of this provision . . . If the only way for [the licensee] to establish this claim is for it to show that [the licensor] sold valves covered by the patents licensed to [the licensee ], then the court must first examine the patent and determine which valves are covered and whether the patent was infringed. Thus patent law is a necessary element of [the licensee's] breach of contract action." (*Id*. *See also U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) ("*Dray II*") (subsequent Federal Circuit decision affirming the Seventh Circuit's conclusion); *Berman v. OpenTV Corp.*, No. C-09-4065 MMC, 2010 WL 3987448, at *3 (N.D. Cal. Oct. 12, 2010) (relying on *Dray II* to hold that "[w]here a plaintiff asserts that a breach of contract occurs from a defendant's infringement of the plaintiff's patents, the breach of contract claim necessarily depends on resolution of a substantial question of patent law"); *Bd. of Regents of Univ. of Texas Sys. V. 3d Sys., Inc.*, No. A-10-CA-871-SS, 2011 WL 13324299, at *3 (W.D. Tex. July 12, 2011) (relying on *Dray II* to find patent law jurisdiction in case without diversity jurisdiction where parties were not diverse).)

19.     Even cases following the Supreme Court's decision in *Gunn v. Minton*, 568 U.S. 251 (2013) have continued to recognize the holding in *Dray II* and have held patent law jurisdiction over breach of contract claims. (*See Levi Straus & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-CV-04718-WHO, 2016 WL 1365946, at **5-6 (N.D. Cal. Apr. 6, 2016) (citing *Dray II* and others to find patent law jurisdiction over breach of contract claim); *Alexsam, Inc. v. Green Dot Corp.*, No.

215CV05742CASPLAX, 2015 WL 6520917, at *3 (C.D. Cal. Sept. 28, 2015); *Induction Innovations, Inc. v. Pacholok*, No. 13 CV 5102, 2014 WL 4922350, at *13 (N.D. Ill. Sept. 30, 2014) (citing *Dray II* when ruling that "complaint for breach of contract necessarily contains an issue of federal patent law); *see also Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (affirming post-*Gunn* patent law jurisdiction existed where "[a]lthough this cases arises from a [state law breach of contract] claim, rather than directly as a patent infringement claim, [the plaintiff's] right to relief . . . depends on an issue of federal patent law – whether the [products] sold by [the defendants] would have infringed [the plaintiff's patents]") (internal quotation marks omitted).)

20.     R.R. Donnelley notes the decision in *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833 (11th Cir. 2013) where the court found no patent law jurisdiction for that particular breach of contract action, but as explained in *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429 (5th Cir. 2019), *MDS* was analogous to *Gunn* since "like the patent issues in *Gunn*, [the issue in *MDS*] was backwards-looking and insubstantial **because** it indisputably concerned a since-expired patent." (*Id*. 440 (emphasis added).)  In contrast, the patents underlying the breach of contract cases cited above were deemed either valid or validity was in dispute, and patent law jurisdiction was found.  Indeed, the Federal Circuit in *Jang,* which was decided after *MDS,* noted the difference in the *Gunn* "substantiality" test analyzed therein, which is in contrast to *MDS's* determination of insubstantiality. Therefore, *MDS* is distinguishable and the above cited cases should govern.  (*See also Wila B.V. v. Wilson Tool Int'l, Inc.*, No. CV WDQ-06-2861, 2007 WL 9780502, at *1 (D. Md. Apr. 2, 2007) (noting that the district court, when considering federal question jurisdiction under 28 U.S.C. § 1338, "follow[s] applicable Federal Circuit precedent, if such authority is available," rather than the law of the regional circuit).)

21.     Given the wealth of case law supporting that breach of contract claims such as the one at issue in this case arise under patent law, it is clear that this breach of contract claim too arises under patent law.  Therefore it is proper for this Court to exercise section 1338(a) jurisdiction over Plaintiff's breach of contract claim and, should diversity jurisdiction not apply, section 1367(a) supplemental jurisdiction over the remaining claims.

**Timeliness of Removal**

22.     Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  When R.R. Donnelley first received Plaintiff's Complaint, it was not clear whether this case was removable.  As discussed in R.R. Donnelley's Motion to Dismiss, Plaintiff's Complaint carried clear deficiencies as well as contained parts that seemed irrelevant or otherwise confusing.  However, Plaintiff counsel's assertions during the May 27, 2020 conference first led R.R. Donnelley to ascertain that this case was subject to removal under both diversity jurisdiction as well as patent law jurisdiction.  Our understanding that this case was subject to removal was confirmed via other paper in the form of Plaintiff's Response to Motion to Dismiss.

23.     Specifically, prior to speaking to Plaintiff's counsel and receiving Plaintiff's Response to Motion to Dismiss, there was doubt as to whether Plaintiff's claims were based strictly on patents or whether Plaintiff's claims were also based on some misuse of confidential and proprietary information, or some other issue.  Plaintiff's Response to Motion to Dismiss made clear that the patents are essential to defining what was licensed under the Manufacture Agreement. In particular, throughout its Response to Motion to Dismiss, Plaintiff only referred to the Extended

Tab Prescription Drug Label as "patented." Furthermore, Plaintiff confirmed a definition of the Extended Tab Prescription Drug Label indicating that the label at issue has to relate to certain patent applications. (Response to Motion to Dismiss ¶ 16.) Moreover, the Plaintiff confirmed that the Mutual Confidentiality Agreement, which may have been alleged to be a basis for misuse of confidential information claims, is not necessary to any claims. (Response to Motion to Dismiss ¶¶ 59-63.) Similarly, these clarifications, confirmed by Plaintiff's Response to Motion to Dismiss, permitted R.R. Donnelley to determine that the amount in controversy will exceed $75,000, as discussed above, making this case subject to removal under diversity jurisdiction.

24.    This Notice of Removal is filed within 30 days of May 27, 2020, the day of the conference with Plaintiff's counsel in which R.R. Donnelley first ascertained that this case is subject to removal. This Notice of Removal is also filed within 30 days of June 4, 2020, the day R.R. Donnelley received Plaintiff's Response to Motion to Dismiss, which was the first paper served on R.R. Donnelley after it ascertained that this case is subject to removal and which itself further confirmed federal jurisdiction. Either way, the Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3).[4]

**Written Notice of Removal**

25.    As 28 U.S.C. § 1446(d) requires, a copy of this Notice of Removal is being submitted to the Clerk of the Seventeenth Judicial Circuit in and for Broward County, Florida, and is being served on counsel of record for Plaintiff.

26.    Pursuant to 28 U.S.C. § 1446(d), true and correct copies of all process, pleadings, and other documents served on R.R. Donnelley are attached hereto. (*See* Ex. 12.)

---

[4] If R.R. Donnelley's Notice of Removal is deemed untimely for any reason, 28 U.S.C. § 1454(b)(2) states "the time limitations contained in section 1446(b) may be extended at any time for cause shown" so long as "the removal is based solely on [section 1454]."

27.    A copy of the docket sheet from the Seventeenth Judicial Circuit in and for Broward County, Florida is attached hereto.  (*See* Ex. 13.)

28.    R.R. Donnelley reserves the right to amend or supplement this Notice of Removal.

29.    If any questions arise as to the propriety of the removal of this action, R.R. Donnelley requests the opportunity to present a brief and requests oral argument in support of removal.

**No Waiver**

30.    By filing this Notice of Removal, R.R. Donnelley does not waive any defenses available to it, does not consent to personal jurisdiction within any Florida state or federal court, and does not admit any of Plaintiff's material allegations, including allegations of wrongdoing by R.R. Donnelley or allegations concerning damages.

WHEREFORE, for the reasons stated above, R.R. Donnelley hereby removes this action to this Court.

Dated: June 26, 2020                                 Respectfully submitted,

                                                     R.R. DONNELLEY SONS & COMPANY


                                                     By: /s/ Eugene K. Pettis_____

                                                     Eugene K. Pettis
                                                     Debbie P. Klauber
                                                     HALICZER, PETTIS & SCHWAMM, P.A.
                                                     One Financial Plaza
                                                     100 S.E. 3rd Avenue
                                                     Seventh Floor
                                                     Fort Lauderdale, FL 33394
                                                     Telephone: (954) 523-9922
                                                     Fax: (954) 522-2512

                                                     Reginald J. Hill*
                                                     JENNER & BLOCK LLP
                                                     353 N. Clark Street
                                                     Chicago, IL 60654
                                                     Telephone: (312) 222-9350
                                                     Fax: (312) 527-0484

                                                     *Attorneys for R.R. Donnelley & Sons Company*
                                                     *Not yet admitted in the United States District*
                                                     *Court for the Southern District of Florida*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., | CASE NO.: _____ |
| Plaintiff, | |
| v. | |
| R.R. DONNELLEY & SONS COMPANY | |
| Defendant. | |

**INDEX OF EXHIBITS TO NOTICE OF REMOVAL**

| Exhibit | Description |
|---|---|
| 1. | Complaint |
| 2. | Civil Cover Sheet |
| 3. | Plaintiff ScriptChek Visual Verification Systems, Inc.'s First Request for Production to Defendant R.R. Donnelley & Sons Company, Inc. |
| 4. | Agreed Order on Deadline for Defendant to Respond to Complaint and First Request for Production |
| 5. | Defendant's Motion to Dismiss Plaintiff's Complaint, Motion to Strike, Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of Law |
| 6. | Verified Motion for Admission to Appear Pro Hac Vice Pursuant to Florida Rule of Judicial Administration 2.510 |
| 7. | Agreed Order on Verified Motion for Admission to Appear Pro Hac Vice |
| 8. | Defendant's Notice of Service of Responses and Objections to Plaintiff's First Request for Documents |
| 9. | Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, Motion to Strike, Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of Law |
| 10. | R.R. Donnelley & Sons Company, Inc. Notice of Appearance and Designation of E-mail Addresses |

| Exhibit | Description |
|---------|-------------|
| 11. | Notice of Hearing (Special Set – 1 Hour) |
| 12. | Service of Process Documents |
| 13. | State Court Docket – ScriptChek Visual Verification Systems, Inc. Plaintiff vs. R.R. Donnelley & Sons Company, Inc. Defendant, Broward County Case Number: CACE20003398 |

# Exhibit 1

Filing # 103813414 E-Filed 02/24/2020 04:36:00 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____/

## COMPLAINT

Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation ("ScriptChek"), by and through its undersigned counsel, sues Defendant, R.R. DONNELLEY & SONS COMPANY, INC., a Delaware Corporation ("R.R. Donnelley"), and alleges as follows:

1.      On or about August 1, 2006, the parties entered into a Non-Exclusive Limited License to Manufacture (the "Manufacture Agreement"). A copy of the Manufacture Agreement is attached hereto as Exhibit "A."

2.      This is an action for breach of the terms of the Manufacture Agreement (Counts I and II), alternatively, an action for specific performance of the provisions of the

CASE NO.:

Manufacture Agreement (Count III), and, alternatively, an action for unjust enrichment (Count IV).

## PARTIES, JURISDICTION, AND VENUE

3.     This is an action for damages in which the amount in controversy exceeds $30,000.00 exclusive of interest, costs and attorneys' fees and is within the jurisdiction of this Court, and alternatively for equitable relief within the jurisdiction of this Court.

4.     ScriptChek is a Florida Corporation conducting business in Broward County, Florida.

5.     R.R. Donnelley is a Delaware Corporation conducting business in Broward County, Florida.

6.     R.R. Donnelley is the successor by merger to Moore Wallace, its predecessor. Moore Wallace was acquired by merger by R.R. Donnelley. As a result of R.R. Donnelley's acquisition by merger of Moore Wallace, R.R. Donnelly stands in the shoes of Moore Wallace and R.R. Donnelley has assumed the obligations, liabilities, and rights of Moore Wallace.

7.     Moore Wallace entered into the Manufacture Agreement with ScriptChek, as set forth herein. As a result of R.R. Donnelley's acquisition by merger of Moore Wallace, R.R. Donnelly stands in the shoes of Moore Wallace and R.R. Donnelley has assumed the obligations, liabilities, and rights of Moore Wallace pursuant to the Manufacture Agreement.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

8.      Venue is proper in Broward County, Florida because R.R. Donnelley conducts business in Broward County, Florida, and the causes of action accrued in Broward County, Florida.

9.      Venue is proper in Broward County, Florida pursuant to ¶ 13 of the Manufacture Agreement, in which R.R. Donnelley has consented to jurisdiction and venue in Broward County, Florida. *See* Manufacture Agreement, ¶ 13.

10.     In addition, pursuant to ¶ 13 of the Manufacture Agreement, R.R. Donnelley and ScriptChek agreed that the Manufacture Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Florida. *See* Manufacture Agreement, ¶ 13.


## GENERAL ALLEGATIONS

### The Parties Entered into the Manufacture Agreement

11.     On or about August 1, 2006, ScriptChek and R.R. Donnelley's predecessor, Moore Wallace, entered into the Manufacture Agreement. *See* Manufacture Agreement.

12.     The Manufacture Agreement was the product of negotiation between the parties, and it was executed by the Vice President and Associate General Counsel of R.R. Donnelly's predecessor, Robert G. Nieland, and by the President of ScriptChek, Stacy Kaufman.

13.     Pursuant to the Manufacture Agreement, ScriptChek granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels for the limited purpose of selling the patented ScriptChek Extended Tab Prescription Drug Labels only to customers approved by

ScriptChek (the "Approved Customers") who have entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, ¶ 1.

14.    The patented ScriptChek Extended Tab Prescription Drug Labels are prescription labels for displaying additional information printed on a tab extending from the label. *See* Manufacture Agreement, ¶ 11.

15.    Pursuant to ¶ 1 of the Manufacture Agreement, ScriptChek granted R.R. Donnelley a "non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Labels only to customers approved by [ScriptChek], hereinafter referred to as 'Approved Customers' that have entered into written License Agreements with [ScriptChek] to use the Extended Tab Prescription Drug Label." *See* Manufacture Agreement, ¶ 1.

16.    Pursuant to ¶ 4 of the Manufacture Agreement, R.R. Donnelley was obligated to "mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from [ScriptChek] of the issuance of any pending patents, "Patented" with the patent numbers and proper dates." *See* Manufacture Agreement, ¶ 4.

17.    In the Manufacture Agreement, R.R. Donnelley acknowledged and agreed that ScriptChek is the owner of the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, p. 1.

18.    In the Manufacture Agreement, R.R. Donnelley agreed to manufacture ScriptChek's patented Extended Tab Prescription Drug Labels for the purpose of selling them to ScriptChek's Approved Customers. *See* Manufacture Agreement, ¶ 2. Pursuant to

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

the Manufacture Agreement, R.R. Donnelley has sold and continues to sell the patented ScriptChek Extended Tab Prescription Drug Label to at least one Approved Customer.

19.    In the Manufacture Agreement, R.R. Donnelley agreed not to sell the patented ScriptChek Extended Tab Prescription Drug Labels to customers who were not approved by ScriptChek and to customers who had not entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, ¶¶ 1, 2.

### The Parties Performed under the Manufacture Agreement

20.    The parties performed under the Manufacture Agreement for numerous years, and continue to perform under the Manufacture Agreement with respect to those Approved Customers who entered into a license agreement with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels.

21.    ScriptChek performed its obligations pursuant to the Manufacture Agreement, in that it provided the non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley pursuant to the terms and conditions set forth in the Manufacture Agreement.

22.    ScriptChek entered into written License Agreements with Approved Customers for the Approved Customers to use the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, ¶ 1.

23.    R.R. Donnelley manufactured and sold the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.    *See* Manufacture Agreement, ¶¶ 1, 2.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

24.     As referenced in the Manufacture Agreement, patents were issued to ScriptChek. *See, e.g.*, Manufacture Agreement, ¶¶ 3, 4.

25.     ScriptChek provided to R.R. Donnelley confidential and proprietary information, specifications, know-how, and other protected information and materials to be used by R.R. Donnelly solely in furtherance of R.R. Donnelley's manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

26.     The Manufacture Agreement provides that the term of the Manufacture Agreement shall extend to the end of the life of the last of the patents coming within the provisions of the Manufacture Agreement. *See* Manufacture Agreement, ¶ 3.

### R.R. Donnelley Breached the Manufacture Agreement

27.     R.R. Donnelley has been manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of the Manufacture Agreement.

28.     As a result, on or about October 29, 2019, ScriptChek, by and through its undersigned counsel, sent a demand letter to R.R. Donnelley, which put R.R. Donnelley on notice that ScriptChek has elected to exercise its right to terminate the Manufacture Agreement with R.R. Donnelley, demanded that R.R. Donnelley cease and desist from using any and all of ScriptChek's proprietary information in any form, including but not limited to, the manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels, demanded that R.R. Donnelley provide an accounting of all sales of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers,

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL. (305) 371-2223

CASE NO.:

and demanded that R.R. Donnelley immediately return all confidential and proprietary materials in R.R. Donnelley's possession regarding the patented ScriptChek Extended Tab Prescription Drug Labels.

29.     On or about November 15, 2019, ScriptChek, by and through its undersigned counsel, sent Mr. Paul Rodriguez, Esq., Vice President and Chief International, Privacy and Intellectual Property Counsel for R.R. Donnelley, photographs of prescription drug bottles obtained from CVS Pharmacy which contain ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels, per Mr. Rodriguez's request.

30.     On information and belief, R.R. Donnelley has utilized, and is still utilizing, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to print and supply non-approved customers, including but not limited to CVS Pharmacy, with patented ScriptChek Extended Tab Prescription Drug Labels for the non-approved customers' prescription drug bottles, without ScriptChek's approval, in violation of the Manufacture Agreement.

31.     On information and belief, R.R. Donnelley has sold, and is still selling, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, for the non-approved customers' prescription drug bottles, without ScriptChek's approval, in violation of the Manufacture Agreement.

32.     In addition, on or about November 15, 2019, ScriptChek, by and through its undersigned counsel, demanded that R.R. Donnelley provide it with die lines that were provided to R.R. Donnelley by CVS Pharmacy, and any die lines R.R. Donnelley sent to

CASE NO.:

CVS Pharmacy for its approval, in order to see the folding perforation on the die line, as well as samples of the actual blank labels which R.R. Donnelley provided to CVS Pharmacy. A die line is a diagram showing the cut lines and folds of a package to ensure proper printing layout.

33.    Despite notice, R.R. Donnelley has failed to provide ScriptChek with any of the materials demanded by ScriptChek, and has failed to cease its sale of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of the Manufacture Agreement.

34.    ScriptChek has incurred and continues to incur damages as a result of R.R. Donnelley's violations of the Manufacture Agreement.

## R.R. Donnelley Acknowledged the Strictly Confidential Nature of ScriptChek's Confidential and Proprietary Information Provided to R.R. Donnelley

35.    R.R. Donnelly's predecessor, Moore Wallace entered into a Mutual Confidentiality Agreement in September 2003 with ScriptChek.

36.    In the Mutual Confidentiality Agreement, R.R. Donnelley acknowledged that the parties' anticipated business relationship would involve the disclosure by ScriptChek of ScriptChek's confidential and proprietary information.

37.    In the Mutual Confidentiality Agreement, R.R. Donnelley acknowledged the strictly confidential nature of ScriptChek's confidential and proprietary information.

38.    In the Mutual Confidentiality Agreement, R.R. Donnelly agreed to protect ScriptChek's confidential and proprietary information by using a standard of care at least

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

equal to that which R.R. Donnelly applies to safeguard its own highly confidential internal information.

39.     The parties' Mutual Confidentiality Agreement was the product of negotiation between the parties, and it was executed in September 2003 by the Chief Financial Officer of Operations of R.R. Donnelly's predecessor, Richard McMichael, and by the President of ScriptChek, Stacy Kaufman.

40.     Almost three years after the parties entered into the Mutual Confidentiality Agreement, the parties' entered into the Manufacture Agreement.

41.     All conditions precedent to filing this action have been performed, have occurred, have been satisfied, or have been waived.

## COUNT I
## BREACH OF CONTRACT
### (Non-Exclusive Limited Right to Manufacture)

42.     ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43.     ScriptChek pleads this Count for Breach of Contract in the alternative to all other relief requested herein.

44.     Pursuant to ¶ 1 of the Manufacture Agreement, ScriptChek granted R.R. Donnelley a "non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by [ScriptChek], hereinafter referred to as 'Approved Customers' that have entered into written License Agreements with [ScriptChek] to use the Extended Tab Prescription Drug Label."

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL. (305) 371-2223

45.    Pursuant to ¶ 4 of the Manufacture Agreement, R.R. Donnelley was obligated to "mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from [ScriptChek] of the issuance of any pending patents, 'Patented' with the patent numbers and proper dates."

46.    ScriptChek performed its obligations pursuant to the Manufacture Agreement, in that it provided the non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley pursuant to the terms and conditions set forth in the Manufacture Agreement.

47.    R.R. Donnelley breached the Manufacture Agreement with ScriptChek: (1) by manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of ¶ 1 of the Manufacture Agreement; and (2) by failing to include "ScriptChek ®" on the patented ScriptChek Extended Tab Prescription Drug Labels sold by R.R. Donnelley, in violation of ¶ 4 of the Manufacture Agreement.

48.    ScriptChek has been damaged and continues to be damaged as a result.

49.    In addition to the relief requested herein, ScriptChek hereby demands that R.R. Donnelley immediately cease and desist from any and all manufacturing of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers pursuant to ¶ 1 of the Manufacture Agreement.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands a Judgment against Defendant, R.R. DONNELLEY & SONS COMPANY,

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL. (305) 371-2223

CASE NO.:

INC., for damages plus prejudgment interest and costs, and for such other and further relief as this Court deems just, equitable and proper.

### COUNT II
### BREACH OF CONTRACT
### (Books of Account and Quarterly Reports)

50.     ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

51.     ScriptChek pleads this Count for Breach of Contract in the alternative to all other relief requested herein.

52.     Pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "keep proper books of account accurately reflecting the customers of [R.R. Donnelley] for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement."

53.     In addition, pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "render written reports quarterly to [ScriptChek] not later than the 15th day of the month following each contract quarter of this Agreement", which reports were to contain, *inter alia*, the name and address of each customer, the dates of sale to each customer, and the total number of labels sold to each customer. *Id.*

54.     R.R. Donnelley breached the Manufacture Agreement with ScriptChek by failing to keep proper books of account and failing to render written reports quarterly to ScriptChek, in violation of ¶ 5 of the Manufacture Agreement.

55.     ScriptChek has been damaged and continues to be damaged as a result.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands a Judgment against Defendant, R.R. DONNELLEY & SONS COMPANY,

INC., for damages plus prejudgment interest and costs, and for such other and further relief as this Court deems just, equitable and proper.

## COUNT III
### SPECIFIC PERFORMANCE OF CONTRACT
### (Books of Account and Written Quarterly Reports)

56. ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

57. ScriptChek pleads this Count for Specific Performance of Contract in the alternative to all other relief requested herein.

58. This is an action for Specific Performance of R.R. Donnelley's express written contractual obligation to keep proper books of account and to render written reports quarterly to ScriptChek, as set forth in the Manufacture Agreement which is attached hereto as Exhibit "A".

59. Pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "keep proper books of account accurately reflecting the customer(s) of [R.R. Donnelley] for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement".

60. In addition, pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "render written reports quarterly to [ScriptChek] not later than the 15th day of the month following each contract quarter of this Agreement", which reports were to contain, *inter alia*, the name and address of each customer, the dates of sales to each customer, and the total number of labels sold to each customer. *Id.*

61.    The Manufacture Agreement required R.R. Donnelley to keep proper books of account and to render the written reports quarterly to ScriptChek, and R.R. Donnelley has failed to do so.

62.    ScriptChek is entitled to specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement which requires R.R. Donnelley to keep proper books of account and to render written reports quarterly to ScriptChek.

63.    ScriptChek is clearly entitled to specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement to keep proper books of account and render written reports as specified in ¶ 5 of the Manufacture Agreement from 2006 to the present.

64.    ScriptChek has no adequate remedy at law.

65.    Under the circumstances, justice requires that ScriptChek be granted specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands that this Court enter a Judgment granting specific performance of ¶ 5 of the Manufacture Agreement and requiring R.R. DONNELLEY & SONS COMPANY, INC., to perform the contractual obligations by providing SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., with the books of account and written reports specified in ¶ 5 of the Manufacture Agreement from 2006 to the present, and for such other and further relief as this Court deems just, equitable and proper.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## COUNT IV
## UNJUST ENRICHMENT

66.     ScriptChek realleges and reasserts the allegations contained in Paragraphs 3-6, 8, and 41 as if fully set forth herein.

67.     ScriptChek pleads this Count for Unjust Enrichment in the alternative to all other relief requested herein.

68.     ScriptChek has conferred a benefit on R.R. Donnelley, who has knowledge thereof.

69.     R.R. Donnelley has voluntarily accepted and retained the benefit conferred by ScriptChek.

70.     The circumstances are such that it would be inequitable for R.R. Donnelley to retain the benefit without paying the value thereof to ScriptChek, and R.R. Donnelley must provide restitution to ScriptChek.

71.     R.R. Donnelley's retention of the benefits conferred by ScriptChek without paying the value thereof to ScriptChek would violate good conscience and fundamental principles of justice or equity.

72.     ScriptChek granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell ScriptChek's Extended Tab Prescription Drug Labels for the limited purpose of selling the Extended Tab Prescription Drug Labels only to customers approved by ScriptChek (the "Approved Customers") who have entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels.

73.     The Extended Tab Prescription Drug Labels are prescription labels for displaying additional information printed on a tab extending from the label.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

74.   R.R. Donnelley was obligated to mark all patented ScriptChek Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from ScriptChek of the issuance of any pending patents, "Patented" with the patent numbers and proper dates.

75.   R.R. Donnelley agreed to manufacture ScriptChek's patented Extended Tab Prescription Drug Labels for the purpose of selling them only to ScriptChek's Approved Customers.

76.   R.R. Donnelley agreed not to sell the patented ScriptChek Extended Tab Prescription Drug Labels to customers who were not approved by ScriptChek and who had not entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels.

77.   ScriptChek provided the non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley.

78.   ScriptChek entered into written License Agreements with Approved Customers for the Approved Customers to use the patented ScriptChek Extended Tab Prescription Drug Labels.

79.   R.R. Donnelley manufactured and sold the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

80.   ScriptChek provided to R.R. Donnelley confidential and proprietary information, specifications, know-how, and other protected information and materials to be used by R.R. Donnelly solely in furtherance of R.R. Donnelley's manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

81.     R.R. Donnelley has been manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy.

82.     As a result, on or about October 29, 2019, ScriptChek, by and through its undersigned counsel, sent a demand letter to R.R. Donnelley, in which ScriptChek, *inter alia*, demanded that R.R. Donnelley cease and desist from using any and all of ScriptChek's proprietary information in any form, including but not limited to, the manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels, demanded that R.R. Donnelley provide an accounting of all sales of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, and demanded that R.R. Donnelley immediately return all confidential and proprietary materials in R.R. Donnelley's possession regarding the patented ScriptChek Extended Tab Prescription Drug Labels.

83.     On or about November 15, 2019, ScriptChek, by and through its undersigned counsel, sent Mr. Paul Rodriguez, Esq., Vice President and Chief International, Privacy and Intellectual Property Counsel for R.R. Donnelley, photographs of prescription drug bottles obtained from CVS Pharmacy which contain ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels, per Mr. Rodriguez's request.

84.     On information and belief, R.R. Donnelley has utilized, and is still utilizing, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to print and supply non-approved customers, including but not limited to CVS Pharmacy, with patented ScriptChek Extended Tab Prescription Drug Labels for the non-approved customers' prescription drug bottles, without ScriptChek's approval.

CASE NO.:

85.     On information and belief, R.R. Donnelley has sold, and is still selling, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, for the non-approved customers' prescription drug bottles, without ScriptChek's approval, and R.R. Donnelley has been unjustly enriched by such sales.

86.     In addition, on or about November 15, 2019, ScriptChek, by and through its undersigned counsel, demanded that R.R. Donnelley provide it with die lines that were provided to R.R. Donnelley by CVS Pharmacy, and any die lines R.R. Donnelley sent to CVS Pharmacy for its approval, in order to see the folding perforation on the die line, as well as samples of the actual blank labels which R.R. Donnelley provided to CVS Pharmacy. A die line is a diagram showing the cut lines and folds of a package to ensure proper printing layout.

87.     Despite notice, R.R. Donnelley has failed to provide ScriptChek with any of the materials demanded by ScriptChek, and has failed to cease its sale of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy.

88.     R.R. Donnelley has been and continues to be unjustly enriched by ScriptChek.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands that this Court enter a Judgment for unjust enrichment against R.R. DONNELLEY & SONS COMPANY, INC., and for such other and further relief as this Court deems just, equitable and proper.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## DEMAND FOR JURY TRIAL

Plaintiff demands Trial by Jury on issues so triable.

Respectfully submitted,

SOLOWSKY & ALLEN, P.L.
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com

By: /s/ Richard L. Allen
      RICHARD L. ALLEN
      Florida Bar No. 295485

and

MANSFIELD BRONSTEIN & STONE,
LLP
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com

By: /s/ Gary N. Mansfield
      GARY N. MANSFIELD
      Florida Bar No. 61913

m:\main\scriptchek visual\pleadings\2020-02-24 complaint.docx



# EXHIBIT A

## Non-Exclusive Limited License to Manufacture

This Agreement, made and entered into, in duplicate, this first day of August, 2006, by and between the Scriptchek Visual Verification Systems, Inc, a corporation organized and doing business under and by virtue of the laws of the State of Florida, hereinafter referred to as the "Licensor," and Moore Wallace North America, Inc., a corporation organized and existing under and by virtue of the laws of the State of Delaware, hereinafter referred to as the "Licensee."

### Witnesseth:

Whereas, the Licensor is the owner of all right, title and interest in and to certain Inventions in a certain Extended Tab Prescription Drug Label ("Extended Tab Prescription Drug Label"), which inventions are the subject of certain Pending Patent Applications in the United States and Canada, said inventions and Pending Patent Applications being hereinafter referred to collectively as "International Patents";

Whereas, the Licensee desires to obtain the non-exclusive right to manufacture and sell said Extended Tab Prescription Drug Label and the Licensor desires to grant the same;

Now, therefore, in consideration of the premises and the payment of one dollar ($1.00) and/or other valuable consideration by each party to the other, the receipt whereof is hereby mutually acknowledged, and of the covenants and agreements hereinafter mentioned to be faithfully kept and performed by the parties hereto, it is mutually agreed as follows:

1. Grant of Non-Exclusive Limited License. The Licensor hereby grants to the Licensee the non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by Licensor, hereinafter referred to as "Approved Customers" that have entered into written License Agreements with Licensor to use the Extended Tab Prescription Drug Label. .

2. Agreement of Licensee to Manufacture. The Licensee hereby accepts said non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the purpose of selling the Extended Tab Prescription Drug Label only to the Approved Customers.

3. Term. The term of the grant hereinabove given in Section 1, unless sooner terminated as hereinafter provided for, shall extend to the end of the life of the last of the International Patents coming within the provisions of this Agreement.

In the event that all patent claims included within the Licensor's International Patents shall be held invalid in a decision by a court of competent jurisdiction and last resort in any country and from which no appeal has or can be taken, then Licensee shall continue to manufacture and sell under the then presumed patent, the existence of which is in full force for the same period of time.

4. Marking. The Licensee shall mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) Scriptchek ®, (b) Patents Pending, and (c) upon notice from Licensor of the issuance of any of the pending patents, "Patented" with the patent numbers and proper dates.

5. Books of Account. The Licensee shall keep proper books of account accurately reflecting the customer(s) of the Licensee for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement and render written reports quarterly to the Licensor not later than the 15th day of the month following each contract quarter of this Agreement

including at least (1) name of each customer, (2) address of each customer, (3) contact name at each customer, (4) dates of sale(s) to each customer and (5) total number of labels sold to each customer on each date. In the event of failure of the Licensee to render any report as herein provided for, the Licensor at its option may have such report prepared by and delivered to itself by its authorized representative and at the expense of the Licensee.

6. Nonassignability.   The rights to manufacture and sell herein granted to the Licensee are personal to it and the same shall not be assigned, divided or apportioned, in whole or in part, voluntarily or by operation of law, without written consent from Licensor.

7. Cancellation Upon Default.   If the Licensee in any manner violates any of the terms or conditions of this agreement, or in any manner fails to comply with or carry out in every manner and respect any and all of the provisions of this agreement, and continues so to do for fifteen (15) days after notice thereof in writing given by the Licensor to the Licensee delivered to the last known address of the Licensee stating the nature and character of the alleged breach with sufficient definiteness and particularity to permit the Licensee to identify and investigate the nature of such alleged breach, then in that event, the Licensor may at its option, and without waiving or in any manner affecting any of its other then existing rights against the Licensee, cancel the right of the Licensee to manufacture and sell under this agreement by giving the Licensee ten (10) days' notice by registered mail, sent to its last known address, of the Licensor's election to cancel such manufacturing and selling rights under this agreement, and all such manufacturing and selling rights herein granted to the Licensee shall then terminate at the end of said ten-day period;  provided, however, that if the Licensee cures the breach within the ten (10) days after the first notice herein provided for the Licensor shall not thereafter have the option or election of canceling the manufacturing and selling rights given the Licensee under this agreement for said specific breach;  and provided further, that the failure of the Licensor to at any time cancel such manufacturing and selling rights to the Licensee under this agreement as herein provided for, shall not prevent or preclude the Licensor at any future time for any other violations by the Licensee, from taking advantage of the provisions of this section of the Agreement.

8. Right of Parties to Cancel.   At any time, either party may, upon giving the other party three (3) months' written notice, cancel and terminate this Agreement without cause.

9. Inventions.   Any additional inventions, applications, and/or patents pertaining to Extended Tab Prescription Drug Label and associated devices hereafter acquired or coming within the control of the Licensor shall, at the option of the Licensee, be included under the provisions of this agreement.  The Licensor agrees to promptly advise the Licensee from time to time of any such future acquired invention, application, and/or patent, and the Licensee may, within sixty (60) days from the receipt of such notice by the Licensee and the information necessary to make the election, elect to have such invention, application and/or patent included under the provisions of this agreement.

10. Warranty.   The Licensor represents that it has the exclusive rights to the International Patents and that under the provisions of section 11 hereof the Licensee shall have the option to include any such future inventions, if any, under the provisions of this Agreement.

11. Interpretation.   In this agreement the term "Extended Tab Prescription Drug Label" shall mean a prescription label for displaying additional information printed on a tab extending from the label.

12. Successors.   This agreement shall inure to the benefit of and be binding upon the heirs, administrators and executors of the Licensor.

13. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Florida. Jurisdiction of any dispute hereunder may be in Broward County, Florida and the parties hereby agree to the non-exclusive jurisdiction of the state and federal courts located in Broward County, Florida in connection with any dispute arising hereunder.

14. This Agreement and the terms and provisions hereof may only be changed, waived or discharged by an instrument in writing signed by the parties hereto.

15. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the Agreement to be drafted.

16. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one agreement.

17. If, for any reason, any provision of the Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement, and the Agreement shall otherwise remain in full force and effect.

18. Any notice to be given under this Agreement shall be sufficient if it is in writing and is sent by certified or registered mail to the Contractor at his address as the same appears on the books and records of the Company or to the company at its principal office, attention of the President, or otherwise as directed by the Company, from time to time.

In Witness Whereof the parties have caused this agreement to be executed effective the date first written above.

LICENSOR:

By:
Print Name: Stacy Kaufman
Title: President

LICENSEE:

By:
Print Name: Robert G. Nieland
Title: Vice President, Associate General Counsel

# Exhibit 2

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting <u>data</u> pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>ScriptChek Visual Verification Systems, Inc.</u>
 Plaintiff
        vs.
<u>R.R. Donnelley & Sons Company, Inc.</u>
Defendant

---

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>30,001</u>

**III.    TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
　　☐ Business governance
　　☐ Business torts
　　☐ Environmental/Toxic tort
　　☐ Third party indemnification
　　☐ Construction defect
　　☐ Mass tort
　　☐ Negligent security
　　☐ Nursing home negligence
　　☐ Premises liability – commercial
　　☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
　　☐ Commercial foreclosure
　　☐ Homestead residential foreclosure
　　☐ Non-homestead residential foreclosure
　　☐ Other real property actions
☐ Professional malpractice
　　☐ Malpractice – business
　　☐ Malpractice – medical

　　☐ Malpractice – other professional
☐ Other
　　☐ Antitrust/Trade Regulation
　　☐ Business Transaction
　　☐ Circuit Civil - Not Applicable
　　☐ Constitutional challenge-statute or ordinance
　　☐ Constitutional challenge-proposed amendment
　　☐ Corporate Trusts
　　☐ Discrimination-employment or other
　　☐ Insurance claims
　　☐ Intellectual property
　　☐ Libel/Slander
　　☐ Shareholder derivative action
　　☐ Securities litigation
　　☐ Trade secrets
　　☐ Trust litigation

☐ County Civil
　　☐ Small Claims up to $8,000
　　☐ Civil
　　☐ Replevins
　　☐ Evictions
　　☐ Other civil (non-monetary)

---

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☐  Non-monetary declaratory or injunctive relief;
☐  Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:**
(Specify)

(4) Count I-Breach of Contract, II-Breach of Contract, III-Specific Performance of Contract, IV-Unjust Enrichment

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐  Yes
☒  No

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒  No
☐  Yes – If "yes" list all related cases by name, case number and court:

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒  Yes
☐  No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ Richard L Allen
                    Attorney or party
FL Bar No.: 295485
                (Bar number, if attorney)
                Richard L Allen
                (Type or print name)
Date:   02/24/2020

# Exhibit 3

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____/

## PLAINTIFF SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC.'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT R.R. DONNELLEY & SONS COMPANY, INC.

Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida

Corporation ("ScriptChek"), by and through its undersigned counsel, and pursuant to the

Florida Rules of Civil Procedure, hereby request that Defendant R.R. DONNELLEY &

SONS COMPANY, INC., a Delaware Corporation, timely respond to this First Request

for Production in compliance with the Rules, and the instructions and definitions contained

herein.

## INSTRUCTIONS

This Request is continuing in nature, and the answers and documents must be
supplemented by you at such time in the future as any facts, information, and documents
discovered hereafter have been ascertained, and such supplemental answers, information

and documents shall be served upon the undersigned attorneys seasonably after such discovery.

Plaintiff requests that you timely produce the items specified herein for inspection and copying.

You are required to produce a document or tangible thing if it is within your possession, custody, or control. Possession, custody, or control includes constructive possession, such that you need not have actual physical possession. As long as you have the superior right to compel the production from a third party (including an agency, authority or representative), you have possession, custody, or control.

If you cannot produce the documents listed herein in full after exercising due diligence to secure such documents, please so state and specify the reason(s) for your inability to produce the documents and stating whatever information you have relating to the location and/or possession, custody, or control of the documents.

For each document which you seek to withhold under a claim of privilege, work-product, or otherwise, the following information shall be provided in a Privilege Log: the specific ground for withholding each such document; a statement of the basis on which privilege is claimed; the place, date, and the manner of rendering or otherwise preparing the document; the name and title of the sender of the document and the name and title of the recipient of the document; a summary of the contents of the document; the identity of each person to whom the document has heretofore been communicated by copy, exhibition, reading, or substantial summarization; the date of such communication; the employer and title of such person, if any, at the time of such communication; and the current location and custodian of the original and copies of the document or communication.

If any document listed herein has been lost, discarded, or destroyed, you shall identify such document as completely as possible, which identification shall include, but not be limited to, date of disposal, matter of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document.

All documents listed herein shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with categories in this Request. The selection of documents from files and other sources shall be performed in such a manner as to ensure that the file or other source in which the document is obtained may be identified. Any documents listed herein shall be produced in their full and unexpurgated form.

**For those requests for which there are no responsive materials, explicitly indicate "NONE" for each such request.**

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## DEFINITIONS

"**Any**" as used herein includes the word "all," and the word "all" as used herein includes the word "any." "All" shall be construed to include the term "each," and "each" shall be construed to include the word "all."

The connectives "**and**," "**or**," and "**and/or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

"**Books of Account**" shall have the meaning ascribed to it in ¶ 4 of the Manufacture Agreement.

"**Communication**" or "**correspondence**" shall mean any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, contact by any means including written contact by any document, electronic contact, and oral contact by such means as face-to-face meetings and telephone conversations, including but not limited to letters, emails, text messages, iMessages, and postings on any social media site or application, and notes of meetings, conversations and conferences.

"**Complaint**" shall refer to the Complaint filed in the above-captioned case on February 24, 2020.

"**Concerning**" and "**Concern**", when used with respect to a document, subject, or fact, means embodying, containing, evidencing, reflecting, pertaining to, relating to, verifying, regarding, reciting, recording, constituting, supporting, refuting, or referring to.

"**CVS**" shall mean CVS Pharmacy, a subsidiary of CVS HEALTH CORPORATION, INC., a Delaware Corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

"**Document**" or "**documents**" shall be deemed to include, by way of illustration only and not by way of limitation, the following (whether printed or reproduced by any process, written, and/or produced by hand, including the original and any copy which is not identical because of marginal notes or otherwise) which are subject to your custody or control, wherever located, and whether or not claimed to be privileged or otherwise excludable from discovery: electronic data; notes; correspondence; communications of any nature; telegrams; e-mails; text messages; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; calendars; routing slips or memoranda; reports; records; computer records; computer programs; computer disks; USBs or thumb drives; publications; photographs; films; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications and/or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts of, revisions of, or translations of any document; invoices;

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

checks; bills; estimates; account statements; tape recordings (audio or video); and records and dictation belts. Marks on any sheet or side thereof, including but not by way of limitation, initials, stamped indicia, any comment or any notation of any character not a part of the original text, or any reproduction thereof, is to be considered a separate document.

The term **"document"** is intended to include Electronically Stored Information, which includes but is not limited to your word-processing documents; spreadsheets; presentation documents; graphics; animations; images; e-mail (including attachments which shall be kept with the e-mail); instant messages; text messages; chat messages; voice mail; audio, video, and audiovisual recordings; databases and data base subsets; software; and other user, or machine created, digital information which is stored on computer networks, servers, computer systems, desktop computers, laptop computers, home computers, the internet, web pages, archives, screenshots, discs, CDs, DVDs, diskettes, drives, tapes, cartridges, flash drives, jump drives, and other external storage media, personal digital assistants, handheld wireless devices, cellular telephones, iPhones, Blackberries, pagers and voicemail systems.

The term **"document"** includes all non-privileged electronically stored information in native format, including Outlook pst files, (communications, emails, contacts, calendars, to do lists and events, as well as any other activity databases). The term "document" includes all electronic communications and social media postings on your equipment, including but not limited to instant messages, text messages, blogs, tweets, wikis, forum comments, social media communications of any kind (Facebook, and the like), voicemails, videos, online profiles, postings, messages (including, without limitation, tweets, replies, re-tweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, and online communications on your equipment.

**"Each"** as used herein includes the word "every," and the word "every" as used herein includes the word "each."

**"Extended Tab Prescription Drug Label"** shall have the meaning ascribed to it in the Manufacture Agreement.

**"Manufacture Agreement"** shall be deemed to refer to the Non-Exclusive Limited License to Manufacture, entered into on or about August 1, 2006 by ScriptChek and Moore Wallace, the predecessor by merger to R.R. Donnelley. A copy of the Manufacture Agreement is attached to the Complaint as Exhibit "A".

**"Marking"** shall have the meaning ascribed to it in ¶ 4 of the Manufacture Agreement.

**"Person"** shall be deemed to mean any natural person, the estate of any natural person, or any legal entity, including but not limited to a corporation, trust, partnership, unincorporated association, or any officer, director, employee, agent, or other person acting or purporting to act on their behalf.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

"**R.R. Donnelley**" shall be deemed to refer to R.R. DONNELLEY & SONS COMPANY, INC., a Delaware corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.[1]

"**ScriptChek**" shall be deemed to refer to SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

"**You**", "**you**", "**Your**" and "**yours**" for purposes of these Requests shall be deemed to refer to Defendant, R.R. Donnelley, and/or any officer, manager, member, representative, employee, agent, or other person acting on behalf R.R. Donnelley.

The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

The applicable relevant time period for each of the following Requests for Production shall be from January 1, 2006 through the present, unless otherwise specified.

---

[1] For the purposes of these Requests, R.R. Donnelley shall also be deemed to refer to MOORE WALLACE, NORTH AMERICA, INC., a Delaware corporation, which was acquired by merger with R.R. Donnelley, and its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL.(305) 371-2223

CASE NO.:

## REQUESTS

1.    All documents and correspondence concerning the Manufacture Agreement. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

2.    All documents and correspondence concerning the Extended Tab Prescription Drug Label. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

3.    All documents and correspondence between CVS and R.R. Donnelley concerning the Manufacture Agreement. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

4.    All documents and correspondence between CVS and R.R. Donnelley concerning the Extended Tab Prescription Drug Label. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

5.    All documents and correspondence between CVS and R.R. Donnelley concerning the manufacture of any prescription drug labels, including but not limited to any and all die lines provided to CVS by R.R. Donnelley. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

6.    All documents and correspondence between R.R. Donnelley and any other Person concerning the manufacture of any prescription drug labels, including but not limited to any and all die lines provided to such Person by R.R. Donnelley. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

7.    All documents and correspondence concerning the manufacture of the Extended Tab Prescription Drug Label.

8.    All documents and correspondence concerning the Books of Account, including but not limited to the Books of Account themselves, and any and all documents and correspondence concerning same.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

9.      All documents and correspondence concerning the sale(s) of the Extended Tab Prescription Drug Label to any Person.

10.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning the Extended Tab Prescription Drug Label.

11.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning ScriptChek.

12.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning CVS.

13.     All documents and correspondence concerning ScriptChek's allegations as set forth in the Complaint.

14.     All documents concerning ScriptChek.

15.     All documents concerning the Extended Tab Prescription Drug Label.

Respectfully submitted,

SOLOWSKY & ALLEN, P.L.
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com

By:   /s/ Richard L. Allen
          RICHARD L. ALLEN
          Florida Bar No. 295485

and

CASE NO.:

MANSFIELD BRONSTEIN & STONE,
LLP
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com

By:     /s/ Gary N. Mansfield
           GARY N. MANSFIELD
           Florida Bar No. 61913

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

together with the Complaint on the Defendant, R.R. DONNELLEY & SONS COMPANY,

INC.

By;   /s/ Richard L. Allen
           RICHARD L. ALLEN

m:\main\scriptchek visual\pleadings\2020-02-24 first request for production to defendant.docx

# Exhibit 4

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  CACE20003398   DIVISION  08   JUDGE  David A Haimes

**ScriptChek Visual Verification Systems, Inc.**
Plaintiff(s) / Petitioner(s)
v.

**R.R. Donnelley & Sons Company, Inc.**
Defendant(s) / Respondent(s)
_____/

## AGREED ORDER ON DEADLINE FOR DEFENDANT TO RESPOND TO COMPLAINT AND FIRST REQUEST FOR PRODUCTION

THIS CAUSE came before the Court upon the agreement of Plaintiff SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC. ("Plaintiff") and Defendant R.R. DONNELLEY & SONS COMPANY, INC. ("Defendant") regarding the deadline for Defendant to respond to the Complaint and Plaintiff's First Request for Production, and the Court having reviewed the file and being otherwise duly advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

1.   Defendant shall respond to Plaintiff's Complaint on or before May 18, 2020.

2.   Defendant shall respond to Plaintiff's First Request for Production on or before June 1, 2020.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on 03-20-2020.

CACE20003398 03-20-2020 8:35 AM

CACE20003398 03-20-2020 8:35 AM
Hon. David A Haimes
**CIRCUIT JUDGE**
Electronically Signed by David A Haimes

**Copies Furnished To:**
Gary N. Mansfield , E-mail : gary@mblawpa.com
Gary N. Mansfield , E-mail : litigation@mblawpa.com

Gary N. Mansfield , E-mail : dstone@davidstonelaw.com
Paul Rodriguez , E-mail : paul.l.rodriguez@rrd.com
Richard L Allen , E-mail : mlopez@salawmiami.com
Richard L Allen , E-mail : rallen@salawmiami.com
Richard L Allen , E-mail : pleadings@salawmiami.com
Steven Solowsky , E-mail : ssolowsky@salawmiami.com

# Exhibit 5

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
CIVIL DIVISION

SCRIPTCHEK VISUAL )
VERIFICATION SYSTEMS, INC., )
a Florida Corporation, )        Case No. CACE20003398
)
Plaintiff, )
)        Judge David A. Haimes
v. )
)
R.R. DONNELLEY & SONS )
COMPANY, a Delaware )
Corporation, )
)
Defendant. )

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MOTION TO STRIKE, MOTION IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT, AND INCORPORATED MEMORANDUMUM OF LAW

Pursuant to Florida Rule of Civil Procedure 1.140, Defendant R.R. Donnelley & Sons

Company ("R.R. Donnelley"), by and through its undersigned counsel, files this Motion to

Dismiss, Motion to Strike, Motion in the Alternative for More Definite Statement, and

Incorporated Memorandum of Law (the "Motion") in response to Plaintiff ScriptChek Visual

Verification Systems, Inc.'s ("Plaintiff's") Complaint.  In support of the Motion, R.R. Donnelley

states the following:

## I.    INTRODUCTION

On or about February 24, 2020, Plaintiff filed its Complaint against R.R. Donnelley

seeking damages for Breach of Contract (Counts I and II); Specific Performance (Count III); and

recovery for Unjust Enrichment (Count IV).

**A.** **The Non-Exclusive Limited License to Manufacture Agreement**

As alleged by Plaintiff, this case concerns a manufacture agreement entered into between Plaintiff and Moore Wallace North America, Inc. ("Moore Wallace") on or about August 1, 2006, titled "Non-Exclusive Limited License to Manufacture" ("Manufacture Agreement"). This Manufacture Agreement – attached to Plaintiff's Complaint as Exhibit A – granted Moore Wallace "the non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by [Plaintiff] . . . that have entered into written License Agreements with [Plaintiff] to use the Extended Tab Prescription Drug Label." Exhibit A at ¶ 1. As defined by the Manufacture Agreement, the Extended Tab Prescription Drug Label relates to certain then-pending patent applications and is "a prescription label for displaying additional information printed on a tab extending from the label." Exhibit A at Recitals, ¶ 11. In addition to the provisions governing the non-exclusive limited license, the Manufacture Agreement contains other provisions, including a provision to mark the labels and a provision to keep books of account. Exhibit A at ¶¶ 4, 5.

**B.** **Plaintiff's Allegations against R.R. Donnelley**

Plaintiff further alleges that R.R. Donnelley, as successor by merger to Moore Wallace, breached the Manufacture Agreement. Complaint at ¶¶ 6-7, 42-65 (Counts I and II). Plaintiff claims R.R. Donnelley "manufactur[ed] and [sold] the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers." Complaint at ¶ 47. However, nowhere in the Complaint does Plaintiff plead supporting facts such as when, where, and how these Extended Tab Prescription Drug Labels were allegedly manufactured or sold, or even what Plaintiff considers to qualify as its Extended Tab Prescription Drug Labels (including but not

2

limited to any parameters, any related patents, or any unique features that distinguish Plaintiff's certain Extended Tab Prescription Drug Label from other such labels on the market). Plaintiff further claims R.R. Donnelley "fail[ed] to include 'ScriptChek ®' on patented [Plaintiff] Extended Tab Prescription Drug Labels sold by R.R. Donnelley." Complaint at ¶ 47. However, nowhere in the Complaint does Plaintiff plead supporting facts, such as the bases for marking the tabs with Plaintiff's trademark, how this marking provision is central to the Manufacture Agreement, or how Plaintiff was damaged by the alleged breach. Plaintiff claims R.R. Donnelley "fail[ed] to keep proper books of account and fail[ed] to render written reports quarterly to [Plaintiff]." Complaint at ¶ 54. However, nowhere in the Complaint does Plaintiff plead supporting facts, such as the dates and times of any alleged violation or whether Plaintiff attempted to utilize the contractually available remedy for the alleged breach prior to filing suit.

Plaintiff alternatively pleads for specific performance for R.R. Donnelley "to keep proper books of account and to render written reports quarterly to Plaintiff." Yet nowhere in the Complaint does Plaintiff plead facts supporting the contention that it has no adequate remedy at law or why justice requires Plaintiff be granted specific performance or why specific performance of the agreement would be appropriate going forward in view of Plaintiff electing its right to terminate the Manufacture Agreement (*see* Complaint at ¶ 28).

Plaintiff also alternatively pleads that R.R. Donnelley was unjustly enriched at Plaintiff's expense. Yet nowhere in the Complaint does Plaintiff plead facts supporting that it has no adequate remedy at law, the circumstances of how a benefit was conferred to R.R. Donnelley, or why it would be inequitable for R.R Donnelley to retain that alleged benefit.

In addition, in its Complaint, Plaintiff makes multiple references to a Mutual Confidentiality Agreement. *See, e.g.,* Complaint at ¶¶ 35-40. Yet nowhere in the Complaint

3

does the Plaintiff tie this Mutual Confidentiality Agreement to any of its alleged claims, nor does Plaintiff attach this referenced Mutual Confidentiality Agreement to its Complaint.

## II.     PLAINTIFF FAILS TO PROPERLY STATE A CAUSE OF ACTION AND INCLUDES IMMATERIAL INFORMATION IN ITS COMPLAINT

R. R. Donnelley seeks dismissal of the Complaint because Plaintiff's claims fail to state any claim under Florida law. Plaintiff's breach of contract claims (Counts I and II) fail to state a cause of action because, among other things, Plaintiff does not allege the ultimate facts necessary to support the essential elements, namely, that a material breach of a contractual term occurred or that damages were caused by the alleged breach. Plaintiff's specific performance claim (Count III) fails to state a cause of action because, among other things, Plaintiff does not allege the ultimate facts necessary to support the essential elements, namely, that Plaintiff has no adequate remedy at law or that justice requires and that Plaintiff is entitled to specific performance. Finally, Plaintiff's unjust enrichment claim (Count IV) fails to state a cause of action because, among other things, the existence of an express contract negates an unjust enrichment claim and, even despite that, Plaintiff does not allege the ultimate facts necessary to support the essential elements, namely, that Plaintiff has no adequate remedy at law or that a benefit was conferred to R.R. Donnelley and that the claim falls within the statute of limitations.

R.R. Donnelley further seeks to strike Paragraphs 35-40, along with any other mention of the Mutual Confidentiality Agreement in Plaintiff's Complaint, as immaterial, since: (a) the Complaint fails to explain the relevance of the Mutual Confidentiality Agreement to any of the counts pursued by Plaintiff; and (b) the Plaintiff failed to include a copy of the Mutual Confidentiality Agreement as an attachment to the Complaint.

Should any part of Plaintiff's Complaint survive dismissal – or should any part of Paragraphs 35-40 or any reference to the Mutual Confidentiality Agreement in Plaintiff's

Complaint survive the motion to strike – R.R. Donnelley moves, in the alternative, for Plaintiff

to provide a more definite statement on the surviving count(s), alleged damages, and any

surviving references to the Mutual Confidentiality Agreement, in order for R.R. Donnelley to

fully and properly prepare a response and defense to any surviving allegations.

## III.   **MOTION TO DISMISS**

### A.   **Legal Standard for Motion to Dismiss**

"A motion to dismiss for failure to state a cause of action tests the legal sufficiency of a

complaint." *Hosp. Constructors Ltd. ex rel. Lifemark Hosps. of Fla., Inc. v. Lefor*, 749 So. 2d

546, 547 (Fla. 2d DCA 2000); *see also Pac. Ins. Co. v. Botelho*, 891 So. 2d 587, 590 (Fla. 3d

DCA 2004); *Casserly v. City of Delray Beach*, 288 So. 3d 135, 138 (Fla. 4th DCA 2017).  In

other words, the primary purpose of a motion to dismiss is to ask the trial court to determine

whether the complaint – as drafted – properly states a cause of action upon which relief can be

granted and, if it does not, to enter an order of dismissal.  *See Sussan v. Nova Se. Univ.*, 723 So.

2d 933 (Fla. 4th DCA 1999).

In determining the merits of a motion to dismiss, the trial court is confined to the four

corners of the complaint – including the attachments thereto – and the allegations of which must

be accepted as true and considered in the light most favorable to the nonmoving party.  *K.W.*

*Brown & Co. v. McCutchen*, 819 So. 2d 977, 979 (Fla. 4th DCA 2002).

However, it is clear that Florida is a fact-pleading state rather than a notice-pleading

jurisdiction.  *See Deloitte & Touche v. Gencor Industries, Inc.*, 929 So. 2d 678, 681 (Fla. 5th

DCA 2006); *Horowitz v. Laske*, 855 So. 2d 169, 172-73 (Fla. 5th DCA 2003).  Mere opinions or

conclusions unsupported by specific facts are improper and therefore are not presumed true on a

motion to dismiss.  *Brandon v. Pinellas County*, 141 So. 2d 278, 279 (Fla. 2d DCA 1962); *Other*

*Place of Miami, Inc. v. City of Hialeah Gardens*, 353 So. 2d 861, 862 (Fla. 3d DCA 1977).  And where the allegations of the complaint do not establish a cause of action for which relief may be granted, a plaintiff's cause of action may be dismissed.  *Sessler v. Arshak Corp.*, 464 So. 2d 612, 613 (Fla. 4th DCA 1985); *Feldman v. Houle*, 400 So. 2d 180, 180-81 (Fla. 4th DCA 1981).

### B.      Counts I and II Fail to State a Claim for Breach of Contract

Under Florida law, "an adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (*citing J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *Indus. Med. Pub. Co. v. Colonial Press of Miami, Inc.*, 181 So. 2d 19, 20 (Fla. 3d DCA 1966)).  For a claim of breach of contract, Florida contract law requires that the breach must be material.  *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 734 (S.D. Fla. 2007) (interpreting Florida law) (*citing J.J. Gumberg Co.* at 1049).  "To constitute a material breach, a defendant's nonperformance of a contract must go to the essence of the contract." *Covelli Family, L.P. v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (internal quotations omitted) (*quoting Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)).  On the other hand, a defendant's "failure to perform some minor part of [its] contractual duty cannot be classified as a material or vital breach." *Id*. (*quoting Beefy Trail, Inc.* at 857); *see also Atlanta Jet v. Liberty Aircraft Services, LLC*, 866 So. 2d 148, 150 (Fla. 4th DCA 2004) (quoting same).

In Counts I and II of the Complaint, Plaintiff alleges breaches of the Manufacture Agreement, but Plaintiff fails to adequately plead these claims.  While Plaintiff alleges the existence of a valid contract – in addition to including the Manufacture Agreement as part of the Complaint – Plaintiff fails to plead sufficient facts to establish a material breach and damages.

1.    Plaintiff Fails to Plead Ultimate Facts to Establish Material Breach in
        Count I

In Count I, Plaintiff alleges that R.R. Donnelley "breached the Manufacture Agreement

with [Plaintiff]: (1) by manufacturing and selling the patented ScriptChek Extended Tab

Prescription Drug Labels to non-approved customers, including but not limited to CVS

Pharmacy, in violation of ¶ 1 of the Manufacture Agreement; and (2) by failing to include

'ScriptChek ®' on patented ScriptChek Extended Tab Prescription Drug Labels sold by R.R.

Donnelley, in violation of ¶ 4 of the Manufacture Agreement."  Complaint at ¶ 47.

As to the first alleged breach, Plaintiff pleads no facts to support its claim of a breach.

First, rather than identify the products allegedly sold in breach of the contract with any

specificity, Plaintiff merely uses a label to encompass the products at issue: "patented ScriptChek

Extended Tab Prescription Drug Labels."  This is misleading and obscures the ultimate facts

Plaintiff has to plead to establish a breach of the agreement.  First, the use of "patented" in

conjunction with the label indicates that the products are covered by at least one valid patent.

However, no such valid patent(s) is identified in the Complaint.  Even if a patent or patents were

identified, to establish the alleged breach, Plaintiff would have to establish exactly how the

products at issue meet each and every limitation of at least one claim of each patent.  *See*

*Arunachalam v. Apple, Inc.*, —F. App'x—, 2020 WL 729658, at *3 (Fed. Cir. Feb. 13, 2020)

(affirming dismissal where plaintiff failed to specifically allege how the defendants' products fell

under plaintiff's patent or how defendants' products actually infringed plaintiff's patent); *see*

*also E.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *2 (N.D.

Cal. Aug. 22, 2016) (analyzing case law and holding that patent infringement pleadings must

"allege that the accused products practice each of the limitations found in at least one asserted

claim"); *Atlas IP, LLC v. Exelon Corp.*, No. 15-cv-10746, 2016 WL 2866134, at *5 (N.D. Ill.

7

May 17, 2016) ("[F]actual allegations that do not permit a court to infer that the accused products infringes each element of at least one claim are not suggestive of infringement."). Plaintiff fails to identify the specific patents and claims it believes cover the products at issue and fails to provide facts showing how the product features are covered by the unspecified patent claims.

Second, the requested use of "ScriptChek" on the label for the products at issue suggests falsely that the products at issue have some association with ScriptChek, when in fact there are no facts alleged to support such a conclusion. To the extent Plaintiff is alleging some association between the products at issue and Plaintiff, Plaintiff fails to supply the facts supporting any such association. In sum, Plaintiff pleads no facts to establish its stated legal contention and conclusion that a breach occurred, such as identifying what it considers to be its proprietary and patented Extended Tab Prescription Drug Labels, including but not limited to what patents would cover these labels, the features of these labels that establish they are covered by any patent(s), and any other information that would lead these labels to be considered Plaintiff's proprietary and patented material or otherwise associated with Plaintiff.

As for the second alleged breach in Count I, Plaintiff pleads no facts to establish how the inclusion – or lack thereof – of ScriptChek's trademark and the trademark registration symbol (*i.e.*, ScriptChek®) goes to the essence of the contract and therefore constitutes a material breach. And again, Plaintiff alleges no facts regarding the relevant or applicable patents or other intellectual property at issue to support how the lack of marking the products with Plaintiff's trademark actually materially breached the Manufacture Agreement.

2.    Plaintiff Fails to Plead Ultimate Facts to Establish Material Breach in Count II

In Count II, Plaintiff alleges that R.R. Donnelley "breached the Manufacture Agreement with [Plaintiff] by failing to keep proper books of accounts and failing to render written reports quarterly to [Plaintiff], in violation of ¶ 5 of the Manufacture Agreement." Complaint at ¶ 54. However, once again, Plaintiff fails to plead sufficient facts to either establish that this constitutes a material breach of the Manufacture Agreement or establish how R.R. Donnelley allegedly failed to keep proper books or render written reports (*e.g.*, how were the books improperly kept, how the reports were non-compliant, how often, if ever, or when these issues arose, etc.). Indeed, despite the fact that the Manufacture Agreement was entered into almost 14 years ago, Plaintiff fails to allege any facts with respect to when this alleged breach occurred or whether and when there was performance under the contract. Plaintiff also fails to acknowledge whether it sought the remedy outlined in the Manufacture Agreement before filing suit for breach of contract. See Exhibit A at ¶ 5 ("In the event of failure of the Licensee to render any report as herein provided for, the Licensor at its option may have such report prepared by and delivered to itself by its authorized representative … .").

3.    Plaintiff Fails to Plead Ultimate Facts to Establish Damages in Counts I and II

For both Counts I and II, Plaintiff likewise fails to sufficiently plead facts supporting its contention that it suffered damages. Plaintiff pleads no facts supporting how it suffered damages from any alleged failure to mark with Plaintiff's trademark and the trademark registration symbol. Plaintiff pleads no facts supporting the extent of damages it suffered from R.R. Donnelley allegedly selling Plaintiff's so-called proprietary and patented label to non-approved buyers. And Plaintiff pleads no facts supporting how the alleged failure to keep books or render

written reports led to Plaintiff suffering damages, particularly where, as pled, Plaintiff failed to make use of its contractual remedy. Indeed, with the exception of Plaintiff's claim that this lawsuit in its totality "is an action for damages in which the amount in controversy exceeds $30,000.00" (Complaint at ¶ 3), Plaintiff provides no detail as to damages, particularly in relation to the breach-of-contract claims, and without factual support for damages, the breach-of-contract claims must be dismissed.

### C.   Count III Fails to State a Claim for Specific Performance

Specific performance "is an equitable remedy." *Brooks v. Watchtower Bible and Trade Soc. of Florida, Inc.*, 706 So. 2d 85, 90 (Fla. 4th DCA 1998). It "is well settled that one cannot invoke equity jurisdiction where there is an adequate remedy at law." *Zuckerman v. Alex Hofrichter, P.A.*, 630 So. 2d 210, 211 (Fla. 3d DCA 1993); *see also Esposito v. Horning*, 416 So. 2d 896, 898 (Fla. 4th DCA 1982) ("Basic to jurisdiction in equity is the rule that there must be a lack of an adequate remedy at law.") (*quoting First Nat'l Bank in St. Petersburg v. Ferris*, 156 So. 2d 421, 423 (Fla. 2d DCA 1963)). "To demonstrate a right to this remedy under Florida law, a plaintiff must plead *facts* showing: (1) the plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it." *La Gorce Palace Condo Assoc., Inc. v. QBE Insurance Corp.*, 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010) (dismissing claim for specific performance where plaintiff failed to plead sufficient facts to support the first and second elements) (*citing Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005)) (emphasis added). "In addition to pleading facts supporting the second element of no adequate remedy at law, the first element of the claim requires litigants seeking the remedy to establish the legal requirements of entitlement to the right 'by clear, definite, and certain proof.'" *Id*. (*quoting Castigliano*, 911 So. 2d at 148).

10

In Count III of the Complaint, Plaintiff alleges that justice requires that it be granted specific performance (Complaint at ¶ 65), but fails to include a single factual allegation showing how justice requires specific performance of the Manufacture Agreement. This alone serves as a basis for dismissing the claim. Plaintiff likewise asserts that it has no adequate remedy at law (Complaint at ¶ 64), but again fails to provide any facts to support that allegation. In fact, Plaintiff fails to provide factual support for any of the elements required to seek specific performance.

In addition to failing to provide factual support for the elements of specific performance, Plaintiff negates its own claim that it is clearly entitled to this remedy through the Manufacture Agreement attached to the Complaint as Exhibit A. As stated in the Manufacture Agreement, "[i]n the event of failure of the Licensee to render any report as herein provided for, the Licensor at its option may have such report prepared by and delivered to itself by its authorized representative." Exhibit A at ¶ 5. At no point in its Complaint does Plaintiff allege that it even attempted to exercise this contractual remedy prior to seeking specific performance. It is inapposite to claim clear entitlement to equitable relief – and that justice requires so – when not all contractually available remedies have been used.

Moreover, it is evident from the allegations of the Complaint (*see* Complaint at ¶ 63) that Plaintiff has inordinately delayed seeking relief. Laches or delay on the part of the party seeking specific performance constitute a sufficient ground for denying specific performance. *See De Huy v. Osborne*, 96 Fla. 435, 118 So. 161, 163 (1928) ("It is a familiar principle that, where a party is not reasonably diligent under all the circumstances in asserting his claim for specific performance, the delay may render it inequitable to enforce his claim, though it is otherwise meritorious.") (*citing Nobles v. L'Engle*, 61 Fla. 696, 55 So. 839 (1911)); *see also Perry v.*

11

*Benson*, 107 So. 2d 213, 216 (Fla. 2d DCA 1958) (citing cases); *Matousek v. Cooper*, 111 So. 2d

65, 68 (Fla. 2d DCA 1959) (affirming dismissal of specific performance claim following

unexcused delay of over three years).  Based on the Complaint, Plaintiff appears to be seeking

specific performance for books of account and written quarterly reports dating back to 2006.

Given the passage of time (up to 14 years), Plaintiff is not entitled to specific performance as a

matter of law.

### D.     Claim IV Fails to State a Claim for Unjust Enrichment

For a claim of unjust enrichment, a plaintiff must plead facts showing: "(1) the plaintiff

has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the

defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that

it would be inequitable for the defendant to retain the benefit without paying fair value for it."

*Adventist Health System/Sunbelt Inc. v. Medical Sav. Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS,

2004 WL 6225293, at *5 (*quoting Magwood v. Tate*, 835 So. 2d 1241, 1243 (Fla. 4th DCA

2003)).  Additionally, like specific performance, it is "well settled in Florida that unjust

enrichment is an equitable remedy and is, therefore, not available where there is an adequate

legal remedy.  Thus, to properly state a claim for unjust enrichment, a party must allege that no

adequate legal remedy exists."  *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.

Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claim where "the amended

counterclaim does not suggest that an adequate legal remedy is unavailable to the Defendant")

(interpreting Florida law) (*citing Martinez v. Weyerhaeuser Mort. Co.*, 959 F. Supp. 1511, 1518

(S.D. Fla. 1996); *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) ("[T]he theory of

unjust enrichment is equitable in nature and is, therefore, not available where there is an

adequate legal remedy . . . .")).  There is an adequate remedy at law when monetary damages are

available via an alternative claim.  *Bule v. Garda CL Southeast, Inc.*, No. 14-21898-CIV, 2014 WL 3501546, at *3 (S.D. Fla. July 14, 2014) (interpreting Florida law).  Moreover, "[t]he existence of an express contract negates an action under an unjust enrichment theory."  *Braham v. Branch Banking & Trust Co.*, 170 So. 3d 844, 848 (Fla. 5th DCA 2015) (*citing Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (holding that unjust enrichment claim was precluded by the existence of an express contract between parties concerning same subject matter)); *see also Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment . . . to prove entitlement to relief if an express contract exists.") (*citing Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."); *In re Estate of Lonstein*, 433 So. 2d 672, 674 (Fla. 4th DCA 1983) (same).

In Count IV of the Complaint, Plaintiff alleges a claim for unjust enrichment, but that claim fails given the existence of an express contract on the same subject matter as the allegation – the Manufacture Agreement.  As Plaintiff attached that Manufacture Agreement to its Complaint as Exhibit A, it is proper for the Court to consider that Manufacture Agreement during a motion to dismiss.  *See K.W. Brown*, 819 So. 2d at 979; Fla. R. Civ. P. 1.130(b) ("Any exhibit attached to a pleading must be considered a part thereof for all purposes.").  While Plaintiff attempted to maintain its unjust enrichment claim by pleading around the Manufacture Agreement and by pleading in the alternative despite making similar allegations (*see* Complaint at ¶¶ 72, 74-76 and compare with ¶¶ 13, 15, 16, 18, 19 (General Allegations) and ¶¶ 44-45, 47 (Count I)), that is insufficient to avoid dismissal of the unjust enrichment claim.  "An unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence

13

or validity of an express contract governing the subject of the dispute." *Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *2 (S.D. Fla. July 24, 2015) (interpreting Florida law) (*citing In re: Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla 2002); *Martorella v. Deutsche Bank Nat. Trust Co*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (dismissing unjust enrichment claim despite "Plaintiffs argu[ing] that they should be allowed to plead the unjust enrichment claim in the alternative"). As there is no dispute as to the existence of the Manufacture Agreement, the unjust enrichment claim should be dismissed.

If the mere existence of the Manufacture Agreement is insufficient to dismiss the unjust enrichment claim, the fact that Plaintiff's unjust enrichment claim references the terms of the Manufacture Agreement (see Complaint at ¶¶ 72, 74-76) also provides grounds to dismiss the claim. Where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss. *See Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011) ("[S]ince the complaint impliedly incorporates the terms of the agreement by reference, the trial court was entitled to review the terms of that agreement to determine the nature of the claim being alleged."). As such, even considering the Complaint as pled, by referring to the terms of the Manufacture Agreement in its unjust enrichment claim, Plaintiff is not entitled to an unjust enrichment claim as a matter of law.

Even without the express contract, Plaintiff fails to state a claim for unjust enrichment by failing to plead sufficient facts to support such a theory. Plaintiff pleads that it provided R.R. Donnelley a "limited, non-exclusive right to manufacture and sell [Plaintiff's] Extended Tab Prescription Drug Labels for the limited purpose of selling the Extended Tab Prescription Drug Labels only to customers approved by [Plaintiff]" (Complaint at ¶ 72), but Plaintiff fails to plead

14

any facts indicating how R.R. Donnelley has knowledge of the benefit, including but not limited to what Plaintiff considers to qualify as its Extended Tab Prescription Drug Labels and whether and how that information was conveyed to R.R. Donnelley.  Plaintiff fails to plead any facts surrounding how R.R. Donnelley either accepted or retained the benefit claimed by Plaintiff.  And Plaintiff fails to plead any facts suggesting that R.R. Donnelley retained the benefit without paying fair value for it, what the fair value would be for the alleged benefit, or any facts indicating why the situation is inequitable.  In fact, unlike its claim for specific performance, Plaintiff even fails to allege that it has no adequate remedy at law – let alone any facts to support such an allegation.

Even if properly pled, the unjust enrichment claim is apparently barred by the statute of limitations.  A motion to dismiss a complaint on expiration of the statute of limitations can and should be granted "where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law."  *Bott v. City of Marathon*, 949 So. 2d 295, 296 (Fla. 3d DCA 2007) (*quoting Alexander v. Suncoast Builders, Inc.*, 837 So. 2d 1056, 1057 (Fla. 3d DCA 2002)); *see also City of Riviera Beach v. Reed*, 987 So. 2d 168, 170 (Fla 4th DCA 2008) ("[D]ismissal is appropriate where it is inescapably clear from the face of the complaint that the suit was filed beyond the statutory period.") (internal quotations omitted) (*quoting Roehner v. Atl. Coast Dev. Corp.*, 356 So. 2d 1296, 1297 (Fla. 4th DCA 1978)).  The statute of limitations on a claim for unjust enrichment is four years.  Fla. Stat. § 95.11(3)(k) (2018).  A claim for unjust enrichment accrues at the time the defendant receives the improper enrichment.  *See, e.g., Swafford v. Schweitzer*, 906 So. 2d 1194, 1195-96 (Fla. 4th DCA 2005) (finding that unjust enrichment claim accrued at the time plaintiff made improvements to defendant's property).  While Plaintiff fails to plead with any specificity

in its unjust enrichment claim as to the times and dates of the alleged events, when reviewing the Complaint as a whole, there is only one reasonable time as to when R.R. Donnelley would have allegedly received the benefit – 2006. Since it has been upward of 14 years since the accrual of the unjust enrichment claim – well over the four-year statute of limitations – the unjust enrichment claim is subject to dismissal.

## IV.    **MOTION TO STRIKE**

Florida Rule of Civil Procedure 1.140(f) provides that "[a] party may move to strike or the court may strike redundant, immaterial, impertinent, or scandalous matter from any pleading at any time."

Paragraphs 35-40 of the Complaint are "immaterial." All of these paragraphs reference a "Mutual Confidentiality Agreement" that was not included with the Complaint. Moreover, none of the causes of actions raised by the Plaintiff at all reference or rely upon this Mutual Confidentiality Agreement. Therefore, the inclusion of this agreement appears wholly irrelevant to the claims otherwise raised by Plaintiff in its Complaint. Without any connection to the claims in the Complaint, these paragraphs and all references to the Mutual Confidentiality Agreement should be stricken from the Complaint.

## V.    **MOTION IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT**

As previously stated, to the extent that Plaintiff's Complaint survives dismissal and being stricken, R.R. Donnelley moves, in the alternative, that Plaintiff be required to provide a more definite statement in relation to the surviving portions of its Complaint. Specifically, to the extent applicable following this Court's ruling on the motion to dismiss and motion to strike, R.R. Donnelley seeks a more definite statement from Plaintiff on the following subjects: (1) Count I of the Complaint; (2) Count II of the Complaint; (3) Count III of the Complaint; (4)

Count IV of the Complaint; (5) any discussion of damages throughout the surviving Complaint; and (6) any references to the Mutual Confidentiality Agreement throughout the surviving Complaint.

### A.   Legal Standard Governing a Motion for More Definite Statement

 "The function of a motion for more definite statement is to require that a vague, indefinite, or ambiguous pleading be so amended as to enable the party required to respond thereto to intelligently discern the issues to be litigated and to properly frame his answer or reply."  *Conklin v. Boyd*, 189 So. 2d 401, 403-04 (Fla. 1st DCA 1966); *see also* Fla. R. Civ. P. 1.140(e).  When a defendant contends that a complaint is so vague and indefinite that it cannot be properly responded thereto, the remedy for such defects lies in pressing for a more definite statement.  *See Smith v. Platt Motors, Inc.*, 137 So. 2d 239, 242 (Fla. 1st DCA 1962) ("By its brief appellee manufacturer argues . . . that the complaint is so vague and indefinite that it cannot properly plead thereto . . . [its] remedy lies in pressing for a more definite statement."); *Frisch v. Kelly*, 137 So. 2d 252, 253 (Fla. 1st DCA 1962) ("A motion for more definite statement is appropriate for dissipation of vagueness and ambiguity.").  It is generally within the sound discretion of the trial court to require a party to redraft a pleading for the sake of clarity.  *Stern v. Perma-Stress, Inc.*, 134 So. 2d 509, 511 (Fla. 1st DCA 1961).  A motion for more definite statement may be granted where the more particular specifications can facilitate the resolution of a case.  *Luciani v. High*, 372 So. 2d 530, 531 (Fla. 4th DCA 1979).

### B.   More Definite Statement re: Count I

To the extent that Count I survives the motion to dismiss, R.R. Donnelley requests that Plaintiff be required to provide a more definite statement related to Count I so that R.R. Donnelley will be able to properly prepare a defense and response to the allegations.  The more

definite statement for Count I should include at least: (1) at which points in time Plaintiff alleges R.R. Donnelley breached the contract provision; (2) the parameters of what it deems as the Extended Tab Prescription Drug Labels including any associated patents; (3) the parameters of any other proprietary or patented material at issue; (4) any facts supporting the claim that R.R. Donnelley sold Plaintiff's proprietary or patented Extended Tab Prescription Drug Labels to non-approved customers; (5) any facts supporting the claim that R.R. Donnelley failed to include Plaintiff's trademark on patented Extended Tab Prescription Drug Labels; (6) any facts supporting that the inclusion of Plaintiff's trademark goes to the essence of the Manufacture Agreement; (7) any facts supporting the claim for damages resulting from the alleged breach of contract; and (8) the method by which Plaintiff computed the extent of damages related to its alleged breach of contract claim in Count I.

### C.     More Definite Statement re: Count II

To the extent Count II survives the motion to dismiss, R.R. Donnelley requests that Plaintiff be required to provide a more definite statement related to Count II so that R.R. Donnelley will be able to properly prepare a defense and response to the allegations.  The more definite statement for Count II should include at least: (1) the points in time Plaintiff alleges R.R. Donnelley breached any contract provision; (2) any facts supporting the claim that R.R. Donnelley failed to keep its books of account; (3) any facts supporting the claim that R.R. Donnelley failed to render written reports to Plaintiff; (4) the number of instances in which R.R. Donnelley allegedly failed to provide quarterly reports; (5) whether Plaintiff alleges that it attempted to use its contractual remedy to prepare its own reports; (6) any facts supporting that keeping books of account and rendering written reports go to the essence of the Manufacture Agreement; (7) any facts supporting the claim for damages resulting from the alleged breach of

contract; and (8) the method by which Plaintiff computed the extent of damages related to its alleged breach of contract claim in Count II.

**D.      More Definite Statement re: Count III**

To the extent Count III survives the motion to dismiss, R.R. Donnelley requests that Plaintiff be required to provide a more definite statement related to Count III so that R.R. Donnelley will be able to properly prepare a defense and response to the allegations.  The more definite statement for Count III should include at least: (1) the points in time Plaintiff alleges R.R. Donnelley failed to keep its books of account; (2) the points in time Plaintiff alleges R.R. Donnelley failed to render written reports to Plaintiff; (3) any facts supporting why Plaintiff does not have an adequate remedy at law; (4) any facts supporting why justice would require specific performance; (5) any facts supporting why Plaintiff is clearly entitled to specific performance; (6) whether Plaintiff alleges that it attempted to use its contractual remedy to prepare its own reports; (7) any facts supporting the claim for damages resulting from the alleged failure to perform; and (8) the method by which Plaintiff computed the extent of damages related to the specific performance claim in Count III.

**E.      More Definite Statement re: Count IV**

To the extent Count IV survives the motion to dismiss, R.R. Donnelley requests that Plaintiff be required to provide a more definite statement related to Count IV so that R.R. Donnelley will be able to properly prepare a defense and response to the allegations.  The more definite statement for Count IV should include at least: (1) when Plaintiff conferred a benefit to R.R. Donnelley; (2) any facts supporting that R.R. Donnelley knew of any benefit, such as any details identifying Plaintiff's proprietary and patented Extended Tab Prescription Drug Labels including any and all associated patents; (3) any facts supporting the claim that Plaintiff

19

conferred a benefit to R.R. Donnelley; (4) whether the granted limited, non-exclusive right to manufacture and sell Plaintiff's Extended Tab Prescription Drug Labels is related to the Manufacture Agreement attached to the Complaint as Exhibit A; (5) any facts supporting the claim that R.R. Donnelley accepted or retained the benefit allegedly conferred; (6) any facts supporting the fair value of the benefit allegedly conferred to R.R. Donnelley; (7) any facts supporting that R.R. Donnelley did not pay the fair value of the benefit allegedly conferred; (8) any facts supporting how the current circumstances are inequitable for Plaintiff (9) any facts supporting the claim that Plaintiff has no adequate remedy at law; (10) any facts supporting the claim for damages resulting from the alleged unjust enrichment; and (11) the method by which Plaintiff computed the extent of damages related to the unjust enrichment claim in Count IV.

### F.      More Definite Statement re: Damages

It has been generally recognized that, where a defendant seeks more specific allegations of a plaintiff's damages, particularly in a breach of contract action, a motion for more definite statement constitutes the proper remedy for the relief sought. *Miller v. Bill Rivers Trailers, Inc.*, 450 So. 2d 334, 335 (Fla. 1st DCA 1984) (explaining that if a defendant "desires a more specific allegation of damages, such relief may be obtained by a [ ] motion for more definite statement."). In this matter, to the extent Counts I-IV survive the motion to dismiss, R.R. Donnelley requests that Plaintiff be required to provide a more definite statement as to the specific amounts of damages asserted in the Complaint.  Plaintiff's Complaint merely states, "[t]his is an action for damages in which the amount in controversy exceeds $30,000.00 exclusive of interest, costs and attorneys' fees . . . ."  Complaint at ¶ 3.  Similarly, Plaintiff only vaguely alleges to have incurred damages with no specificity as to extent or computational method.  See Complaint at ¶¶ 34, 48, 55, 88.  Plaintiff does not state the specific amount of these damages or how these damages have

been computed.  R.R. Donnelley requests this information in order to properly prepare a defense and response to the allegations.

### G.     More Definite Statement re: Mutual Confidentiality Agreement

Finally, to the extent references to the Mutual Confidentiality Agreement survive the motion to strike, R.R. Donnelley requests that the Plaintiff be required to provide a more detailed statement related to the Mutual Confidentiality Agreement so that R.R. Donnelley will be able to properly prepare a defense and response to the allegations.  The more definite statement should include at least: (1) all facts connecting the Mutual Confidentiality Agreement to any of the causes of actions in the Complaint; and (2) furnishing a copy of the Mutual Confidentiality Agreement as an attachment to the Complaint given its explicit reference in the Complaint.

## VI.    <u>REQUESTED RELIEF</u>

WHEREFORE, Defendant R.R. Donnelley respectfully requests that this Court enter an order: (1) granting its Motion to Dismiss and dismissing Plaintiff's Complaint; (2) granting its Motion to Strike and striking Paragraphs 35-40 of Plaintiff's Complaint along with all other references to the Mutual Confidentiality Agreement; (3) in the alternative – and to the extent applicable following resolution of the Motion to Dismiss and Motion to Strike – granting its Motion for More Definite Statement; and (4) for other relief as this Court deems just and proper.

Dated: May 18, 2020

Respectfully submitted,

R.R. DONNELLEY SONS & COMPANY

By: /s/ Eugene K. Pettis_____
      One of Its Attorneys

Eugene K. Pettis (Fla. Bar # 508454)
Debbie P. Klauber (Fla. Bar # 55646)
HALICZER, PETTIS & SCHWAMM, P.A.
One Financial Plaza
100 S.E. 3rd Avenue
Seventh Floor
Fort Lauderdale, FL 33394
Telephone: (954) 523-9922
Fax: (954) 522-2512

Reginald J. Hill (Ill. Bar # 6225173)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Fax: (312) 527-0484
(*Pro Hac Vice* Motion Pending)

*Attorneys for R.R. Donnelley & Sons Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed and served via Florida's E-filing Portal this 18th day of May, 2020.

HALICZER PETTIS & SCHWAMM, P.A.
Attorneys for R.R. Donnelley & Sons Company
100 S.E. Third Avenue
Seventh Floor
Fort Lauderdale, FL 33394
(954) 523-9922 – tel
(954) 522-2512 – fax


By: /s/ Eugene K. Pettis
        EUGENE K. PETTIS, ESQ.
        Fla. Bar No: 508454

## MAILING LIST
## ScriptChek Visual Verifiction Systems, Inc. v. R.R. Donnelly & Sons, Inc.
## CASE NO. CACE  20-003398 (08)

Richard L. Allen, Esq.
Steven Solowsky, Esq.
Solowsky & Allen, PL
201 S. Biscayne Blvd. - #915
Miami, FL  33131
*Attorneys for Plaintiff*
305-371-2223
E-MAIL DESIGNATIONS:
mlopez@salawmiami.com;
rallen@salawmiami.com;
pleadings@salawmiami.com;
ssolowsky@salawmiami.com

# Exhibit 6

Case 0:20-cv-61261-RAR Document 1-7 Entered on FLSD Docket 06/26/2020 Page 2 of 162

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO:  CACE 20-003398 (08)

SCRIPTCHEK VISUAL VERIFICATION
SYSTEMS, INC.,

        Plaintiff,

Vs.

R.R. DONNELLY & SONS, INC.,

        Defendant.

_____/

**VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE**
**PURSUANT TO FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.510**

COMES NOW Reginald J. Hill, Movant herein, and respectfully represents the following:

1.      Movant is an attorney and a member of the law firm of Jenner & Block LLP, with offices at 353 N Clark Street, Chicago, IL 60654 (312-222-9350).

2.      Movant has been retained personally or as a member of the above-named law firm by the Plaintiff/Defendant, R.R. Donnelley & Sons Co., to provide legal representation in connection with the above-styled matter now pending before the above-named court of the State of Florida.

3.      Movant is an active member in good standing and currently eligible to practice law in the following jurisdiction(s):

1

CASE NO:  CACE 20-003398 (08)

_____    Illinois Bar # 6225173

_____ .

4.      There are no disciplinary proceedings pending against Movant, except as provided below (give jurisdiction of disciplinary action, date of disciplinary action, nature of the violation and the sanction, if any, imposed): (attach additional sheet if necessary)

_____    N/A


5.      Within the past five (5) years, Movant has not been subject to any disciplinary proceedings, except as provided below (give jurisdiction of disciplinary action, date of disciplinary action, nature of the violation and the sanction, if any, imposed): (attach additional sheet if necessary)

_____    N/A

6.      Movant has never been subject to any suspension proceedings, except as provided below (give jurisdiction of disciplinary action, date of disciplinary action, nature of the violation and the sanction, if any, imposed): (attach additional sheet if necessary)

_____    N/A

7.      Movant has never been subject to any disbarment proceedings, except as provided below (give jurisdiction of disciplinary action, date of disciplinary action, nature of the violation and the sanction, if any, imposed): (attach additional sheet if necessary)

_____    N/A

8.      Movant, either by resignation, withdrawal, or otherwise, never has terminated or attempted to terminate Movant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

2

9.       Movant is not an inactive member of The Florida Bar.

10.      Movant is not now and has never been a member of The Florida Bar.

11.      Movant is not a suspended member of The Florida Bar.

12.      Movant is not a disbarred member of The Florida Bar nor has Movant received a disciplinary resignation from The Florida Bar.

13.      Movant has not previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation pursuant to Florida Rule of Judicial Administration 2.510, except as provided below (give date of disciplinary action or contempt, reasons therefor, and court imposing contempt): (attach additional sheet if necessary)

_____N/A

_____.

14.      Movant has filed motion(s) to appear as counsel in Florida state courts during the past five (5) years in the following matters: (attach additional sheet if necessary)

Date of Motion Case Name Case Number Court Motion Granted/Denied

_____N/A

_____.

_____.

_____.

_____.

15.      Local counsel of record associated with Movant in this matter is Eugene K. Pettis, Esq., Florida Bar #508454, who is an active member in good standing of The Florida Bar, with the law firm of Haliczer Pettis & Schwamm, 100 Southeast Third Avenue, 7th Floor, Fort Lauderdale, FL 33394 (954-523-9922).

3

16. Movant has read the applicable provisions of Florida Rule of Judicial Administration 2.510 and Rule 1-3.10 of the Rules Regulating The Florida Bar and certifies that this verified motion complies with those rules.

17. Movant agrees to comply with the provisions of the Florida Rules of Professional Conduct and consents to the jurisdiction of the courts and the Bar of the State of Florida.

WHEREFORE, Movant respectfully requests permission to appear in this Court for the cause only.

STATE OF ILLINOIS
COUNTY OF COOK

I, _Reginald J. Hill_, do hereby swear or affirm under penalty of perjury that I am the Movant in the above-styled matter; that I have read the foregoing Motion and know the contents thereof, and the contents are true of my own knowledge and belief.

_____, Movant/Affiant

The foregoing instrument was acknowledged before me this _14th_ day of _May_, _2020_, by Reginald J. Hill, who is personally known to me and who did take an oath.

_____
Notary Public (Signature)
State of Illinois

Beth L. Perkins_____
(Printed or Typed Name)

My Commission Expires:   10/28/2020

OFFICIAL SEAL
BETH L. PERKINS
Notary Public - State of Illinois
My Commission Expires 10/28/2020

I hereby consent to be associated as local counsel of record in this cause pursuant to Florida Rule of Judicial Administration 2.510.

DATED this _15_ day of _May_____, 20_20_.

_____
Eugene K. Pettis
Fla. Bar # 508454
Local Counsel of Record

CASE NO: CACE 20-003398 (08)

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing motion was furnished by U.S. mail to PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2333 accompanied by payment of the $250.00 filing fee made payable to The Florida Bar, and via Florida's e-filing portal to all parties listed on the attached Mailing List this 18th day of May, 2020.

HALICZER PETTIS & SCHWAMM, P.A.
Attorneys for Defendant
100 S.E. Third Avenue – 7 th Floor
Fort Lauderdale, FL 33394
E-MAIL DESIGNATION: service@hpslegal.com
(954) 523-9922
(954) 522-2512 – fax

By: _____
EUGENE K. PETTIS, ESQ.
Fla. Bar No: 508454

5

CASE NO:  CACE 20-003398 (08)

MAILING LIST

ScriptChek Visual Verifiction Systems, Inc. v. R.R. Donnelly & Sons, Inc.
CASE NO. CACE  20-003398 (08)

Richard L. Allen, Esq.
Steven Solowsky, Esq.
Solowsky & Allen, PL
201 S. Biscayne Blvd. - #915
Miami, FL  33131
*Attorneys for Plaintiff*
305-371-2223
E-MAIL   DESIGNATIONS:   mlopez@salawmiami.com;   rallen@salawmiami.com;
pleadings@salawmiami.com; ssolowsky@salawmiami.com

# Exhibit 7

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  <u>CACE20003398</u>   DIVISION  <u>08 </u>  JUDGE  <u>David A Haimes</u>

**ScriptChek Visual Verification Systems, Inc.**

Plaintiff(s) / Petitioner(s)

v.

**R.R. Donnelley & Sons Company, Inc.**

Defendant(s) / Respondent(s)

_____ /

## <u>AGREED ORDER</u>

THIS CAUSE having come before the Court on the Verified Motion for Admission to
Appear *Pro Hace Vice* Pursuant to Florida Rule of Judicial Administration 2.510 on
behalf of Reginald J. Hill, Esq. of the law firm of Jenner &  Block, LLP, with offices at
353 North Clark Street, Chicago, IL 60654, and the Court having been advised that
there are no objections to said motion, it is hereupon,

    ORDERED and ADJUDGED that the motion is GRANTED.
**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>05-19-2020</u>.

CACE20003398 05-19-2020 11:17 AM

<u>CACE20003398 05-19-2020 11:17 AM</u>
Hon. David A Haimes
**CIRCUIT JUDGE**
Electronically Signed by David A Haimes

**Copies Furnished To:**
Eugene K Pettis , E-mail : cmarr@hpslegal.com
Eugene K Pettis , E-mail : epettis@hpslegal.com
Eugene K Pettis , E-mail : service@hpslegal.com
Gary N. Mansfield , E-mail : gary@mblawpa.com
Gary N. Mansfield , E-mail : litigation@mblawpa.com
Gary N. Mansfield , E-mail : dstone@davidstonelaw.com
Reginald J. Hill , E-mail : rhill@jenner.com

Richard L Allen , E-mail : mlopez@salawmiami.com
Richard L Allen , E-mail : rallen@salawmiami.com
Richard L Allen , E-mail : pleadings@salawmiami.com
Steven Solowsky , E-mail : ssolowsky@salawmiami.com

# Exhibit 8

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

SCRIPTCHEK VISUAL
VERIFICATIONSYSTEMS, INC.,
a Florida Corporation,

CASE NO: CACE 20-003398 (08)

      Plaintiff,

vs.

R.R. DONNELLEY & SONS
COMPANY, INC. a Delaware
Corporation,

      Defendant.

_____/

## DEFENDANT'S NOTICE OF SERVICE OF RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR DOCUMENTS

      COMES NOW the Defendant, R.R. DONNELLEY & SONS COMPANY, INC,

by and through the undersigned attorneys, and files its Notice of Service of Responses

and Objections to Plaintiff's First Request for Documents propounded with the

Complaint by the Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC.

      I HEREBY CERTIFY that the foregoing document was electronically filed and

served via Florida's E-filing Portal this *1^(st) day of June 2020.*

JENNER & BLOCK LLP
Attorney for R.R. Donnelley & Sons Company
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Fax: (312) 527-0484


By: /s/ *Reginald J. Hill*
    REGINALD J. HILL
    Ill. Bar No: 6225173
    Admitted *Pro Hac Vice*

HALICZER PETTIS & SCHWAMM, P.A.
Attorney for R.R. Donnelley & Sons Company
One Financial Plaza, Seventh Floor
100 S.E. 3rd Avenue
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
Fax: 954-522-2512
E-MAIL: service@hpslegal.com

By /s/ *Eugene K. Pettis*
  EUGENE K. PETTIS, ESQ.
  FBN: 508454

<u>**MAILING LIST**</u>
<u>**SCRIPTCHEK VISUAL VERIFICTION SYSTEMS, INC. V.**</u>
<u>**R.R. DONNELLEY & SONS COMPANY, INC.**</u>
<u>**CASE NO. CACE 20-003398 (08)**</u>

Richard L. Allen, Esq.
Steven Solowsky, Esq.
Solowsky & Allen, PL
201 S. Biscayne Blvd. - #915
Miami, FL 33131
*Attorneys for Plaintiff*
305-371-2223
E-MAIL DESIGNATIONS:
mlopez@salawmiami.com;
rallen@salawmiami.com;
pleadings@salawmiami.com;
ssolowsky@salawmiami.com

# Exhibit 9

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: CACE20003398

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____ /

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT, MOTION TO STRIKE, MOTION IN THE
ALTERNATIVE FOR MORE DEFINITE STATEMENT, AND
INCORPORATED MEMORANDUM OF LAW**

      Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida

Corporation ("ScriptChek"), by and through its undersigned counsel and pursuant to

Florida law, hereby files its Response to Defendant's Motion to Dismiss, Motion to Strike,

Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of

Law dated May 18, 2020 (the "Motion to Dismiss"), and as grounds states as follows:

**I.**    **Introduction.**

      1.    Plaintiff and Defendant have a written agreement for Defendant (a

commercial printing company) to manufacture a patented prescription drug label, with a

tab extending from the label, for Plaintiff's customers who have entered into license

agreements with Plaintiff to use same. *See* Complaint, at ¶ 13. As set forth in Plaintiff's Complaint, Defendant breached the parties' contract by, *inter alia*, manufacturing Plaintiff's patented label for other companies, without notice to Plaintiff or without Plaintiff having entered into license agreements with those companies. *See* Complaint, at ¶¶ 27, 30, 31.

2.      The gravamen of Defendant's Motion to Dismiss is that Plaintiff's Complaint does not provide enough notice to Defendant for it to understand what constitutes the patented label that is the subject of the parties' contract.

3.      Essentially, on the one hand, Defendant argues that Plaintiff has not provided it with sufficient information to know what patented label Plaintiff refers to in its Complaint. On the other hand, for fourteen years Defendant has manufactured and continues to manufacture Plaintiff's patented label for Plaintiff's customers. *See* Complaint, at ¶¶ 18, 20. If Defendant's argument sounds nonsensical, that's because it is. Since Defendant has been producing Plaintiff's patented label for Plaintiff's customers for fourteen years, Defendant certainly knows what comprises the label it has been manufacturing.  That label is the subject of Plaintiff's Complaint. Defendant cannot manufacture something for Plaintiff's customers if it does not know what it is manufacturing, and for Defendant to feign ignorance in its Motion to Dismiss is ridiculous.[1]

4.      As set forth herein, Defendant knows <u>exactly</u> what constitutes the label at issue in this case, as it has been manufacturing the labels for Plaintiff's customers for fourteen years. *See* Complaint, at ¶¶ 18, 20. The label is a defined term in the contract that

---

[1] Defendant carries over this very same argument in its Responses and Objections to Plaintiff's First Request for Documents, filed June 1, 2020, as an excuse for not producing one single page of documents to Plaintiff in response to Plaintiff's First Request for Production to Defendant, dated February 24, 2020.

Plaintiff has with Defendant. *See* Complaint, Exhibit "A". Plaintiff has entered into numerous license agreements with customers to use the label, as contemplated by the contract between Plaintiff and Defendant. Defendant has manufactured these labels for Plaintiff's customers for fourteen years, <u>and continues to do so to this day</u>. *See* Complaint, at ¶¶ 18, 20. For Defendant to now feign ignorance and argue that it does not know what it has been manufacturing for Plaintiff's customers for well over a decade is tantamount to fraud on the Court.

5.     As set forth herein, Plaintiff has adequately pled the causes of action for breach of contract, specific performance, and unjust enrichment raised in its Complaint. Defendant knows <u>exactly</u> what it is that Plaintiff is filing suit over. Accordingly, Defendant's Motion to Dismiss and Defendant's arguments in support of same are wholly without merit.

**II.     <u>Count I of Plaintiff's Complaint for Breach of Contract (Non-Exclusive Limited Right to Manufacture) is Adequately Pled.</u>**

6.     Under Florida law, a breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. *See Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

7.     Defendant admits that Plaintiff has adequately alleged the existence of a valid contract. *See* Motion to Dismiss, at Page 6 ("Plaintiff alleges the existence of a valid contract – in addition to including the Manufacture Agreement as part of the Complaint . . ."). Thus, Plaintiff has satisfied the first element of its Breach of Contract claim.

CASE NO.: CACE20003398

8.      With respect to the "material breach" element of a breach of contract claim, Defendant contends that Plaintiff has failed to plead ultimate facts to establish a material breach in Count I. Defendant is wrong.

9.      As set forth herein, Plaintiff has adequately pled that Defendant materially breached the terms of the Manufacture Agreement. Fla. R. Civ. P. 1.110(b)(2) requires only that Plaintiff make a "short and plain statement of the ultimate facts showing that the pleader is entitled to relief." *Id*. Plaintiff has clearly done so in its Complaint.

10.     The Non-Exclusive Limited License for Defendant to manufacture the Extended Tab Prescription Drug Label is specifically set forth in the Manufacture Agreement attached to Plaintiff's Complaint as Exhibit "A" thereto:

> Grant of Non-Exclusive Limited License. The Licensor hereby grants to the Licensee the non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by Licensor, hereinafter referred to as "Approved Customers" that have entered into written License Agreements with Licensor to use the Extended Tab Prescription Drug Label.

*See* Manufacture Agreement, ¶ 1.

11.      Furthermore, the requirement for Defendant to mark the Extended Tab Prescription Drug Labels with "ScriptChek ®" is set forth in the Manufacture Agreement attached to Plaintiff's Complaint:

> Marking. The Licensee shall mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from Licensor of the issuance of any of the pending patents, "Patented" with the patent numbers and proper dates.

*See* Manufacture Agreement, ¶ 4.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

12.     In contrast to Defendant's claim that "Plaintiff pleads no facts to support its claim of a breach" (Motion to Dismiss, at Page 7), Plaintiff has cited to and alleged that Defendant breached ¶¶ 1 and 4 of the Manufacture Agreement by "(1) manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of ¶ 1 of the Manufacture Agreement; and (2) by failing to include "ScriptChek ®" on the patented ScriptChek Extended Tab Prescription Drug Labels sold by Defendant, in violation of ¶ 4 of the Manufacture Agreement." *See* Complaint, at ¶ 47.

13.     Plaintiff has attached the Manufacture Agreement to the Complaint and specifically alleged which material provisions of the Manufacture Agreement were breached by Defendant. Accordingly, Plaintiff has adequately pled the material breach element of its breach of contract claim.

14.     In support of its claim that "Plaintiff pleads no facts to support its claim of a breach" (Motion to Dismiss, at Page 7), Defendant, *inter alia*, argues that "rather than identify the products allegedly sold in breach of the contract with any specificity, Plaintiff merely uses a label to encompass the products at issue: 'patented ScriptChek Extended Tab Prescription Drug Labels'." *See* Motion to Dismiss, at Page 7. Defendant's contention is belied by the allegations of the Complaint and the plain language of the Manufacture Agreement.

15.     The Extended Tab Prescription Drug Label is a defined term in the Manufacture Agreement:

> Whereas, the Licensor is the owner of all right, title and interest in and to certain inventions in a certain Extended Tab Prescription Drug Label ("Extended Tab Prescription Drug Label"), which inventions are the subject of certain Pending Patent Applications in

> the United States and Canada, said inventions and Pending Patent
> Applications being hereinafter referred to collectively as
> "International Patents"

*See* Manufacture Agreement, Page 1.

> Interpretation. In this agreement the term "Extended Tab
> Prescription Drug Label" shall mean a prescription label for
> displaying additional information printed on a tab extending from
> the label.

*See* Manufacture Agreement, ¶ 11.

16.     In addition, Defendant concedes the definition of the Extended Tab
Prescription Drug Label in its Motion to Dismiss. *See* Motion to Dismiss, at Page 2 ("As
defined by the Manufacture Agreement, the Extended Tab Prescription Drug Label relates
to certain then-pending patent applications and is a 'prescription label for displaying
additional information on a tab extending from the label.'").

17.     Not only is the Extended Tab Prescription Drug Label a sufficiently defined
term in the Manufacture Agreement (which Defendant admits on Page 2 of its own Motion
to Dismiss), but also Plaintiff has alleged that "[t]he parties performed under the
Manufacture Agreement for numerous years, and continue to perform under the
Manufacture Agreement with respect to those Approved Customers who entered into a
license agreement with ScriptChek to use the patented ScriptChek Extended Tab
Prescription Drug Labels", that "ScriptChek entered into written License Agreements with
Approved Customers for the Approved Customers to use the patented ScriptChek Extended
Tab Prescription Drug Labels", and that "[Defendant] manufactured and sold the patented
ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved
Customers' use." *See* Complaint, ¶¶ 20, 22, 23.

18.     Despite the Extended Tab Prescription Drug Label being a defined term in the Manufacture Agreement, despite the Extended Tab Prescription Drug Label being subject to valid patents, and despite Defendant's years of manufacturing the Extended Tab Prescription Drug Labels for those Approved Customers who have entered into written agreements with ScriptChek for use of same, Defendant ludicrously contends that Plaintiff has failed to "identify the products allegedly sold in breach of the contract with any specificity" (Motion to Dismiss, at Page 7). Clearly, Defendant knows exactly what constitutes the Extended Tab Prescription Drug Label as it manufactured same for ScriptChek's Approved Customers for years and continues to do so to this very day. For Defendant to feign ignorance in its Motion to Dismiss is tantamount to fraud on this Court.

19.     Defendant claims that "to establish the alleged breach, Plaintiff would have to establish exactly how the products at issue meet each and every limitation of at least one claim of each patent." *See* Motion to Dismiss, at Page 7. Defendant's contention is incorrect as a matter of Florida law. This is an action for Breach of Contract. Plaintiff has attached the contract upon which this action is brought, and the ScriptChek Extended Tab Prescription Drug Label is a defined term therein. Accordingly, Defendant has been provided with enough specificity in Plaintiff's allegations in order for it to answer same. *See Fontainebleau Hotel Corp. v. Walters*, 246 So. 2d 563, 565 (Fla. 1971) ("[W]here a complaint contains sufficient allegations to acquaint the defendant with the plaintiff's charge of wrongdoing so that the defendant can intelligently answer the same, it is error to dismiss the action on the ground that more specific allegations are required."). Defendant's arguments that it needs more details or specificity with respect to Plaintiff's claims can be

addressed in the discovery period or through its affirmative defenses to Plaintiff's Complaint, and are not the proper subject of a motion to dismiss.

20.     Defendant's citations to *Arunachalam v. Apple, Inc.*, —F. App'x—, 2020 WL 729658, at *3 (Fed. Cir. Feb. 13, 2020*), E.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *2 (N.D. Cal. Aug. 22, 2016) and *Atlas IP, LLC v. Exelon Corp.*, No. 15-cv-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016), are unpersuasive. All three cited cases are trademark/patent infringement cases involving different burdens of proof and are not applicable to the instant breach of contract case.

21.     Defendant has cited no cases stating that a Plaintiff, in a <u>breach of contract action</u>, is required to identify valid patents, establish how each product at issue meets each and every limitation of at least one claim of each patent, identify the specific patents and claims that cover the products at issue, and provide facts showing how the product features are covered by unspecified "patent claims". Plaintiff reiterates that this is not a "patent claim". This is an action for breach of contract. The Extended Tab Prescription Drug Label is a defined term therein and Defendant has been provided with sufficient facts to prepare its defense.

22.     If Defendant wishes to obtain more information concerning the specifics of Plaintiff's claim, it will have the discovery period to do so. *See Fontainebleau Hotel Corp. v. Walters*, 246 So. 2d 563, 565 (Fla. 1971) ("[I]t is not necessary for the plaintiff to state the theory of his case in his pleading.").

23.     Defendant concedes the existence of a valid contract, Plaintiff has alleged that Defendant materially breached the contract, and Plaintiff has alleged that it suffered

damages as a result. Thus, Defendant's claim that Plaintiff has failed to adequately plead a claim for Breach of Contract is incorrect as a matter of law.

24.     Defendant further claims that "the requested use of 'ScriptChek' on the label for the products at issue suggests falsely that the products at issue have some association with ScriptChek, when in fact there are no facts alleged to support such a conclusion." Motion to Dismiss, at Page 8.

25.     As set forth above, Plaintiff has alleged that Defendant "fail[ed] to include "ScriptChek ®" on the patented ScriptChek Extended Tab Prescription Drug Labels sold by R.R. Donnelley, in violation of ¶ 4 of the Manufacture Agreement." *See* Complaint, at 47. Defendant's claim that Plaintiff has failed to allege facts to support its claim that the products at issue have some association with ScriptChek is belied by the plain allegations of Plaintiff's Complaint.

26.     Defendant goes on to claim that "Plaintiff pleads no facts to establish how the inclusion – or lack thereof – of ScriptChek's trademark and the trademark registration symbol (i.e., ScriptChek®) goes to the essence of the contract and therefore constitutes a material breach." Motion to Dismiss, at Page 8.

27.     The question of whether a breach is material is a factual one to be determined by the trier of fact. See *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So. 2d 853, 858 (Fla. 4th DCA 1972) ("[T]he question of whether the plaintiff has presented clear and convincing evidence that the alleged breaches by the defendant are vital or material is a question of fact to be resolved by the trier of fact or jury.").

28.     Accordingly, Plaintiff has met its burden under Florida law to adequately plead its claim for breach of contract with respect to Count I of its Complaint.

CASE NO.: CACE20003398

### III. Count II of Plaintiff's Complaint for Breach of Contract (Books of Account and Quarterly Reports) is Adequately Pled.

29.     With respect to Count II of Plaintiff's Complaint, Defendant claims that "Plaintiff fails to plead sufficient facts" to establish that Defendant's breach of the manufacture agreement by failing to keep proper books of accounts and failing to render written reports quarterly to Plaintiff, in violation of ¶ 5 of the Manufacture Agreement, is a material breach. *See* Motion to Dismiss, Page 9.

30.     The requirement for Defendant to keep proper books of account for those Approved Customers who have entered into written License Agreements with Plaintiff to use the Extended Tab Prescription Drug Label and render those reports quarterly to Plaintiff is set forth in ¶ 5 of the Manufacture Agreement:

> Books of Account. The Licensee shall keep proper books of account accurately reflecting the customer(s) of the Licensee for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement and render written reports quarterly to the Licensor not later than the 15th day of the month following each contract quarter of this Agreement including at least (1) name of each customer, (2) address of each customer, (3) contact name at each customer; (4) dates of sale(s) to each customer and (5) total number of labels sold to each customer on each date.

*See* Manufacture Agreement, at ¶ 5.

31.     Plaintiff has pled that Defendant breached the Manufacture Agreement by "failing to keep proper books of account and failing to render written reports quarterly to ScriptChek, in violation of ¶ 5 of the Manufacture Agreement." *See* Complaint, at ¶ 54. Accordingly, Plaintiff has adequately alleged that Defendant has breached the Manufacture Agreement with respect to Count II of Plaintiff's Complaint. In addition, as set forth above, whether a breach is or is not material is a question of fact. *See supra* ¶ 27.

32.     Defendant states that "Plaintiff fails . . . to establish how R.R. Donnelley allegedly failed to keep proper books or render written reports (e.g., how were the books improperly kept, how the reports were non-compliant, how often, if ever, or when these issues arose, etc.)". Motion to Dismiss, at Page 9.

33.     As set forth above, Plaintiff has pled that Defendant failed to "keep proper books of account" and "failed to render written reports quarterly to ScriptChek, in violation of ¶ 5 of the Manufacture Agreement." *See* Complaint, at ¶ 54. Standing on their own, these allegations are sufficient to support a claim for breach of contract. Defendant's arguments that the breach of contract is not material, and that it needs more details or specificity with respect to Plaintiff's claims can be addressed in the discovery period or through its affirmative defenses to Plaintiff's Complaint, and are not the proper subject of a motion to dismiss.

34.     In addition to sufficiently alleging its claim for breach of contract in its Complaint, Plaintiff notes that once Defendant provides Plaintiff with the books of account and quarterly reports as it is obligated to do pursuant to ¶ 5 of the Manufacture Agreement, Plaintiff will be able to further elaborate on the specifics of Defendant's breach.

35.     Finally, Defendant argues that "Plaintiff also fails to acknowledge whether it sought the remedy outlined in the Manufacture Agreement before filing suit for breach of contract." *See* Motion to Dismiss, at Page 9. As set forth above, and as Defendant quotes from the Manufacture Agreement, "the Licensor **at its option** may have such report prepared by and delivered to itself . . . " *See* Motion to Dismiss, at Page 9, citing Manufacture Agreement, ¶ 5 (emphasis added). Plaintiff is not required to pursue the

contractual remedy prior to filing suit, nor has Defendant cited any law to the effect that Plaintiff is required to do so prior to filing suit.

36.     Accordingly, as set forth above, Plaintiff has met its burden under Florida law to adequately plead its claim for breach of contract with respect to Count II of its Complaint.

### IV.     Plaintiff has Adequately Pled Damages in Counts I and II of its Complaint.

37.     Defendant argues that "For both Counts I and II, Plaintiff likewise fails to sufficiently plead facts supporting its contention that it suffered damages." *See* Motion to Dismiss, at Page 9.

38.     However, Plaintiff has alleged that it suffered damages (*see* Complaint ¶¶ 48, 55), which allegations are sufficient to withstand a motion to dismiss. *See Hutchison v. Tompkins*, 259 So. 2d 129, 132–33 (Fla. 1972) ("General damages, that is, those damages which naturally and necessarily flow or result from the injuries alleged need not be specifically pleaded.").

39.     Once Defendant provides Plaintiff with the books of account and quarterly reports as it is obligated to do pursuant to ¶ 5 of the Manufacture Agreement, Plaintiff will be able to further elaborate on the specifics of the damages it suffered as a result of Defendant's multiple breaches of the Manufacture Agreement.

40.     If Defendant wishes for more specificity regarding Plaintiff's damages, it may obtain same during the discovery period.

41.     In accordance with the foregoing, Plaintiff has met its burden for pleading damages with respect to its breach of contract claims as a matter of Florida Law.

## V. Count III of Plaintiff's Complaint for Specific Performance Adequately States a Claim.

42.     With respect to Count III of Plaintiff's Complaint, Defendant contends that Plaintiff has failed to state a claim for specific performance.

43.     In order to be entitled to specific performance, Plaintiff must plead that: "(1) the plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it." *See Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005).

44.     As a preliminary note, Plaintiff is not seeking specific performance of the entire Manufacture Agreement. Plaintiff is only seeking specific performance of those provisions of the Manufacture Agreement that require Defendant to provide Plaintiff with books of account and written quarterly reports. Plaintiff requires both items in order to calculate its damages for purposes of this action.

45.     Defendant also admits that Plaintiff has alleged that "it has no adequate remedy at law." Motion to Dismiss, at Page 11. Therefore, Plaintiff has satisfied the second element of a claim for specific performance.

46.     Defendant admits that Plaintiff has alleged that "justice requires that it be granted specific performance" Motion to Dismiss, at Page 11. Therefore, Plaintiff has satisfied the third element of a claim for specific performance.

47.     With respect to the first element, Defendant claims that "Plaintiff negates its own claim that it is clearly entitled to this remedy" due to ¶ 5 of the Manufacture Agreement which states "[i]n the event of failure of the Licensee to render any report as herein provided for, the Licensor at its option may have such report prepared by and delivered to itself by its authorized representative." *See* Complaint, Exhibit A at ¶ 5.

48.     As explicitly stated in the Manufacture Agreement, this remedy is at Plaintiff's <u>option</u> and is not a prerequisite to filing an action for specific performance.

49.     Defendant then goes on to argue that Plaintiff has "inordinately delayed seeking relief" and as a result, is barred by the doctrine of laches from seeking relief. This is an affirmative defense that Defendant can raise in a responsive pleading to Plaintiff's Complaint and is not proper for a motion to dismiss. *See Diaz v. Bravo*, 603 So. 2d 106, 107 (Fla. 3d DCA 1992) ("Res judicata, estoppel and laches are affirmative defenses which are not properly raised by a motion to dismiss, but should be pled as part of the answer. Therefore, if the motion to dismiss was granted on either of those grounds, the trial court erred.") (internal citations omitted).

50.     Similarly, Defendant's contention that Plaintiff is barred in whole or in part from seeking specific performance due to the statute of limitations is an affirmative defense that Defendant can raise in a responsive pleading to Plaintiff's Complaint and is not proper for a motion to dismiss. *See Alexander Hamilton Corp. v. Leeson*, 508 So. 2d 513, 513 (Fla. 4th DCA 1987) ("Under Florida Rules of Civil Procedure 1.110(d), the [Defendants] should have raised their affirmative defense of statute of limitations in their answer and not via a motion to dismiss. The purpose of a motion to dismiss is to test whether a plaintiff has alleged a good cause of action in the complaint and, therefore, consideration of defendant's affirmative defenses or the sufficiency of the evidence is irrelevant and immaterial in deciding a motion to dismiss.") (internal citations omitted).

51.     Plaintiff is entitled to equitable relief even where there is an alternative contractual basis for recovery. *See Kelsey v. Pewthers*, 685 So. 2d 953, 956 (Fla. 4th DCA

1996) ("Further, money damages and equitable relief are not inconsistent remedies; rather, both rely on the validity of a contract and seek redress for its breach.").

52.     Plaintiff has met its burden with respect to the three elements of a claim for specific performance. Accordingly, Defendant's Motion to Dismiss Count III of Plaintiff's Complaint should be denied.

**VI.     Count IV of Plaintiff's Complaint for Unjust Enrichment Adequately States a Claim.**

53.     Plaintiff has adequately pled its claim for Unjust Enrichment.

54.     A claim for Unjust Enrichment may be pled in the alternative even where a contract exists. *See Haskel Realty Group, Inc. v. KB Tyrone, LLC*, 253 So. 3d 84, 86 (Fla. 2d DCA 2018) ("The complaint also alleges counts for unjust enrichment and quantum meruit. KB Tyrone argued these claims had to be dismissed because they were negated by the allegations in count one stating that the parties had an express oral contract. This argument has no merit. It is evident from the complaint that Haskel pleaded these counts as alternatives to its claim for breach of an oral contract.").

55.     Plaintiff has met its burden to plead Unjust Enrichment as a matter of Florida law. If Defendant wishes for more specificity concerning, for instance, "How R.R. Donnelley either accepted or retained the benefit" or "what the fair value would be for the alleged benefit", Defendant may obtain such information during the discovery period. Plaintiff is not required to plead such facts in its Complaint. *See Fontainebleau Hotel Corp. v. Walters*, 246 So. 2d 563, 565 (Fla. 1971) ("[I]t is not necessary for the plaintiff to state the theory of his case in his pleading.").

56.     Finally, Defendant's contention that Plaintiff is barred in whole or in part from pursuing this Unjust Enrichment claim due to the statute of limitations is an

affirmative defense that Defendant can raise in a responsive pleading to Plaintiff's Complaint and is not proper for a motion to dismiss. Defendant's conclusory allegation that "there is only one reasonable time when R.R. Donnelley would have allegedly received the benefit – 2006" (Motion to Dismiss, at Page 16) is unsupported by the allegations of the Complaint and presents a factual dispute that is not proper for a motion to dismiss. *See Alexander Hamilton Corp. v. Leeson*, 508 So. 2d 513, 513 (Fla. 4th DCA 1987) ("Under Florida Rules of Civil Procedure 1.110(d), the [Defendants] should have raised their affirmative defense of statute of limitations in their answer and not via a motion to dismiss. The purpose of a motion to dismiss is to test whether a plaintiff has alleged a good cause of action in the complaint and, therefore, consideration of defendant's affirmative defenses or the sufficiency of the evidence is irrelevant and immaterial in deciding a motion to dismiss.") (internal citations omitted).

57.     Plaintiff has met its burden with respect to pleading its claim for Unjust Enrichment. Accordingly, Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint should be denied.

**VII.     Defendant's Motion to Strike Must be Denied.**

58.     Defendant has claimed that "35-40 of the Complaint are 'immaterial'" since they "reference a 'Mutual Confidentiality Agreement' that was not included with the Complaint". *See* Motion to Dismiss, at Page 16.

59.     Plaintiff is not required to attach the Mutual Confidentiality Agreement to the Complaint. However, as a courtesy, Plaintiff is willing to provide a copy to counsel for Defendant upon request.

60.     Counts I and II of the Complaint are breach of contract actions founded upon the Manufacture Agreement and not the Mutual Confidentiality Agreement. Fla. R. Civ. P. 1.130(a) requires only that Plaintiff attach a copy of the contract <u>upon which the action is brought</u>, and Plaintiff has done so by attaching the Manufacture Agreement.

61.     Plaintiff includes references to the Mutual Confidentiality Agreement in order to support its claim that "the parties' anticipated business relationship would involve the disclosure by ScriptChek of ScriptChek's confidential and proprietary information." Complaint, at ¶ 36.

62.     The allegations in Paragraphs 35-40 are not "immaterial" as Defendant claims. They support Plaintiff's allegations of the confidential nature of the proprietary ScriptChek Extended Tab Prescription Drug Label, the subject of the Manufacture Agreement.

63.     Accordingly, Defendant's Motion to Strike Paragraphs 35-40 because they have no "connection to the claims in the Complaint" is without merit and must be denied.

**VIII.     <u>Defendant's Motion in the Alternative for More Definite Statement Must be Denied.</u>**

64.     Defendant "seeks a more definite statement from Plaintiff on the following subjects: (1) Count I of the Complaint; (2) Count II of the Complaint; (3) Count III of the Complaint; (4) Count IV of the Complaint, (5) any discussion of damages throughout the surviving Complaint; and (6) any references to the Mutual Confidentiality Agreement throughout the surviving Complaint." *See* Motion to Dismiss, at Page 16-17.

65.     Plaintiff reincorporates its responses to Defendant's Motion to Dismiss on the same grounds. Defendant may not use the Motion to Dismiss or Motion for More Definite Statement as a way to circumvent the discovery procedures of this Court. If

CASE NO.: CACE20003398

Defendant wishes for more information concerning Plaintiff's claims, it may utilize the various discovery procedures available to it under Florida law.

66. Accordingly, Defendant's Motion for More Definite Statement must be denied.

WHEREFORE, Plaintiff SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., respectfully requests that this Court enter an order denying Defendant's Motion to Dismiss, Motion to Strike, Motion in the Alternative for More Definite Statement, and Incorporated Memorandum of Law, and for such other relief as this Court deems just and proper.

Respectfully submitted,

**SOLOWSKY & ALLEN, P.L.**
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com

By:___/s/ Richard L. Allen_____
     RICHARD L. ALLEN
     Florida Bar No. 295485

and

CASE NO.: CACE20003398

**MANSFIELD BRONSTEIN & STONE, LLP**
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com


By:    /s/ Gary N. Mansfield
        GARY N. MANSFIELD
        Florida Bar No. 61913


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court via the Florida Courts eFiling Portal and served by Email upon EUGENE K. PETTIS, ESQ., DEBBIE P. KLAUBER. ESQ., Haliczer, Pettis & Schwamm, P.A., One Financial Plaza, 100 S.E. 3rd Avenue, Seventh Floor, Fort Lauderdale, Florida, 33394 (Email: epettis@hpslegal.com; service@hpslegal.com; cmarr@hpslegal.com); and REGINALD J. HILL, ESQ., Jenner & Block LLP, 353 N. Clark Street, Chicago, Illinois, 60654 (Email: rhill@jenner.com), this 4th day of June, 2020.


        /s/ Richard L. Allen
        RICHARD L. ALLEN


m:\main\scriptchek visual\pleadings\plaintiff's response to defendant's motion to dismiss and incorporated memorandum of law.docx

# Exhibit 10

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO:  CACE 20-003398 (08)

SCRIPTCHEK VISUAL VERIFICATION
SYSTEMS, INC., a Florida Corporation,

        Plaintiff,

Vs.

R.R. DONNELLEY & SONS
COMPANY, INC.,

        Defendant.
_____/

## NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESSES

      PLEASE TAKE NOTICE that undersigned counsel hereby enters his Notice of
Appearance as counsel for the Defendant, R.R. DONNELLY & SONS COMPANY, and
requests that copies of all future pleadings, discovery and any other documents filed in
this case be directed to the attention of:

rhill@jenner.com;  dnelson@jenner.com;  docketing@jenner.com
service@hpslegal.com

      I HEREBY CERTIFY that the foregoing document was electronically filed and
served via Florida's E-filing Portal  to all counsel on the attached service list on  this 8th
*day of June 2020.*

| | |
|---|---|
| JENNER & BLOCK LLP | HALICZER PETTIS & SCHWAMM, P.A. |
| Attorney for R.R. Donnelley & Sons Company | Attorney for R.R. Donnelley & Sons Company |
| 353 N. Clark Street | One Financial Plaza, Seventh Floor |
| Chicago, IL 60654 | 100 S.E. 3rd Avenue |
| Telephone: (312) 222-9350 | Fort Lauderdale, FL 33394 |
| Fax: (312) 527-0484 | Telephone: 954-523-9922 |
| E-MAIL: rhill@jenner.com; | Fax: 954-522-2512 |
| docketing@jenner.com; dnelson@jenner.com | E-MAIL: service@hpslegal.com |
| By: /s/ *Reginald J. Hill* | By /s/ *Eugene K. Pettis* |
|    REGINALD J. HILL |   EUGENE K. PETTIS, ESQ. |
|    Ill. Bar No: 6225173 |   FBN: 508454 |
|    *Admitted Pro Hac Vice [#1022714]* | |

1

CASE NO. CACE 20-003398 (08)

## MAILING LIST

### Our File No. 1324.0001

ScriptChek Visual Verifiction Systems, Inc. v. R.R. Donnelly & Sons, Inc.
CASE NO. CACE 20-003398 (08)

Richard L. Allen, Esq.
Steven Solowsky, Esq.
Solowsky & Allen, PL
201 S. Biscayne Blvd. - #915
Miami, FL 33131
*Attorneys for Plaintiff*
305-371-2223
E-MAIL DESIGNATIONS: mlopez@salawmiami.com; rallen@salawmiami.com;
pleadings@salawmiami.com; ssolowsky@salawmiami.com

# Exhibit 11

Case 0:20-cv-61261-BXRX/ Document 6.1-5 ate Entered on FLSD Docket 06/26/2020 Page Page of 162

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: CACE 20-003398 (08)

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____ /

## NOTICE OF HEARING
## (SPECIAL SET – 1 Hour)

      PLEASE TAKE NOTICE that the undersigned has set down for hearing before the

Honorable David A. Haimes, one of the Judges of the above styled Court, on Tuesday, July

7, 2020, at 10:45 a.m., via Zoom, and instructions are as follows:

DAVID HAIMES is inviting you to a scheduled Zoom meeting
Topic: Judge Haimes Docket
Join Zoom Meeting
https://17thflcourts.zoom.us/j/111475745
Meeting ID: 111 475 745
One tap mobile

or as soon thereafter as counsel may be heard on:

      DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MOTION TO STRIKE, MOTION IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT, AND INCORPORATED MEMORANDUMUM OF LAW.

      PLEASE GOVERN YOURSELVES ACCORDINGLY.

CASE NO.: CACE 20-003398 (08)

I hereby certify that I have made a good faith attempt to resolve this matter by having direct communication about the matter with all parties, prior to my noticing this motion for hearing.

Respectfully submitted,

**SOLOWSKY & ALLEN, P.L.**
Attorneys for Plaintiff
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com


By:___/s/ Richard L. Allen_____
        RICHARD L. ALLEN
        Florida Bar No. 295485

and

**MANSFIELD BRONSTEIN & STONE,**
**LLP**
Attorneys for Plaintiff
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No. (954) 601-5600
Facsimile No. (954) 961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com


By:___/s/ Gary N. Mansfield_____
        GARY N. MANSFIELD
        Florida Bar No. 61913

CASE NO.: CACE 20-003398 (08)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court via the Florida Courts eFiling Portal and served by Email upon EUGENE K. PETTIS, ESQ., Haliczer, Pettis & Schwamm, P.A., One Financial Plaza, 100 S.E. 3rd Avenue, Seventh Floor, Fort Lauderdale, Florida, 33394 (Email: service@hpslegal.com); and REGINALD J. HILL, ESQ., Jenner & Block LLP, 353 N. Clark Street, Chicago, Illinois, 60654 (Email: rhill@jenner.com; dnelson@jenner.com; docketing@jenner.com), this 16th day of June, 2020.

_____/s/ Richard L. Allen_____
RICHARD L. ALLEN

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, 17th Judicial Circuit, 201 S.E. 6th Street, Ft. Lauderdale, Florida, 33301, Telephone: (954) 831-7721, within two (2) working days of your receipt of this Notice; if you are hearing or voice impaired, call (800) 955-8771."

m:\main\scriptchek visual\pleadings\notice of hearing (special set-1 hour) (defendant's motion to dismiss plaintiff's complaint).docx

# Exhibit 12

Case 0:20-cv-61261-RAR Document 1-3 Entered on FLSD Docket 06/26/2020 Page 123 of 162

| X | IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |
|---|---|
| ___ | IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA |

| CIVIL DIVISION | CIVIL ACTION SUMMONS | CASE NUMBER CACE-20-003398 (08) |
|---|---|---|
| **PLAINTIFF(S)** SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation | **VS. DEFENDANT(S)** R.R. DONNELLEY & SONS COMPANY, INC., a Delaware corporation | **CLOCK IN** |

| **To Defendant(s):** R.R. DONNELLEY & SONS COMPANY, INC. <br><br> (1) By serving, pursuant to §48.091, Florida Statutes, the resident agent, or in his absence, (2) By serving, pursuant to §48.081, Florida Statutes: (a) the president or vice president or other head of the corporation; and in his absence: (b) the cashier, treasurer, secretary, or general manager; and in the absence of all of the above: (c) any director; and in the absence of all of the above: (d) any officer or business agent. | **Address:** CT Corporation System <br> 1200 S. Pine Island Road <br> Plantation, FL 33324 |
|---|---|

**A lawsuit has been filed against you. Plaintiff's First Request for Production to Defendant is also being served upon you.** You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court located at:

<div align="center">

Broward County Courthouse
Clerk of Courts
201 S.E. 6th Street
Fort Lauderdale, FL 33301

</div>

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| **Plaintiff/Plaintiff Attorney** <br><br> RICHARD L. ALLEN, ESQ. | **Address:** <br> Solowsky & Allen, P.L. <br> 201 S. Biscayne Boulevard, Suite 915 <br> Miami, Florida 33131 <br> (305) 371-2223 |
|---|---|

**TO EACH SHERIFF OF THE STATE OF FLORIDA:** You are commanded to serve this Summons and a copy of the Complaint of this lawsuit and Plaintiff's First Request for Production to Defendant on the above named defendant.

| **HOWARD C. FORMAN** <br> **Clerk of Courts** | By:_____ <br> Deputy | **Court Seal** | **Date:** <br><br> FEB 26 2020 |
|---|---|---|---|

BRENDA D. FORMAN

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 02/25/2020 04:38:13 PM.****

## VERIFIED RETURN OF SERVICE

State of Florida        County of Broward        Circuit Court

Case Number: 20-3398 CACE08

Plaintiff:
**SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC.**

vs.

Defendant:
**R.R. DONNELLEY & SONS COMPANY, INC.**

POP2020048664

For:
Richard L. Allen, Esq.
SOLOWSKY & ALLEN, P.L.
201 South Biscayne Blvd.
Suite 915
Miami, FL 33131

Received by Priority One Process Service, Inc. on the 27th day of February, 2020 at 9:00 am to be served on **R.R. DONNELLEY & SONS COMPANY, INC. C/O CT CORPORATION SYSTEM, REGISTERED AGENT, 1200 S. PINE ISLAND ROAD, PLANTATION, FL 33324.**

I, ANDREW KARP, being duly sworn, depose and say that on the **27th day of February, 2020** at **2:30 pm, I:**

**CORPORATE SERVED** this CIVIL ACTION SUMMONS, COMPLAINT, FIRST REQUEST FOR PRODUCTION, EXHIBITS with the date and hour of service endorsed thereon by me, to DONNA MOCK, employee and authorized receiver of CT CORPORATION SYSTEMS, INC. as **REGISTERED AGENT** of the within named corporation, located at **1200 S. PINE ISLAND ROAD, PLANTATION, FL 33324** and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, am a Sheriff's Appointed Process Server in the Seventeenth Judicial Circuit in good standing in the county in which the process was served. "Under penalty of perjury, I declare that I have read the foregoing Affidavit of Service and that the facts stated in it are true."



DENISE ABAD
Notary Public - State of Florida
Commission # GG 362626
My Comm. Expires Mar 14, 2022

**ANDREW KARP**
S.P.S. #260

Subscribed and Sworn to before me on the 3rd day of March, 2020 by the affiant who is personally known to me.

_____
NOTARY PUBLIC
STATE OF FLORIDA

**Priority One Process Service, Inc.**
**5893 Sunset Drive**
**South Miami, FL 33143**
**(305) 669-1518**

Our Job Serial Number: POP-2020048664
Ref: SCRIPTCHEK VS R.R.

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Filing # 103893099 E-Filed 02/25/2020 04:38:15 PM

| X  IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |
|---|
| ___  IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA |

| CIVIL DIVISION | CIVIL ACTION SUMMONS | CASE NUMBER<br>CACE-20-003398 (08) |
|---|---|---|
| **PLAINTIFF(S)**<br><br>SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation | **VS. DEFENDANT(S)**<br><br>R.R. DONNELLEY & SONS COMPANY, INC., a Delaware corporation | **CLOCK IN** |

| **To Defendant(s):** R.R. DONNELLEY & SONS COMPANY, INC.<br><br>(1) By serving, pursuant to §48.091, Florida Statutes, the resident agent, or in his absence, (2) By serving, pursuant to §48.081, Florida Statutes: (a) the president or vice president or other head of the corporation; and in his absence: (b) the cashier, treasurer, secretary, or general manager; and in the absence of all of the above: (c) any director; and in the absence of all of the above: (d) any officer or business agent. | **Address:** CT Corporation System<br>1200 S. Pine Island Road<br>Plantation, FL 33324 |
|---|---|

**A lawsuit has been filed against you.** Plaintiff's First Request for Production to Defendant is also being served upon you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court located at:

Broward County Courthouse
Clerk of Courts
201 S.E. 6th Street
Fort Lauderdale, FL 33301

*Rcvd.: 2/27/2020 @ 9:00 am
Served Donny Mock
Type Corp
Date 2/27/2020 : 2:30 pm
Server AR #: 260
17 Judicial*

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| **Plaintiff/Plaintiff Attorney**<br><br>RICHARD L. ALLEN, ESQ. | **Address:**<br>Solowsky & Allen, P.L.<br>201 S. Biscayne Boulevard, Suite 915<br>Miami, Florida 33131<br>(305) 371-2223 |
|---|---|

**TO EACH SHERIFF OF THE STATE OF FLORIDA:** You are commanded to serve this Summons and a copy of the Complaint of this lawsuit and Plaintiff's First Request for Production to Defendant on the above named defendant.

| HOWARD C. FORMAN<br>Clerk of Courts | By:_____ | [Court Seal] | Court<br>Seal | Date:<br><br>FEB 26 2020 |
|---|---|---|---|---|

BRENDA D. FORMAN

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 02/25/2020 04:38:13 PM.****

48664


CT Corporation

**Service of Process Transmittal**
02/27/2020
CT Log Number 537283724

| | |
|---|---|
| **TO:** | YVETTE BUSIA<br>R R Donnelley & Sons Company<br>35 WEST WACKER DRIVE, 36TH FLOOR<br>CHICAGO, IL 60601 |
| **RE:** | **Process Served in Florida** |
| **FOR:** | R. R. Donnelley & Sons Company  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., etc., Pltf. vs. R.R. DONNELLEY & SONS COMPANY, INC., etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Verification, Request, Certificate, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Broward County Circuit Court, FL<br>Case # CACE2000339808 |
| **NATURE OF ACTION:** | Breach Of Contract |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/27/2020 at 14:55 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | You have 20 calendar days after this summons is served on you |
| **ATTORNEY(S) / SENDER(S):** | RICHARD L. ALLEN<br>SOLOWSKY & ALLEN, P.L.<br>201 S. Biscayne Boulevard, Suite 915<br>Miami, FL 33131<br>305-371-2223 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/27/2020, Expected Purge Date: 03/08/2020<br><br>Image SOP<br><br>Email Notification,  YVETTE BUSIA  yvette.b.kumi@rrd.com<br><br>Email Notification,  Alli Mack  alli.c.mack@rrd.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-331-2303<br>CentralTeam1@wolterskluwer.com |

Page 1 of  1 / SS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Filing # 103893099 E-Filed 02/25/2020 04:38:15 PM

| **_X_** IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA | | |
|---|---|---|
| **CIVIL DIVISION** | **CIVIL ACTION SUMMONS** | **CASE NUMBER** CACE-20-003398 (08) |
| **PLAINTIFF(S)** SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation | **VS. DEFENDANT(S)** R.R. DONNELLEY & SONS COMPANY, INC., a Delaware corporation | **CLOCK IN** |

| To Defendant(s): R.R. DONNELLEY & SONS COMPANY, INC. (1) By serving, pursuant to §48.091, Florida Statutes, the resident agent, or in his absence. (2) By serving, pursuant to §48.081, Florida Statutes: (a) the president or vice president or other head of the corporation; and in his absence: (b) the cashier, treasurer, secretary, or general manager; and in the absence of all of the above: (c) any director; and in the absence of all of the above: (d) any officer or business agent. | Address: CT Corporation System 1200 S. Pine Island Road Plantation, FL 33324 |
|---|---|

A lawsuit has been filed against you. Plaintiff's First Request for Production to Defendant is also being served upon you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court located at:

Broward County Courthouse
Clerk of Courts
201 S.E. 6th Street
Fort Lauderdale, FL 33301

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| **Plaintiff/Plaintiff Attorney** RICHARD L. ALLEN, ESQ. | Address: Solowsky & Allen, P.L. 201 S. Biscayne Boulevard, Suite 915 Miami, Florida 33131 (305) 371-2223 |
|---|---|

**TO EACH SHERIFF OF THE STATE OF FLORIDA:** You are commanded to serve this Summons and a copy of the Complaint of this lawsuit and Plaintiff's First Request for Production to Defendant on the above named defendant.

| **HOWARD C. FORMAN** **Clerk of Courts** | By:_____ | Court Seal | Date: FEB 26 2020 |
|---|---|---|---|

**BRENDA D. FORMAN**

48664

Filing # 103813414 E-Filed 02/24/2020 04:36:00 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____/

## PLAINTIFF SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC.'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT R.R. DONNELLEY & SONS COMPANY, INC.

Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida

Corporation ("ScriptChek"), by and through its undersigned counsel, and pursuant to the

Florida Rules of Civil Procedure, hereby request that Defendant R.R. DONNELLEY &

SONS COMPANY, INC., a Delaware Corporation, timely respond to this First Request

for Production in compliance with the Rules, and the instructions and definitions contained

herein.

## INSTRUCTIONS

This Request is continuing in nature, and the answers and documents must be
supplemented by you at such time in the future as any facts, information, and documents
discovered hereafter have been ascertained, and such supplemental answers, information

CASE NO.:

and documents shall be served upon the undersigned attorneys seasonably after such discovery.

Plaintiff requests that you timely produce the items specified herein for inspection and copying.

You are required to produce a document or tangible thing if it is within your possession, custody, or control. Possession, custody, or control includes constructive possession, such that you need not have actual physical possession. As long as you have the superior right to compel the production from a third party (including an agency, authority or representative), you have possession, custody, or control.

If you cannot produce the documents listed herein in full after exercising due diligence to secure such documents, please so state and specify the reason(s) for your inability to produce the documents and stating whatever information you have relating to the location and/or possession, custody, or control of the documents.

For each document which you seek to withhold under a claim of privilege, work-product, or otherwise, the following information shall be provided in a Privilege Log: the specific ground for withholding each such document; a statement of the basis on which privilege is claimed; the place, date, and the manner of rendering or otherwise preparing the document; the name and title of the sender of the document and the name and title of the recipient of the document; a summary of the contents of the document; the identity of each person to whom the document has heretofore been communicated by copy, exhibition, reading, or substantial summarization; the date of such communication; the employer and title of such person, if any, at the time of such communication; and the current location and custodian of the original and copies of the document or communication.

If any document listed herein has been lost, discarded, or destroyed, you shall identify such document as completely as possible, which identification shall include, but not be limited to, date of disposal, matter of disposal, reason for disposal, person authorizing the disposal, and the person disposing of the document.

All documents listed herein shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with categories in this Request. The selection of documents from files and other sources shall be performed in such a manner as to ensure that the file or other source in which the document is obtained may be identified. Any documents listed herein shall be produced in their full and unexpurgated form.

**For those requests for which there are no responsive materials, explicitly indicate "NONE" for each such request.**

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## DEFINITIONS

**"Any"** as used herein includes the word "all," and the word "all" as used herein includes the word "any." "All" shall be construed to include the term "each," and "each" shall be construed to include the word "all."

The connectives **"and," "or,"** and **"and/or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

"**Books of Account**" shall have the meaning ascribed to it in ¶ 4 of the Manufacture Agreement.

"**Communication**" or "**correspondence**" shall mean any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, contact by any means including written contact by any document, electronic contact, and oral contact by such means as face-to-face meetings and telephone conversations, including but not limited to letters, emails, text messages, iMessages, and postings on any social media site or application, and notes of meetings, conversations and conferences.

"**Complaint**" shall refer to the Complaint filed in the above-captioned case on February 24, 2020.

"**Concerning**" and "**Concern**", when used with respect to a document, subject, or fact, means embodying, containing, evidencing, reflecting, pertaining to, relating to, verifying, regarding, reciting, recording, constituting, supporting, refuting, or referring to.

"**CVS**" shall mean CVS Pharmacy, a subsidiary of CVS HEALTH CORPORATION, INC., a Delaware Corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

"**Document**" or "**documents**" shall be deemed to include, by way of illustration only and not by way of limitation, the following (whether printed or reproduced by any process, written, and/or produced by hand, including the original and any copy which is not identical because of marginal notes or otherwise) which are subject to your custody or control, wherever located, and whether or not claimed to be privileged or otherwise excludable from discovery: electronic data, notes; correspondence; communications of any nature; telegrams; e-mails; text messages; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; calendars; routing slips or memoranda; reports; records; computer records; computer programs; computer disks; USBs or thumb drives; publications; photographs; films; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications and/or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts of, revisions of, or translations of any document; invoices;

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL. (305) 371-2223

CASE NO.:

checks; bills; estimates; account statements; tape recordings (audio or video); and records and dictation belts. Marks on any sheet or side thereof, including but not by way of limitation, initials, stamped indicia, any comment or any notation of any character not a part of the original text, or any reproduction thereof, is to be considered a separate document.

The term **"document"** is intended to include Electronically Stored Information, which includes but is not limited to your word-processing documents; spreadsheets; presentation documents; graphics; animations; images; e-mail (including attachments which shall be kept with the e-mail); instant messages; text messages; chat messages; voice mail; audio, video, and audiovisual recordings; databases and data base subsets; software; and other user, or machine created, digital information which is stored on computer networks, servers, computer systems, desktop computers, laptop computers, home computers, the internet, web pages, archives, screenshots, discs, CDs, DVDs, diskettes, drives, tapes, cartridges, flash drives, jump drives, and other external storage media, personal digital assistants, handheld wireless devices, cellular telephones, iPhones, Blackberries, pagers and voicemail systems.

The term **"document"** includes all non-privileged electronically stored information in native format, including Outlook pst files, (communications, emails, contacts, calendars, to do lists and events, as well as any other activity databases). The term "document" includes all electronic communications and social media postings on your equipment, including but not limited to instant messages, text messages, blogs, tweets, wikis, forum comments, social media communications of any kind (Facebook, and the like), voicemails, videos, online profiles, postings, messages (including, without limitation, tweets, replies, re-tweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, and online communications on your equipment.

**"Each"** as used herein includes the word "every," and the word "every" as used herein includes the word "each."

**"Extended Tab Prescription Drug Label"** shall have the meaning ascribed to it in the Manufacture Agreement.

**"Manufacture Agreement"** shall be deemed to refer to the Non-Exclusive Limited License to Manufacture, entered into on or about August 1, 2006 by ScriptChek and Moore Wallace, the predecessor by merger to R.R. Donnelley. A copy of the Manufacture Agreement is attached to the Complaint as Exhibit "A".

**"Marking"** shall have the meaning ascribed to it in ¶ 4 of the Manufacture Agreement.

**"Person"** shall be deemed to mean any natural person, the estate of any natural person, or any legal entity, including but not limited to a corporation, trust, partnership, unincorporated association, or any officer, director, employee, agent, or other person acting or purporting to act on their behalf.

CASE NO.:

"**R.R. Donnelley**" shall be deemed to refer to R.R. DONNELLEY & SONS COMPANY, INC., a Delaware corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.[1]

"**ScriptChek**" shall be deemed to refer to SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida Corporation, its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

"**You**", "**you**", "**Your**" and "**yours**" for purposes of these Requests shall be deemed to refer to Defendant, R.R. Donnelley, and/or any officer, manager, member, representative, employee, agent, or other person acting on behalf R.R. Donnelley.

The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

The applicable relevant time period for each of the following Requests for Production shall be from January 1, 2006 through the present, unless otherwise specified.

---

[1] For the purposes of these Requests, R.R. Donnelley shall also be deemed to refer to MOORE WALLACE, NORTH AMERICA, INC., a Delaware corporation, which was acquired by merger with R.R. Donnelley, and its principals, officers, agents, employees, assignees, subsidiaries, corporate affiliates, and/or representatives.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER - SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## REQUESTS

1.     All documents and correspondence concerning the Manufacture Agreement. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

2.     All documents and correspondence concerning the Extended Tab Prescription Drug Label. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

3.     All documents and correspondence between CVS and R.R. Donnelley concerning the Manufacture Agreement. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

4.     All documents and correspondence between CVS and R.R. Donnelley concerning the Extended Tab Prescription Drug Label. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

5.     All documents and correspondence between CVS and R.R. Donnelley concerning the manufacture of any prescription drug labels, including but not limited to any and all die lines provided to CVS by R.R. Donnelley. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

6.     All documents and correspondence between R.R. Donnelley and any other Person concerning the manufacture of any prescription drug labels, including but not limited to any and all die lines provided to such Person by R.R. Donnelley. This request includes, but is not limited to, all documents and/or correspondence, regardless of whether additional persons or entities were the senders, the recipients, or were otherwise copied on the documents and/or correspondence.

7.     All documents and correspondence concerning the manufacture of the Extended Tab Prescription Drug Label.

8.     All documents and correspondence concerning the Books of Account, including but not limited to the Books of Account themselves, and any and all documents and correspondence concerning same.

- 6 -

CASE NO.:

9.     All documents and correspondence concerning the sale(s) of the Extended Tab Prescription Drug Label to any Person.

10.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning the Extended Tab Prescription Drug Label.

11.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning ScriptChek.

12.     All documents and correspondence R.R. Donnelley sent to or received from any third parties concerning CVS.

13.     All documents and correspondence concerning ScriptChek's allegations as set forth in the Complaint.

14.     All documents concerning ScriptChek.

15.     All documents concerning the Extended Tab Prescription Drug Label.

<div style="margin-left: 50%;">

Respectfully submitted,

SOLOWSKY & ALLEN, P.L.
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com


By:   /s/ Richard L. Allen
          RICHARD L. ALLEN
          Florida Bar No. 295485


and

</div>

- 7 -

CASE NO.:

**MANSFIELD BRONSTEIN & STONE,
LLP**
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com


By:_____/s/ Gary N. Mansfield_____
        GARY N. MANSFIELD
        Florida Bar No. 61913

## CERTIFICATE OF SERVICE

.I HEREBY CERTIFY that a true and correct copy of the foregoing was served

together with the Complaint on the Defendant, R.R. DONNELLEY & SONS COMPANY,

INC.


By:___/s/ Richard L. Allen_____
        RICHARD L. ALLEN

m:\main\scriptchek visual\pleadings\2020-02-24 first request for production to defendant.docx

Filing # 103813414 E-Filed 02/24/2020 04:36:00 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,
a Florida Corporation,

        Plaintiff,

v.

R.R. DONNELLEY & SONS
COMPANY, INC., a Delaware
Corporation,

        Defendant.

_____ /

## COMPLAINT

      Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., a Florida

Corporation ("ScriptChek"), by and through its undersigned counsel, sues Defendant, R.R.

DONNELLEY & SONS COMPANY, INC., a Delaware Corporation ("R.R. Donnelley"),

and alleges as follows:

      1.      On or about August 1, 2006, the parties entered into a Non-Exclusive

Limited License to Manufacture (the "Manufacture Agreement").  A copy of the

Manufacture Agreement is attached hereto as Exhibit "A."

      2.      This is an action for breach of the terms of the Manufacture Agreement

(Counts I and II), alternatively, an action for specific performance of the provisions of the

CASE NO.:

Manufacture Agreement (Count III), and, alternatively, an action for unjust enrichment (Count IV).

## PARTIES, JURISDICTION, AND VENUE

3. This is an action for damages in which the amount in controversy exceeds $30,000.00 exclusive of interest, costs and attorneys' fees and is within the jurisdiction of this Court, and alternatively for equitable relief within the jurisdiction of this Court.

4. ScriptChek is a Florida Corporation conducting business in Broward County, Florida.

5. R.R. Donnelley is a Delaware Corporation conducting business in Broward County, Florida.

6. R.R. Donnelley is the successor by merger to Moore Wallace, its predecessor. Moore Wallace was acquired by merger by R.R. Donnelley. As a result of R.R. Donnelley's acquisition by merger of Moore Wallace, R.R. Donnelly stands in the shoes of Moore Wallace and R.R. Donnelley has assumed the obligations, liabilities, and rights of Moore Wallace.

7. Moore Wallace entered into the Manufacture Agreement with ScriptChek, as set forth herein. As a result of R.R. Donnelley's acquisition by merger of Moore Wallace, R.R. Donnelly stands in the shoes of Moore Wallace and R.R. Donnelley has assumed the obligations, liabilities, and rights of Moore Wallace pursuant to the Manufacture Agreement.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

8.      Venue is proper in Broward County, Florida because R.R. Donnelley conducts business in Broward County, Florida, and the causes of action accrued in Broward County, Florida.

9.      Venue is proper in Broward County, Florida pursuant to ¶ 13 of the Manufacture Agreement, in which R.R. Donnelley has consented to jurisdiction and venue in Broward County, Florida. *See* Manufacture Agreement, ¶ 13.

10.     In addition, pursuant to ¶ 13 of the Manufacture Agreement, R.R. Donnelley and ScriptChek agreed that the Manufacture Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Florida. *See* Manufacture Agreement, ¶ 13.

## GENERAL ALLEGATIONS

### The Parties Entered into the Manufacture Agreement

11.     On or about August 1, 2006, ScriptChek and R.R. Donnelley's predecessor, Moore Wallace, entered into the Manufacture Agreement. *See* Manufacture Agreement.

12.     The Manufacture Agreement was the product of negotiation between the parties, and it was executed by the Vice President and Associate General Counsel of R.R. Donnelly's predecessor, Robert G. Nieland, and by the President of ScriptChek, Stacy Kaufman.

13.     Pursuant to the Manufacture Agreement, ScriptChek granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels for the limited purpose of selling the patented ScriptChek Extended Tab Prescription Drug Labels only to customers approved by

CASE NO.:

ScriptChek (the "Approved Customers") who have entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, ¶ 1.

14.    The patented ScriptChek Extended Tab Prescription Drug Labels are prescription labels for displaying additional information printed on a tab extending from the label. *See* Manufacture Agreement, ¶ 11.

15.    Pursuant to ¶ 1 of the Manufacture Agreement, ScriptChek granted R.R. Donnelley a "non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Labels only to customers approved by [ScriptChek], hereinafter referred to as 'Approved Customers' that have entered into written License Agreements with [ScriptChek] to use the Extended Tab Prescription Drug Label." *See* Manufacture Agreement, ¶ 1.

16.    Pursuant to ¶ 4 of the Manufacture Agreement, R.R. Donnelley was obligated to "mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from [ScriptChek] of the issuance of any pending patents, "Patented" with the patent numbers and proper dates." *See* Manufacture Agreement, ¶ 4.

17.    In the Manufacture Agreement, R.R. Donnelley acknowledged and agreed that ScriptChek is the owner of the patented ScriptChek Extended Tab Prescription Drug Labels. *See* Manufacture Agreement, p. 1.

18.    In the Manufacture Agreement, R.R. Donnelley agreed to manufacture ScriptChek's patented Extended Tab Prescription Drug Labels for the purpose of selling them to ScriptChek's Approved Customers. *See* Manufacture Agreement, ¶ 2. Pursuant to

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

the Manufacture Agreement, R.R. Donnelley has sold and continues to sell the patented

ScriptChek Extended Tab Prescription Drug Label to at least one Approved Customer.

19.     In the Manufacture Agreement, R.R. Donnelley agreed not to sell the

patented ScriptChek Extended Tab Prescription Drug Labels to customers who were not

approved by ScriptChek and to customers who had not entered into written license

agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription

Drug Labels. *See* Manufacture Agreement, ¶¶ 1, 2.

### The Parties Performed under the Manufacture Agreement

20.     The parties performed under the Manufacture Agreement for numerous

years, and continue to perform under the Manufacture Agreement with respect to those

Approved Customers who entered into a license agreement with ScriptChek to use the

patented ScriptChek Extended Tab Prescription Drug Labels.

21.     ScriptChek performed its obligations pursuant to the Manufacture

Agreement, in that it provided the non-exclusive right to manufacture and sell the patented

ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley pursuant to the

terms and conditions set forth in the Manufacture Agreement.

22.     ScriptChek entered into written License Agreements with Approved

Customers for the Approved Customers to use the patented ScriptChek Extended Tab

Prescription Drug Labels. *See* Manufacture Agreement, ¶ 1.

23.     R.R. Donnelley manufactured and sold the patented ScriptChek Extended

Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.   *See*

Manufacture Agreement, ¶¶ 1, 2.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

24.     As referenced in the Manufacture Agreement, patents were issued to ScriptChek. *See, e.g.,* Manufacture Agreement, ¶¶ 3, 4.

25.     ScriptChek provided to R.R. Donnelley confidential and proprietary information, specifications, know-how, and other protected information and materials to be used by R.R. Donnelly solely in furtherance of R.R. Donnelley's manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

26.     The Manufacture Agreement provides that the term of the Manufacture Agreement shall extend to the end of the life of the last of the patents coming within the provisions of the Manufacture Agreement. *See* Manufacture Agreement, ¶ 3.

### R.R. Donnelley Breached the Manufacture Agreement

27.     R.R. Donnelley has been manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of the Manufacture Agreement.

28.     As a result, on or about October 29, 2019, ScriptChek, by and through its undersigned counsel, sent a demand letter to R.R. Donnelley, which put R.R. Donnelley on notice that ScriptChek has elected to exercise its right to terminate the Manufacture Agreement with R.R. Donnelley, demanded that R.R. Donnelley cease and desist from using any and all of ScriptChek's proprietary information in any form, including but not limited to, the manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels, demanded that R.R. Donnelley provide an accounting of all sales of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers,

CASE NO.:

and demanded that R.R. Donnelley immediately return all confidential and proprietary materials in R.R. Donnelley's possession regarding the patented ScriptChek Extended Tab Prescription Drug Labels.

29.     On or about November 15, 2019, ScriptChek, by and through its undersigned counsel, sent Mr. Paul Rodriguez, Esq., Vice President and Chief International, Privacy and Intellectual Property Counsel for R.R. Donnelley, photographs of prescription drug bottles obtained from CVS Pharmacy which contain ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels, per Mr. Rodriguez's request.

30.     On information and belief, R.R. Donnelley has utilized, and is still utilizing, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to print and supply non-approved customers, including but not limited to CVS Pharmacy, with patented ScriptChek Extended Tab Prescription Drug Labels for the non-approved customers' prescription drug bottles, without ScriptChek's approval, in violation of the Manufacture Agreement.

31.     On information and belief, R.R. Donnelley has sold, and is still selling, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, for the non-approved customers' prescription drug bottles, without ScriptChek's approval, in violation of the Manufacture Agreement.

32.     In addition, on or about November 15, 2019, ScriptChek, by and through its undersigned counsel, demanded that R.R. Donnelley provide it with die lines that were provided to R.R. Donnelley by CVS Pharmacy, and any die lines R.R. Donnelley sent to

- 7 -

CVS Pharmacy for its approval, in order to see the folding perforation on the die line, as well as samples of the actual blank labels which R.R. Donnelley provided to CVS Pharmacy. A die line is a diagram showing the cut lines and folds of a package to ensure proper printing layout.

33. Despite notice, R.R. Donnelley has failed to provide ScriptChek with any of the materials demanded by ScriptChek, and has failed to cease its sale of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of the Manufacture Agreement.

34. ScriptChek has incurred and continues to incur damages as a result of R.R. Donnelley's violations of the Manufacture Agreement.

### R.R. Donnelley Acknowledged the Strictly Confidential Nature of ScriptChek's Confidential and Proprietary Information Provided to R.R. Donnelley

35. R.R. Donnelly's predecessor, Moore Wallace entered into a Mutual Confidentiality Agreement in September 2003 with ScriptChek.

36. In the Mutual Confidentiality Agreement, R.R. Donnelley acknowledged that the parties' anticipated business relationship would involve the disclosure by ScriptChek of ScriptChek's confidential and proprietary information.

37. In the Mutual Confidentiality Agreement, R.R. Donnelley acknowledged the strictly confidential nature of ScriptChek's confidential and proprietary information.

38. In the Mutual Confidentiality Agreement, R.R. Donnelly agreed to protect ScriptChek's confidential and proprietary information by using a standard of care at least

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

equal to that which R.R. Donnelly applies to safeguard its own highly confidential internal information.

     39.    The parties' Mutual Confidentiality Agreement was the product of negotiation between the parties, and it was executed in September 2003 by the Chief Financial Officer of Operations of R.R. Donnelly's predecessor, Richard McMichael, and by the President of ScriptChek, Stacy Kaufman.

     40.    Almost three years after the parties entered into the Mutual Confidentiality Agreement, the parties' entered into the Manufacture Agreement.

     41.    All conditions precedent to filing this action have been performed, have occurred, have been satisfied, or have been waived.

<div align="center">

**COUNT I**
**BREACH OF CONTRACT**
**(Non-Exclusive Limited Right to Manufacture)**

</div>

     42.    ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

     43.    ScriptChek pleads this Count for Breach of Contract in the alternative to all other relief requested herein.

     44.    Pursuant to ¶ 1 of the Manufacture Agreement, ScriptChek granted R.R. Donnelley a "non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by [ScriptChek], hereinafter referred to as 'Approved Customers' that have entered into written License Agreements with [ScriptChek] to use the Extended Tab Prescription Drug Label."

<div align="center">

- 9 -

</div>

CASE NO.:

45.  Pursuant to ¶ 4 of the Manufacture Agreement, R.R. Donnelley was obligated to "mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from [ScriptChek] of the issuance of any pending patents, 'Patented' with the patent numbers and proper dates."

46.  ScriptChek performed its obligations pursuant to the Manufacture Agreement, in that it provided the non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley pursuant to the terms and conditions set forth in the Manufacture Agreement.

47.  R.R. Donnelley breached the Manufacture Agreement with ScriptChek: (1) by manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of ¶ 1 of the Manufacture Agreement; and (2) by failing to include "ScriptChek ®" on the patented ScriptChek Extended Tab Prescription Drug Labels sold by R.R. Donnelley, in violation of ¶ 4 of the Manufacture Agreement.

48.  ScriptChek has been damaged and continues to be damaged as a result.

49.  In addition to the relief requested herein, ScriptChek hereby demands that R.R. Donnelley immediately cease and desist from any and all manufacturing of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers pursuant to ¶ 1 of the Manufacture Agreement.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands a Judgment against Defendant, R.R. DONNELLEY & SONS COMPANY,

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

INC., for damages plus prejudgment interest and costs, and for such other and further relief as this Court deems just, equitable and proper.

### COUNT II
### BREACH OF CONTRACT
### (Books of Account and Quarterly Reports)

50.     ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

51.     ScriptChek pleads this Count for Breach of Contract in the alternative to all other relief requested herein.

52.     Pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "keep proper books of account accurately reflecting the customers of [R.R. Donnelley] for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement."

53.     In addition, pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "render written reports quarterly to [ScriptChek] not later than the 15th day of the month following each contract quarter of this Agreement", which reports were to contain, *inter alia*, the name and address of each customer, the dates of sale to each customer, and the total number of labels sold to each customer. *Id.*

54.     R.R. Donnelley breached the Manufacture Agreement with ScriptChek by failing to keep proper books of account and failing to render written reports quarterly to ScriptChek, in violation of ¶ 5 of the Manufacture Agreement.

55.     ScriptChek has been damaged and continues to be damaged as a result.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands a Judgment against Defendant, R.R. DONNELLEY & SONS COMPANY,

CASE NO.:

INC., for damages plus prejudgment interest and costs, and for such other and further relief as this Court deems just, equitable and proper.

## COUNT III
## SPECIFIC PERFORMANCE OF CONTRACT
### (Books of Account and Written Quarterly Reports)

56.     ScriptChek realleges and reasserts the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

57.     ScriptChek pleads this Count for Specific Performance of Contract in the alternative to all other relief requested herein.

58.     This is an action for Specific Performance of R.R. Donnelley's express written contractual obligation to keep proper books of account and to render written reports quarterly to ScriptChek, as set forth in the Manufacture Agreement which is attached hereto as Exhibit "A".

59.     Pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "keep proper books of account accurately reflecting the customer(s) of [R.R. Donnelley] for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement".

60.     In addition, pursuant to ¶ 5 of the Manufacture Agreement, R.R. Donnelley was obligated to "render written reports quarterly to [ScriptChek] not later than the 15th day of the month following each contract quarter of this Agreement", which reports were to contain, *inter alia*, the name and address of each customer, the dates of sales to each customer, and the total number of labels sold to each customer. *Id.*

CASE NO.:

61.     The Manufacture Agreement required R.R. Donnelley to keep proper books of account and to render the written reports quarterly to ScriptChek, and R.R. Donnelley has failed to do so.

62.     ScriptChek is entitled to specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement which requires R.R. Donnelley to keep proper books of account and to render written reports quarterly to ScriptChek.

63.     ScriptChek is clearly entitled to specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement to keep proper books of account and render written reports as specified in ¶ 5 of the Manufacture Agreement from 2006 to the present.

64.     ScriptChek has no adequate remedy at law.

65.     Under the circumstances, justice requires that ScriptChek be granted specific performance of R.R. Donnelley's obligations under ¶ 5 of the Manufacture Agreement.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands that this Court enter a Judgment granting specific performance of ¶ 5 of the Manufacture Agreement and requiring R.R. DONNELLEY & SONS COMPANY, INC., to perform the contractual obligations by providing SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., with the books of account and written reports specified in ¶ 5 of the Manufacture Agreement from 2006 to the present, and for such other and further relief as this Court deems just, equitable and proper.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## COUNT IV
## UNJUST ENRICHMENT

66. ScriptChek realleges and reasserts the allegations contained in Paragraphs 3-6, 8, and 41 as if fully set forth herein.

67. ScriptChek pleads this Count for Unjust Enrichment in the alternative to all other relief requested herein.

68. ScriptChek has conferred a benefit on R.R. Donnelley, who has knowledge thereof.

69. R.R. Donnelley has voluntarily accepted and retained the benefit conferred by ScriptChek.

70. The circumstances are such that it would be inequitable for R.R. Donnelley to retain the benefit without paying the value thereof to ScriptChek, and R.R. Donnelley must provide restitution to ScriptChek.

71. R.R. Donnelley's retention of the benefits conferred by ScriptChek without paying the value thereof to ScriptChek would violate good conscience and fundamental principles of justice or equity.

72. ScriptChek granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell ScriptChek's Extended Tab Prescription Drug Labels for the limited purpose of selling the Extended Tab Prescription Drug Labels only to customers approved by ScriptChek (the "Approved Customers") who have entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels.

73. The Extended Tab Prescription Drug Labels are prescription labels for displaying additional information printed on a tab extending from the label.

- 14 -

CASE NO.:

74. R.R. Donnelley was obligated to mark all patented ScriptChek Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) ScriptChek ®, (b) Patents Pending, and (c) upon notice from ScriptChek of the issuance of any pending patents, "Patented" with the patent numbers and proper dates.

75. R.R. Donnelley agreed to manufacture ScriptChek's patented Extended Tab Prescription Drug Labels for the purpose of selling them only to ScriptChek's Approved Customers.

76. R.R. Donnelley agreed not to sell the patented ScriptChek Extended Tab Prescription Drug Labels to customers who were not approved by ScriptChek and who had not entered into written license agreements with ScriptChek to use the patented ScriptChek Extended Tab Prescription Drug Labels.

77. ScriptChek provided the non-exclusive right to manufacture and sell the patented ScriptChek Extended Tab Prescription Drug Labels to R.R. Donnelley.

78. ScriptChek entered into written License Agreements with Approved Customers for the Approved Customers to use the patented ScriptChek Extended Tab Prescription Drug Labels.

79. R.R. Donnelley manufactured and sold the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

80. ScriptChek provided to R.R. Donnelley confidential and proprietary information, specifications, know-how, and other protected information and materials to be used by R.R. Donnelly solely in furtherance of R.R. Donnelley's manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels for ScriptChek's Approved Customers' use.

- 15 -

CASE NO.:

81.    R.R. Donnelley has been manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy.

82.    As a result, on or about October 29, 2019, ScriptChek, by and through its undersigned counsel, sent a demand letter to R.R. Donnelley, in which ScriptChek, *inter alia*, demanded that R.R. Donnelley cease and desist from using any and all of ScriptChek's proprietary information in any form, including but not limited to, the manufacture and sale of the patented ScriptChek Extended Tab Prescription Drug Labels, demanded that R.R. Donnelley provide an accounting of all sales of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, and demanded that R.R. Donnelley immediately return all confidential and proprietary materials in R.R. Donnelley's possession regarding the patented ScriptChek Extended Tab Prescription Drug Labels.

83.    On or about November 15, 2019, ScriptChek, by and through its undersigned counsel, sent Mr. Paul Rodriguez, Esq., Vice President and Chief International, Privacy and Intellectual Property Counsel for R.R. Donnelley, photographs of prescription drug bottles obtained from CVS Pharmacy which contain ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels, per Mr. Rodriguez's request.

84.    On information and belief, R.R. Donnelley has utilized, and is still utilizing, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to print and supply non-approved customers, including but not limited to CVS Pharmacy, with patented ScriptChek Extended Tab Prescription Drug Labels for the non-approved customers' prescription drug bottles, without ScriptChek's approval.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

85.     On information and belief, R.R. Donnelley has sold, and is still selling, ScriptChek's proprietary and patented Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, for the non-approved customers' prescription drug bottles, without ScriptChek's approval, and R.R. Donnelley has been unjustly enriched by such sales.

86.     In addition, on or about November 15, 2019, ScriptChek, by and through its undersigned counsel, demanded that R.R. Donnelley provide it with die lines that were provided to R.R. Donnelley by CVS Pharmacy, and any die lines R.R. Donnelley sent to CVS Pharmacy for its approval, in order to see the folding perforation on the die line, as well as samples of the actual blank labels which R.R. Donnelley provided to CVS Pharmacy. A die line is a diagram showing the cut lines and folds of a package to ensure proper printing layout.

87.     Despite notice, R.R. Donnelley has failed to provide ScriptChek with any of the materials demanded by ScriptChek, and has failed to cease its sale of the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy.

88.     R.R. Donnelley has been and continues to be unjustly enriched by ScriptChek.

WHEREFORE, Plaintiff, SCRIPTCHEK VISUAL VERIFICATION SYSTEMS, INC., demands that this Court enter a Judgment for unjust enrichment against R.R. DONNELLEY & SONS COMPANY, INC., and for such other and further relief as this Court deems just, equitable and proper.

SOLOWSKY & ALLEN, P.L.
201 S. BISCAYNE BOULEVARD, CITIGROUP CENTER – SUITE 915, MIAMI, FLORIDA 33131 TEL (305) 371-2223

CASE NO.:

## DEMAND FOR JURY TRIAL

Plaintiff demands Trial by Jury on issues so triable.

Respectfully submitted,

**SOLOWSKY & ALLEN, P.L.**
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
Citigroup Center – Suite 915
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No. (305) 371-2223
Facsimile No. (305) 373-2073
rallen@salawmiami.com
ssolowsky@salawmiami.com
mlopez@salawmiami.com
pleadings@salawmiami.com

By: /s/ Richard L. Allen
      RICHARD L. ALLEN
      Florida Bar No. 295485

and

**MANSFIELD BRONSTEIN & STONE,**
**LLP**
Attorneys for Plaintiff,
*SCRIPTCHEK VISUAL*
*VERIFICATION SYSTEMS, INC.*
500 Broward Boulevard, Suite 1450
Fort Lauderdale, Florida 33394
Telephone No.: 954-601-5600
Facsimile No.: 954-961-4756
Email: gary@mblawpa.com
Email: dstone@davidstonelaw.com
Service: litigation@mblawpa.com

By: /s/ Gary N. Mansfield
      GARY N. MANSFIELD
      Florida Bar No. 61913

m:\main\scriptchek visual\pleadings\2020-02-24 complaint.docx

- 18 -



Exhibit A

## Non-Exclusive Limited License to Manufacture

This Agreement, made and entered into, in duplicate, this first day of August, 2006, by and between the Scriptchek Visual Verification Systems, Inc, a corporation organized and doing business under and by virtue of the laws of the State of Florida, hereinafter referred to as the "Licensor," and Moore Wallace North America, Inc., a corporation organized and existing under and by virtue of the laws of the State of Delaware, hereinafter referred to as the "Licensee."

### Witnesseth:

Whereas, the Licensor is the owner of all right, title and interest in and to certain inventions in a certain Extended Tab Prescription Drug Label ("Extended Tab Prescription Drug Label"), which inventions are the subject of certain Pending Patent Applications in the United States and Canada, said inventions and Pending Patent Applications being hereinafter referred to collectively as "International Patents";

Whereas, the Licensee desires to obtain the non-exclusive right to manufacture and sell said Extended Tab Prescription Drug Label and the Licensor desires to grant the same;

Now, therefore, in consideration of the premises and the payment of one dollar ($1.00) and/or other valuable consideration by each party to the other, the receipt whereof is hereby mutually acknowledged, and of the covenants and agreements hereinafter mentioned to be faithfully kept and performed by the parties hereto, it is mutually agreed as follows:

1. Grant of Non-Exclusive Limited License. The Licensor hereby grants to the Licensee the non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the limited purpose of selling the Extended Tab Prescription Drug Label only to customers approved by Licensor, hereinafter referred to as "Approved Customers" that have entered into written License Agreements with Licensor to use the Extended Tab Prescription Drug Label. .

2. Agreement of Licensee to Manufacture. The Licensee hereby accepts said non-exclusive, limited right to manufacture the Extended Tab Prescription Drug Label for the purpose of selling the Extended Tab Prescription Drug Label only to the Approved Customers.

3. Term. The term of the grant hereinabove given in Section 1, unless sooner terminated as hereinafter provided for, shall extend to the end of the life of the last of the International Patents coming within the provisions of this Agreement.

In the event that all patent claims included within the Licensor's International Patents shall be held invalid in a decision by a court of competent jurisdiction and last resort in any country and from which no appeal has or can be taken, then Licensee shall continue to manufacture and sell under the then presumed patent, the existence of which is in full force for the same period of time.

4. Marking. The Licensee shall mark all Extended Tab Prescription Drug Labels manufactured by it and/or sold by it with (a) Scriptchek ®, (b) Patents Pending, and (c) upon notice from Licensor of the issuance of any of the pending patents, "Patented" with the patent numbers and proper dates.

5. Books of Account. The Licensee shall keep proper books of account accurately reflecting the customer(s) of the Licensee for all Extended Tab Prescription Drug Labels and associated devices manufactured and sold by it under the terms of this Agreement and render written reports quarterly to the Licensor not later than the 15th day of the month following each contract quarter of this Agreement

1

Including at least (1) name of each customer, (2) address of each customer, (3) contact name at each customer, (4) dates of sale(s) to each customer and (5) total number of labels sold to each customer on each date. In the event of failure of the Licensee to render any report as herein provided for, the Licensor at its option may have such report prepared by and delivered to itself by its authorized representative and at the expense of the Licensee.

6. Nonassignability.   The rights to manufacture and sell herein granted to the Licensee are personal to it and the same shall not be assigned, divided or apportioned, in whole or in part, voluntarily or by operation of law, without written consent from Licensor.

7. Cancellation Upon Default.   If the Licensee in any manner violates any of the terms or conditions of this agreement, or in any manner fails to comply with or carry out in every manner and respect any and all of the provisions of this agreement, and continues so to do for fifteen (15) days after notice thereof in writing given by the Licensor to the Licensee delivered to the last known address of the Licensee stating the nature and character of the alleged breach with sufficient definiteness and particularity to permit the Licensee to identify and investigate the nature of such alleged breach, then in that event, the Licensor may at its option, and without waiving or in any manner affecting any of its other then existing rights against the Licensee, cancel the right of the Licensee to manufacture and sell under this agreement by giving the Licensee ten (10) days' notice by registered mail, sent to its last known address, of the Licensor's election to cancel such manufacturing and selling rights under this agreement, and all such manufacturing and selling rights herein granted to the Licensee shall then terminate at the end of said ten-day period;   provided, however, that if the Licensee cures the breach within the ten (10) days after the first notice herein provided for the Licensor shall not thereafter have the option or election of canceling the manufacturing and selling rights given the Licensee under this agreement for said specific breach;   and provided further, that the failure of the Licensor to at any time cancel such manufacturing and selling rights to the Licensee under this agreement as herein provided for, shall not prevent or preclude the Licensor at any future time for any other violations by the Licensee, from taking advantage of the provisions of this section of the Agreement.

8. Right of Parties to Cancel.   At any time, either party may, upon giving the other party three (3) months' written notice, cancel and terminate this Agreement without cause.

9. Inventions.   Any additional inventions, applications, and/or patents pertaining to Extended Tab Prescription Drug Label and associated devices hereafter acquired or coming within the control of the Licensor shall, at the option of the Licensee, be included under the provisions of this agreement.   The Licensor agrees to promptly advise the Licensee from time to time of any such future acquired invention, application, and/or patent, and the Licensee may, within sixty (60) days from the receipt of such notice by the Licensee and the information necessary to make the election, elect to have such invention, application and/or patent included under the provisions of this agreement.

10. Warranty.   The Licensor represents that it has the exclusive rights to the International Patents and that under the provisions of section 11 hereof the Licensee shall have the option to include any such future inventions, if any, under the provisions of this Agreement.

11. Interpretation.   In this agreement the term "Extended Tab Prescription Drug Label" shall mean a prescription label for displaying additional information printed on a tab extending from the label.

12. Successors.   This agreement shall inure to the benefit of and be binding upon the heirs, administrators and executors of the Licensor.

13. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Florida. Jurisdiction of any dispute hereunder may be in Broward County, Florida and the parties hereby agree to the non-exclusive jurisdiction of the state and federal courts located in Broward County, Florida in connection with any dispute arising hereunder.

14. This Agreement and the terms and provisions hereof may only be changed, waived or discharged by an instrument in writing signed by the parties hereto.

15. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the Agreement to be drafted.

16. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one agreement.

17. If, for any reason, any provision of the Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement, and the Agreement shall otherwise remain in full force and effect.

18. Any notice to be given under this Agreement shall be sufficient if it is in writing and is sent by certified or registered mail to the Contractor at his address as the same appears on the books and records of the Company or to the company at its principal office, attention of the President, or otherwise as directed by the Company, from time to time.

In Witness Whereof the parties have caused this agreement to be executed effective the date first written above.

LICENSOR:

By: _____
Print Name: Stacy Kaufman
Title: President

LICENSEE:

By: _____
Print Name: Robert G. Nieland
Title: Vice President, Associate General Counsel

# Exhibit 13

# ScriptChek Visual Verification Systems, Inc. Plaintiff vs. R.R. Donnelley & Sons Company, Inc. Defendant

**Broward County Case Number:** CACE20003398
**State Reporting Number:** 062020CA003398AXXXCE
**Court Type:** Civil
**Case Type:** Contract and Indebtedness
**Incident Date:** N/A
**Filing Date:** 02/24/2020
**Court Location:** Central Courthouse
**Case Status:** Pending
**Magistrate Id / Name:** N/A
**Judge ID / Name:** 08 Haimes, David A.

## ‒ Party(ies)

Total: 2

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **ScriptChek Visual Verification Systems, Inc.** | | ★ Allen, Richard Lewis Retained Bar ID: 295485 Solowsky & Allen, PL 201 S Biscayne Blvd., Ste. 915 Miami, FL 33131-4326 **Status: Active** |
| Defendant | **R.R. Donnelley & Sons Company, Inc.** | | ★ Pettis, Eugene K Retained Bar ID: 508454 Haliczer Pettis & Schwamm PA 100 SE 3rd Avenue, 7th Floor Fort Lauderdale, FL 33394-0000 **Status: Active** |

## Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|------|------------------------|
|      |                        |

| Date | Disposition(s) | View | Page(s) |
|------|----------------|------|---------|
|      |                |      |         |

## Event(s) & Document(s)

Total: 13

| Date | Description | Additional Text | View | Pages |
|------|-------------|-----------------|------|-------|
| 06/16/2020 | **Notice of Hearing** | | 📄 | 3 |
| 06/08/2020 | **Notice of Appearance** | AND DESIGNATION OF E-MAIL ADDRESSES Party: *Defendant* R.R. Donnelley & Sons Company, Inc. | 📄 | 2 |
| 06/04/2020 | **Response to Motion to Dismiss** | | 📄 | 19 |
| 06/01/2020 | **Notice of Service** | | 📄 | 2 |
| 05/19/2020 | **Agreed Order** | Verified Motion for Admission to Appear Pro Hace Vice | 📄 | 2 |
| 05/18/2020 | **Motion to Appear Pro Hac Vice** | Reginald J. Hill | 📄 | 6 |

| Date | Description | Additional Text | View | Pages |
|---|---|---|---|---|
| 05/18/2020 | **Motion to Dismiss** | DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MOTION TO STRIKE, MOTION IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT, AND INCORPORATED MEMORANDUMUM OF LAW<br>Party: *Defendant* R.R. Donnelley & Sons Company, Inc. | 📄 | 24 |
| 03/20/2020 | **Agreed Order** | regarding the deadline for Defendant to respond to the Complaint and Plaintiffs First Request for P oduction | 📄 | 2 |
| 03/04/2020 | **Summons Returned Served** | 2/27/20<br>Party: *Defendant* R.R. Donnelley & Sons Company, Inc. | 📄 | 2 |
| 02/25/2020 | **eSummons Issuance** | R.R. DONNELLEY & SONS COMPANY, INC | 📄 | 1 |
| 02/24/2020 | **Civil Cover Sheet** | Amount: $30,001.00 | 📄 | 3 |
| 02/24/2020 | **Complaint (eFiled)** | Party: *Plaintiff* ScriptChek Visual Verification Systems, Inc. | 📄 | 22 |

| Date | Description | Additional Text | View | Pages |
|------|-------------|-----------------|------|-------|
| 02/24/2020 | **Request for Production** | TO DEFENDANT R.R. DONNELLEY & SONS COMPANY, INC Party: *Plaintiff* ScriptChek Visual Verification Systems, Inc. | 📄 | 8 |

### ➖ Hearing(s)

Total: 0

**There is no Disposition information available for this case.**

### ➖ Related Case(s)

Total: 0

**There is no related case information available for this case.**