UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-61261-RAR

SCRIPTCHEK VISUAL
VERIFICATION SYSTEMS, INC.,

    Plaintiff,

v.

R.R. DONNELLEY & SONS COMPANY, INC.,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Remand [ECF No. 16] ("Motion"), wherein Plaintiff seeks the remand of this action to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. The Court having carefully reviewed the Motion, Defendant's Response in Opposition [ECF No. 23] ("Response"), Plaintiff's Reply to Defendant's Response [ECF No. 24] ("Reply"), and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand [ECF No. 16] is **GRANTED**. For the reasons set forth below, this case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

## BACKGROUND

On February 24, 2020, Plaintiff Scriptchek Visual Verification Systems, Inc. filed its Complaint against Defendant R.R. Donnelley & Sons Company, Inc. in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* Compl. [ECF No. 1-2]. According to the Complaint, the parties are signatories to a Manufacture Agreement whereby

Plaintiff granted Defendant a limited, non-exclusive right to manufacture and sell Plaintiff's patented Extended Tab Prescription Drug Label to customers approved by Plaintiff who have entered into license agreements with Plaintiff.  *Id*. ¶ 13.  Plaintiff alleges that Defendant breached that contract by: (1) manufacturing Plaintiff's patented label to non-approved customers, without notice to Plaintiff or without Plaintiff having entered into license agreements with those companies; (2) failing to include "ScriptChek®" on the patented Extended Tab Prescription Drug Labels sold by Defendant; and (3) failing to keep proper books of account and render written reports to Plaintiff.  *Id*. ¶¶ 27, 47, 54.  Plaintiff brings claims for breach of contract, specific performance, and unjust enrichment; Plaintiff also seeks damages with interest, an order for Defendant to provide books of accounts and written reports from 2006 to the present, and demands that Defendant immediately cease and desist from any and all manufacturing of Plaintiff's patented Extended Tab Prescription Drug Label for non-approved customers.  *Id*. ¶¶ 49, 55, 65.

On May 18, 2020, Defendant filed a Motion to Dismiss, Motion to Strike, and Motion in the Alternative for More Definite Statement in state court.  [ECF No. 1-6] ("Motion to Dismiss").  On May 27, 2020, counsel for both Plaintiff and Defendant held an introductory videoconference to discuss the case, and Plaintiff subsequently filed its Response to Defendant's Motion to Dismiss [ECF No. 1-10] on June 4, 2020.  *See* Notice of Removal [ECF No. 1] ¶¶ 6-8.  Defendant contends that at the introductory meeting—and in the Response to the Motion to Dismiss—Plaintiff for the first time "clarified that its allegations are limited to Plaintiff's 'patented label[,]'" which allowed Defendant to ascertain for the first time that the case invoked federal jurisdiction.  *Id*. ¶ 8.

On June 26, 2020, Defendant filed its Notice of Removal, asserting two grounds for federal jurisdiction.  Defendant argues that diversity jurisdiction exists under 28 U.S.C. § 1332(a) because the parties are diverse and the amount-in-controversy exceeds $75,000, based on Defendant's

business records showing that it generated revenue from the sales of the tab labels at issue well in excess of $75,000. *Id*. ¶¶ 12-14. Defendant also posits that this Court has original jurisdiction under 28 U.S.C. § 1338(a) because the case arises under patent law. *Id*. ¶¶ 15-21. Specifically, Defendant asserts that "in order to prevail on its breach of contract claim, Plaintiff would need to demonstrate that any and all tab labels that R.R. Donnelley sold to non-approved customers fell under Plaintiff's patent(s). Put another way, to prevail, Plaintiff will have to show that R.R. Donnelley infringed Plaintiff's patent(s)." *Id*. ¶ 17.

As to the timeliness of its removal, Defendant states:

> When R.R. Donnelley first received Plaintiff's Complaint, it was not clear whether this case was removable. . . Plaintiff['s] counsel's assertions during the May 27, 2020 conference first led R.R. Donnelley to ascertain that this case was subject to removal under both diversity jurisdiction as well as patent law jurisdiction. . . . Specifically, prior to speaking to Plaintiff's counsel and receiving Plaintiff's Response to [the] Motion to Dismiss, there was doubt as to whether Plaintiff's claims were based strictly on patents or whether Plaintiff's claims were also based on some misuse of confidential and proprietary information, or some other issue. Plaintiff's Response to [the] Motion to Dismiss made clear that the patents are essential to defining what was licensed under the Manufacture Agreement. In particular, throughout its Response to [the] Motion to Dismiss, Plaintiff only referred to the Extended Case Tab Prescription Drug Label as "patented." Furthermore, Plaintiff confirmed a definition of the Extended Tab Prescription Drug Label indicating that the label at issue has to relate to certain patent applications. Moreover, the Plaintiff confirmed that the Mutual Confidentiality Agreement, which may have been alleged to be a basis for misuse of confidential information claims, is not necessary to any claims. Similarly, these clarifications, confirmed by Plaintiff's Response to [the] Motion to Dismiss, permitted R.R. Donnelley to determine that the amount in controversy will exceed $75,000.

*Id*. ¶¶ 22-23. Defendant argues that because the Notice of Removal was filed within 30 days of May 27, 2020, the day of the conference between counsel, which Defendant claims was the first

time it ascertained that the case was subject to removal, removal was timely pursuant to 28 U.S.C. § 1446(b)(3). *Id.* ¶ 24.

Unsurprisingly, Plaintiff disagrees. On July 20, 2020, Plaintiff filed its Motion to Remand, arguing that the Complaint was removable as originally filed, and because Defendant did not remove this case within 30 days of the Complaint's filing, removal is untimely.

## **LEGAL STANDARD**

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. 28 U.S.C. § 1441. This includes actions where the federal court has diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship between the plaintiff and all defendants and an amount in controversy exceeding $75,000. In addition, under 28 U.S.C. § 1338, "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents," and 28 U.S.C. § 1454 authorizes the removal of such claims to federal court.

As to the timeliness of removal, Congress has established a bifurcated removal regime under which a state court defendant may remove a case to federal court at one of two procedurally distinct moments in time. If it is facially apparent from the initial pleading that federal subject matter jurisdiction exists, 28 U.S.C. § 1446(b)(1) requires that removal be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based." If removal is not proper based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). "As construed by district courts in this Circuit, the 30-day removal period prescribed by § 1446(b) commences running as

soon as a defendant is able to ascertain intelligently that the action is removable." *Simpson v. Primerica Life Ins. Co.*, No. 2:16-cv-701-MHT-GMB, 2017 WL 2857699, at *5 (M.D. Ala. May 22, 2017) (quoting *Holloway v. Morrow*, No. 07-0839-WS-M, 2008 WL 401305, at *3 (S.D. Ala. Feb. 11, 2008)), *report and recommendation adopted*, 2017 WL 2838078 (M.D. Ala. June 30, 2017).

On a motion to remand, the removing party shoulders the burden of establishing federal subject matter jurisdiction. *Conn. State Dental Ass'n v. Anthem Health Plans*, *Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). Critical to the analysis here, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *see also Clingan v. Celtic Life Ins. Co.*, 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003) (explaining that the time constraints of § 1446(b) are "mandatory and must be strictly applied").

## **ANALYSIS**

Defendant was served with the Complaint on February 27, 2020—but did not file its Notice of Removal until June 26, 2020. Because the case was removed well outside of the 30-day limitation of section 1446(b)(1), Defendant relies on section 1446(b)(3) to establish the timeliness of removal. Specifically, Defendant argues that removal was perfected within 30 days of the initial conference between counsel or Plaintiff's Response to the Motion to Dismiss, either of which is when Defendant claims it was first able to ascertain that the case was removable.[1] Conversely,

---

[1] Both the conversation between counsel and Plaintiff's Response to the Motion to Dismiss qualify as "other paper" for the purposes of section 1446(b)(3). The Eleventh Circuit has stated that "the definition of 'other paper' is broad and may include any formal or informal communication received by a defendant," *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 780 (11th Cir. 1989) (citation omitted), and "[c]ourts have held that . . . correspondence between parties can be 'other paper' under 28 U.S.C. § 1446(b)." *Wilson v. Target*

Plaintiff insists that the case was removable as initially filed, meaning that Defendant's removal was untimely, and remand is therefore required. *See* Mot. at 11.

The analysis boils down to two questions. First, was Plaintiff's Complaint removable as initially filed? If so, the time for removal had expired pursuant to section 1446(b)(1). Second, if the case was not initially removable, did the conversation between counsel or Plaintiff's Response to the Motion to Dismiss provide Defendant with information from which it could ascertain—for the first time—that the case was removable? The Court addresses these questions as to each of Defendant's stated grounds for federal subject matter jurisdiction—diversity jurisdiction and federal question jurisdiction—since either would have provided grounds for removal if ascertainable by Defendant.

### i. *Diversity Jurisdiction*

Defendant was "not required to remove based solely on the complaint unless [it] could have intelligently ascertained that the action was removable before receiving" Plaintiff's Response to the Motion to Dismiss and conversing with Plaintiff's counsel. *Moore v. Allstate Indem. Co.*, No. 06–0412–WS–B, 2006 WL 2730743, at *4 (S.D. Ala. Sept. 22, 2006) (collecting cases). Since Plaintiff alleged complete diversity in its Complaint, the applicability of diversity jurisdiction turns on the amount in controversy, which Plaintiff contends Defendant could "easily calculate" based on the initial Complaint. Mot. at 10. "In order to evaluate this argument, the Court must consider whether, if Defendant[] had attempted to remove this case pursuant to § 1446(b)(1), [it] would have been able to prove, by a preponderance of the evidence, that the amount in controversy exceeded $75,000." *Ford v. Jolly Shipping, Inc.*, No. 17-00309-KD-N, 2017 WL 4451148, at *4

---

*Corp.*, No. 10-CV-80451, 2010 WL 3632794, at *2 (S.D. Fla. Sept. 14, 2010) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007)).

(S.D. Ala. Sept. 19, 2017) (discussing the "odd posture" in which "Plaintiff, rather than Defendants, argues that this case was removable on the basis of the contents of the initial pleading"), *report and recommendation adopted*, 2017 WL 4448580 (S.D. Ala. Oct. 4, 2017). The Court concludes that the answer to this question is yes.

Plaintiff's Complaint states only that "the amount in controversy exceeds $30,000[,]" the jurisdictional minimum for the state court in which it was filed. Compl. at ¶ 3. Defendant contends that this is fatal to Plaintiff's argument that the Complaint was removable because "for an initial pleading to be removable, it must affirmatively state the grounds for removal, including damages in excess of the federal jurisdictional amount for diversity jurisdiction." Resp. at 3. Notably, Defendant cites no binding authority for this proposition, likely because this is not the law in the Eleventh Circuit. *Ford*, 2017 WL 4451148, at *3 ("Defendants erroneously argue that cases like these—where the original pleading does not contain a dollar amount for damages being sought—[necessarily] fall under 28 U.S.C. § 1446(b)(3).").

To the contrary, Eleventh Circuit precedent instructs that it may be "facially apparent from [a] pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when [a] complaint does not claim a specific amount of damages." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted). That is because courts may "employ[] [their] judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy." *Id*. at 1063. "[T]he district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. . . . [S]ometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence, and [] a court may use its judgment to determine which party has better access to the relevant information." *Id*.

at 1061 (internal citations and quotations omitted).  "Indeed, 'courts do not permit a defendant to keep its head in the proverbial sand regarding the amount in controversy when a complaint can be fairly interpreted to allege damages in excess of the jurisdictional amount, even when no damages amount is specifically pled.'"  *Abbasian v. Am. Security Ins. Co.*, No. 19-CIV-24169, 2019 WL 10011882, at *2 (S.D. Fla. Dec. 31, 2019) (quoting *Garden Terrace APTS. No. 9 Ass'n, Inc. v. W. Heritage Ins. Co.*, No. 15-CV-62174, 2016 WL 8488924, at *2 (S.D. Fla. Feb. 12, 2016)).

Consequently, several courts in this Circuit have held that the 30-day clock begins to tick upon service of the complaint under section 1446(b)(1)—even if the plaintiff did not plead a specific damages amount—where the defendant could have, and should have, intelligently ascertained that the amount in controversy exceeded $75,000.  *See, e.g.*, *id.*; *Fuqua v. D & M Carriers, LLC*, No. 6:19-cv-01626, at *3 (N.D. Ala. Dec. 19, 2019); *McEvoy v. Praetorian Ins. Co.*, No. 19-CIV-22975, 2019 WL 7643421, at *2 (S.D. Fla. Aug. 26, 2019); *Capitini v. Balfour*, No. 18-CV-81324, 2019 WL 587180, at *2 (S.D. Fla. Jan. 18, 2019); *Neal v. Scarborough*, No. 5:18-CV-280, 2018 WL 4521029, at *3 (M.D. Ga. Sept. 21, 2018).  After all, "[i]f the Court can use common sense to determine whether the allegations in a complaint facially establish the amount in controversy, the Defendant[] should do the same."  *Neal*, 2018 WL 4521029, at *3.

Such is the case here.  Defendant calculated the amount in controversy by analyzing its business records, which showed that its past revenue and anticipated future revenue from the sales to CVS of Plaintiff's tab labels, which are the centerpiece of this entire lawsuit, "would readily exceed $75,000."  Notice of Removal ¶ 13.  This could have—and should have—been intelligently ascertained within 30 days of the service of the Complaint.

Plaintiff's Complaint alleges that "R.R. Donnelley has been manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers,

Page **8** of **18**

including but not limited to CVS Pharmacy, in violation of the Manufacture Agreement." Compl. ¶ 27. Any fair reading of this Complaint—indeed, arguably even a reading of the aforementioned paragraph alone—would have put Defendant on notice that the amount in controversy would include, at a minimum, how much money Defendant had made and anticipated to make in the future from the sales of the tab labels to CVS. As explained in more detail below, the Court is unpersuaded by Defendant's argument that it could not determine that Plaintiff's claims are focused on Plaintiff's patents. Rather, the Complaint made clear which sales of Plaintiff's patented product were at issue. And because Defendant possessed the information regarding the revenue it derived from those sales, this seems to be the quintessential case in which "the defendant . . . [was] better-situated to accurately assess the amount in controversy." *Roe*, 613 F.3d at 1061.

Defendant could have easily ascertained from its own records that the amount in controversy readily exceeded $75,000.00 within 30 days of service of the Complaint, and "the Court does not see why Defendant should be permitted to rely on its apparent willful blindness to extend the removal deadline." *Capitini*, 2019 WL 587180, at *2. The Court therefore finds that Defendant's 30-day removal clock began to run upon its receipt of Plaintiff's Complaint under section 1446(b)(1), and accordingly, Defendant's Notice of Removal, filed three months after service of Plaintiff's Complaint, is untimely.

Even if the Complaint was not initially removable based on diversity jurisdiction, it did not become so under section 1446(b)(3) because of the conversation between counsel or Plaintiff's Response to the Motion to Dismiss. This is because neither of these "other papers" provided Defendant with information from which it could ascertain for the first time that the case was removable based on diversity jurisdiction. Indeed, the Court fails to discern any new information

provided to Defendant in the conversation between counsel or in the Response to the Motion to Dismiss that was not clear, or at the very least ascertainable, from the Complaint.

Defendant argues that "Plaintiff's Response to [the] Motion to Dismiss made clear that the patents are essential to defining what was licensed under the Manufacture Agreement. In particular, throughout its Response to [the] Motion to Dismiss, Plaintiff only referred to the Extended Tab Prescription Drug Label as 'patented.'" Notice of Removal ¶ 23. But Plaintiff referred to the Extended Tab Prescription Drug Label as "patented" repeatedly throughout the Complaint. *See, e.g.*, Compl. ¶ 13 ("Pursuant to the Manufacture Agreement, ScriptChek granted R.R. Donnelley a limited, non-exclusive right to manufacture and sell the *patented ScriptChek Extended Tab Prescription Drug Labels* for the limited purpose of selling the *patented ScriptChek Extended Tab Prescription Drug* Labels only to customers approved by ScriptChek, (the 'Approved Customers') who have entered into written license agreements with ScriptChek to use the *patented ScriptChek Extended Tab Prescription Drug Labels*.") (emphasis added); *id*. ¶ 14 ("The *patented ScriptChek Extended Tab Prescription Drug Labels* are prescription labels for displaying additional information printed on a tab extending from the label.") (emphasis added); *id*. ¶ 17 ("In the Manufacture Agreement, R.R. Donnelley acknowledged and agreed that ScriptChek is the owner of *the patented ScriptChek Extended Tab Prescription Drug Labels*.") (emphasis added); *id*. ¶ 18 ("In the Manufacture Agreement, R.R. Donnelley agreed to manufacture ScriptChek's *patented Extended Tab Prescription Drug Labels* for the purpose of selling them to ScriptChek's Approved Customers.") (emphasis added). In fact, by the Court's count, Plaintiff referred to the Extended Tab Prescription Drug Label as "patented" 45 times in the Complaint.

Defendant also argues that "Plaintiff confirmed a definition of the Extended Tab

Prescription Drug Label indicating that the label at issue has to relate to certain patent applications." Notice of Removal ¶ 23. The Court finds this argument puzzling, if not disingenuous. For this proposition, Defendant cites paragraph 16 of the Response to the Motion to Dismiss, but that paragraph merely cites to page two of Defendant's Motion to Dismiss, which, in turn, quotes the definition of the Extended Tab Prescription Drug Label from the Manufacture Agreement. And the Manufacture Agreement was attached to the Complaint itself. In other words, Defendant cited a definition directly from the original Complaint, and now points to Plaintiff's confirmation of that definition as affecting the clarity of the existence of federal jurisdiction. Needless to say, this did not provide Defendant with any information it did not already possess. *See Simpson*, 2017 WL 2857699, at *7 (removal improper where "[t]he 'other paper' that forms the basis of Defendants' § 1446(b)(3) removal . . . does not provide Defendants with information about the amount in controversy from which they first ascertained that federal subject-matter jurisdiction exists. These answers only confirmed what Defendants already knew, or at least should have known, since the filing of the complaint."); *Holloway v. Morrow*, No. 07–0839–WS–M, 2008 WL 401305, at *3 n.4 (S.D. Ala. Feb. 11, 2008) ("[A] defendant cannot piggyback the § 1446(b) 30–day period on receipt of discovery responses containing information that it already possessed.").

Finally, Defendant argues that "prior to speaking to Plaintiff's counsel and receiving Plaintiff's Response to [the] Motion to Dismiss, there was doubt as to whether Plaintiff's claims were based strictly on patents or whether Plaintiff's claims were also based on some misuse of confidential and proprietary information, or some other issue." Notice of Removal ¶ 23. But even if the claims were *also* based on the misuse of confidential information, Defendant was aware that the claims *at least* related to the sales of the patented tab labels—which was enough to intelligently

ascertain the amount in controversy. *See Westerburger v. Geovera Specialty Ins. Co.*, No. 19-CIV-60870, 2019 WL 7708493, at *2 (S.D. Fla. May 23, 2019) ("[A] defendant should not be allowed to delay removing when he knows the facts necessary for removal, as the purpose of the statute is to extend the time limit only when a defendant cannot ascertain removability.") (citation and quotation omitted); *Advantage Med. Electronics, LLC v. Mid-Continent Cas. Co.*, No. 14–0045–CG–N, 2014 WL 1764483, at *6 (S.D. Ala. May 5, 2014) ("The proper inquiry [under 28 U.S.C. § 1446(b)(3)] is, [] what is conveyed by [the 'other paper']. . . as to the amount in controversy that [defendant] did not know before their receipt? And does that previously unknown information unambiguously establish the requisite minimum amount in controversy?").

Because the Court finds that neither the conversation between counsel nor the Response to the Motion to Dismiss provided Defendant with any new information, Defendant finds itself in a Catch-22 of its own making. Either the Complaint was removable as filed—in which case removal was untimely because it was not perfected within 30 days of service—or it was never removable because nothing provided to Defendant by Plaintiff has changed any facts relevant to the amount in controversy. *See Pretka*, 608 F.3d at 761 ("The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case into a removable one. Thus, a defendant cannot show that a previously non-removable case has become removable as a result of a document created by the defendant.") (internal citation and quotations omitted). If it is removal now, it was removable then.

### ii. *Federal Question Jurisdiction*

Section 1454 provides any party the power to remove patent claims, but expressly states that those claims must be brought in accordance with the timing provisions of section 1446 unless excused by cause shown. 28 U.S.C. § 1454(b). Defendant believes that federal jurisdiction under

patent law only became ascertainable upon the conversation between counsel and/or Plaintiff's Response to the Motion to Dismiss, relying on the same alleged clarifications and changed circumstances as detailed above. *See* Notice of Removal ¶ 23. Defendant argues that "with just Plaintiff's Complaint in hand, it was not possible to conclusively determine whether this case would require addressing patent issues (warranting federal question/patent law jurisdiction) or whether this case could potentially turn on issues related to confidential or proprietary information . . . It was not until Plaintiff clarified during the May 27, 2020 Zoom conference and June 4, 2020 Response to R.R. Donnelley's Motion to Dismiss that R.R. Donnelley was able to determine that at least Count I of this case is based strictly on patents." Resp. to Mot. to Remand at 7.

The Court harbors considerable doubt as to whether federal question jurisdiction exists in this case. Defendant believes this cases arises under federal patent laws because "in order to prevail on its breach of contract claim, Plaintiff would need to demonstrate that any and all tab labels that R.R. Donnelley sold to non-approved customers fell under Plaintiff's patent(s)." Notice of Removal ¶ 17. A case arises under federal patent laws when patent law creates the cause of action or the claims asserted "necessarily raise" an "actually disputed" and "substantial" question of patent law "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Significantly, the Eleventh Circuit has explained that "state law claims 'based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a).'" *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 843 (11th Cir. 2013) (quoting *id.*). In *MDS*, a breach of contract claim raising patent infringement issues did not present a "substantial question" of federal law "[i]n the light of the fact-bound nature of the question, the small likelihood that the resolution of the issue would impact future cases, and the weak interest

of the government in federal adjudication of this action." *Id*. at 841-43.

Likewise, in *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, the Federal Circuit adjudicated an appeal from this District where the plaintiff was a patent-holder who entered into a licensing agreement with the defendant under which the defendant agreed to manufacture and sell the plaintiff's patented products.  938 F.3d 1355 (Fed. Cir. 2019).  The plaintiff brought claims for breach of contract and unjust enrichment, alleging that the defendant had breached the licensing agreement by failing to pay the plaintiff royalties from the sale of plaintiff's patented products. *Id*. at 1359.  Reversing the decision of the district court, the Federal Circuit found that no patent law jurisdiction existed because to exert jurisdiction over the case would mean doing so "[a]ny time such a state law claim 'necessarily raises' an embedded patent infringement or invalidity question," *id*. at 1369, which is essentially Defendant's argument here.  The court held that "finding a federal question [] merely because th[e] contract implicates a run-of-the-mill question of infringement or validity would undoubtedly impact the wider balance between state and federal courts." *Id*.; *but see Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CIV-61736, 2015 WL 13688558, at \*7 (S.D. Fla. Nov. 20, 2015) ("[S]everal courts—in the wake of Section 1454—have recently found that a breach of contract claim raises a federal question of patent law when the court is required to determine whether the accused products infringe.").

Nevertheless, the Court need not decide whether this claim invokes federal patent law jurisdiction because the same facts exist now as existed upon the initial filing of the Complaint. Therefore, even assuming that patent law jurisdiction exists now, it must have existed then, and thus Defendant's removal was untimely. *See Univ. of. Ky. Res. Found., Inc. v. Niadyne, Inc.*, No. 13–16–GFVT, 2013 WL 5943921, at \*9 (E.D. Ky. Nov. 5, 2013) (explaining that the court did not need to decide whether the claims at issue invoked federal patent law jurisdiction because the

defendant had all relevant information at the time the complaint was filed and therefore removal was untimely). As explained above, the Complaint provided Defendant a clear definition of both the patented products at issue and the nature of Plaintiff's claims, and no new information was provided to Defendant thereafter that would have made the presence of patent law jurisdiction more ascertainable.

Defendant argues that the Complaint alone made it unclear whether the claims turned on patent law issues or could also potentially turn on issues related to confidential or proprietary information. If the patent issues were indeed interwoven with these other issues, Defendant believes patent law jurisdiction would not have existed under the logic of cases such as *Cricket Holdings, LLC v. Harvest Direct, LLC*, No. 14-14268-NMG, 2015 WL 13694479 (D. Mass. Apr. 13, 2015). Defendant is correct that the court in *Cricket Holdings*, addressing a breach of contract claim in connection with a licensing agreement, found no patent law jurisdiction where it was not clear whether the agreement was "limited to patents"—while also acknowledging the possibility of patent law jurisdiction if in fact the agreement was limited to patents. *Id*. at *7. The Complaint and Manufacturing Agreement here, however, differ materially from the complaint and contract in that case.

In *Cricket Holdings*, the complaint referred generally to "intellectual property," and "both the [contract at issue] and the [c]omplaint refer[ed] to the [plaintiff's] 'name, patents, trademarks, copyrights and litigation jackets.' More importantly, the Agreement [did] not expressly link the right to royalty payments to [products] that contain licensed intellectual property." *Id*. The Complaint in this case mentions that the parties did enter into a separate Mutual Confidentiality Agreement to protect Plaintiff's proprietary information, Compl. ¶¶ 35-39, but it makes clear that the claims at issue are based on an alleged breach of the Manufacture Agreement, which links

Plaintiff's rights to the specific patented Extended Tab Prescription Drug Labels defined in the Agreement. This is stated plainly in Count I, which Defendant asserts was clarified by the Response to the Motion to Dismiss:

> R.R. Donnelley breached the Manufacture Agreement with ScriptChek: (1) by manufacturing and selling the patented ScriptChek Extended Tab Prescription Drug Labels to non-approved customers, including but not limited to CVS Pharmacy, in violation of ¶ 1 of the Manufacture Agreement; and (2) by failing to include "ScriptChek ®" on the patented ScriptChek Extended Tab Prescription Drug Labels sold by R.R. Donnelley, in violation of ¶ 4 of the Manufacture Agreement."

Compl. ¶ 47. Thus, unlike the defendant in *Cricket Holdings*, Defendant here encountered a Complaint and underlying contract that clearly linked both parties' rights to one specific patented product. No clarification was necessary to determine the potential existence of patent law jurisdiction.

All relevant facts pertaining to patent law jurisdiction that exist now were present at the outset of this action in state court. "[C]ourts in this circuit have rejected [] attempts to remove a case based upon the 'other paper' provision of § 1446(b)(3) when that other paper did not provide the defendants with information from which they could first ascertain that federal subject-matter jurisdiction exists." *Simpson*, 2017 WL 2857699, at *7; *see also Justice v. Provident Life & Acc. Ins. Co.*, No. CA 10–0624–KD–C, 2011 WL 560415, at *10 (M.D. Ala. May 5, 2014) (removal pursuant to § 1446(b)(3) improper if a removing defendant "had the very information it contends it lacked, or at the very least could have intelligently determined same, at the time the complaint was filed and, therefore, it should have removed this case within thirty (30) days of the filing of the complaint."), *report and recommendation adopted*, 2017 WL 2838078 (M.D. Ala. June 30, 2017).

Defendant argues that if removal was untimely, the Court should nevertheless extend the

time for removal. The time limitations in section 1446(b) may be extended "at any time for cause shown." 28 U.S.C. § 1454(b)(2). Defendant argues that "[a]s for cause shown, . . . [Defendant] chose to remove once there was certainty that Count I of Plaintiff's Complaint would require resolution of patent issues, implicating federal question jurisdiction based on patent law." Resp. to Mot. to Remand at 8.

Section 1454 does not define "cause shown," and there is sparse authority interpreting the provision. Nonetheless, this Court agrees with others that have considered the issue in concluding that "[t]his standard is not a high bar to extend the deadline, but it does require at least some explanation for the removing party's delay." *Hill Country Trust v. Silverberg*, No. 1:18-CV-635-RP, 2018 WL 6267880, at *8 (W.D. Tex. Nov. 28, 2018) (collecting cases). "[A]t a minimum the standard imposes some burden on the removing party to justify why its tardiness should be excused. Here, there is no such excuse." *SnoWizard, Inc. v. Andrews*, Civ. No. 12–2796, 2013 WL 3728410, at *6 (E.D. La. July 12, 2013). Instead, Defendant simply reiterates its argument that removal was perfected as soon as patent law jurisdiction became clear—an argument the Court has already rejected. Therefore, finding that "good cause" exists here "would reduce this standard to nothing." *Id*. Consequently, the Court finds that Defendant has failed to timely file its Notice of Removal and, therefore, the instant case should be remanded to state court.

## CONCLUSION

Based on the foregoing, the Court finds that removal was untimely because it was not accomplished within 30 days of the filing of the Complaint under section 1446(b). Because "[t]he 30-day limit for the filing of the removal petition is mandatory," *Westerburger*, 2019 WL 7708493, at *1, the action should be remanded to state court. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand [ECF No. 16] is

**GRANTED**. This case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County. The Clerk of Court is directed to **CLOSE** this case. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 22nd day of January, 2021.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**